IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| LINQTO TEXAS, LLC, *et al.*,[1] | Case No. 25-90186 |
| Debtors. | (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE USE OF ESTATE PROCEEDS FREE AND CLEAR OF ALL
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) DETERMINING
THAT THE RIPPLE SALE PROCEEDS ARE ASSETS OF THE
BANKRUPTCY ESTATE, AND (III) GRANTING RELATED RELIEF**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on August 5, 2025 at 1:00 pm in Courtroom 400, 4th Floor, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Avenue, Houston, TX 77002.**
>
> **You may participate in the hearing either in person or by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's home page. The meeting code is "Judge Perez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: 101 Metro Drive, Suite 335, San Jose, CA 95110.

1

> **in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-debtor affiliates, "**Linqto**" or the "**Company**") state as follows in support of this motion:[2]

## RELIEF REQUESTED

1. By this motion, pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors seek entry of an order, substantially in the form attached hereto (the "**Proposed Order**"), (i) authorizing and approving the use of proceeds (the "**December Ripple Tender Proceeds**") from that certain December 2024 tender offer (the "**December Ripple Tender**") with Ripple Labs, Inc. ("**Ripple**"), free and clear of all liens, claims, encumbrances, and interests, (ii) determining that the December Ripple Tender Proceeds and certain other cash assets are assets of the Debtors' bankruptcy estate and may be used by the Debtors for the daily operations of the enterprise, which includes the administration of the Chapter 11 Cases, and (iii) granting related relief.

2. In support of the relief requested, the Debtors submit the *Declaration of Jeffrey S. Stein in Support of the Motion for Entry of an Order (i) Authorizing the Use of Estate Proceeds Free and Clear of all Liens, Claims, Encumbrances, and Interests, (ii) Determining that the Ripple*

---

[2] Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.* (as amended, the "**Bankruptcy Code**"). All references to a "**Chapter**" or "**Section**" shall be to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure. "**Bankruptcy Local Rule**" or "**BLR**" references are to the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas. All other capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration (as defined herein).

2

*Sale Proceeds are Assets of the Bankruptcy Estate, and (iii) any Related Relief* (the "**Stein Declaration**") attached hereto as **Exhibit A**.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. The Debtors confirm their consent to the entry of a final order by the Court.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The bases for the relief requested herein are Sections 105(a), 541(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Bankruptcy Local Rules 2002-1 and 9013-1.

## BACKGROUND

**A.    The Debtors' Business.**

7. On July 7, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") and no request for the appointment of a trustee or examiner has been made.

8. From February of 2020, until March 14, 2025, Linqto operated a platform (the "**Platform**") that purported to allow customers (the "**Customers**") to indirectly invest in private companies, with a focus on the technology sector. More specifically, Liquidshares purchased and

3

held securities (the "**Securities**") of privately held companies (the "**Issuing Companies**" and each, an "**Issuing Company**"), or equity in a fund that owns shares of an Issuing Company. Liquidshares then purported to allocate an economic interest in the Securities to a special purpose vehicle in the form of series limited liability companies (the "**Series**") and sell units in the Series. More than 13,000 Customers invested through the Linqto Platform.

9. As described in the First Day Declaration, the Company's internal investigation found that the Debtors did not operate as intended or prescribed under Liquidshares' governing documents. Instead, the Series were not properly formed and Customers do not hold title to or direct beneficial interests in the Securities.

10. As of the Petition Date, Liquidshares holds Securities in 111 Issuing Companies with an estimated fair market value of in excess of $500 million.

11. Shortly before Linqto's new leadership team took over the Company, they learned that, in October 2024, the SEC's Division of Enforcement had notified Linqto Parent of an investigation to determine if violations of the federal securities laws had occurred. Along with the SEC investigation, FINRA had conducted an examination of Linqto Capital, Linqto's broker-dealer affiliate, and referred the matter to FINRA Enforcement in December 2024. Further, Linqto's former Chief Revenue Officer, Gene Zawrotny, had commenced a lawsuit on October 7, 2024, against Linqto Parent, Bill Sarris, and Joe Endoso (Linqto's President at that time), alleging serious compliance failures and retaliation.

12. As Linqto's new leadership team gained access to company records and spoke with Linqto personnel, they quickly developed concerns about how the Company had historically interpreted and failed to comply with applicable securities laws requirements. In particular, the

new leadership team realized that prior management had knowingly failed to cure extensive and serious securities law violations as early as 2020.

13. In light of these violations, Linqto's new management team began investigating the Company's business operations and regulatory compliance issues and cooperating with ongoing enforcement investigations from regulators. Throughout the course of these investigations, which are ongoing, management discovered extensive regulatory compliance violations along with a culture of systematic and pervasive non-compliance, requiring immediate and serious corrective action.

14. As new management became aware of the depth and extent of the Company's historical non-compliance with the securities laws, the Company determined that continued investment activity would be ill-advised and likely exacerbate the liabilities. As a result, on March 13, 2025, the Company determined to indefinitely suspend operation of the Platform and, by extension, its revenue-generating operations, and pivoted to evaluating its restructuring alternatives. The Company ultimately determined that seeking protection under Chapter 11 would afford Linqto the opportunity to preserve the value of its business and assets, negotiate a path forward with the SEC and other regulators, clarify and separate the Debtors' significant contingent, unliquidated liabilities, including the claims of Customers, the SEC, and other regulators, and secure financing to achieve the foregoing objectives before its resources are exhausted.

15. Additional information regarding the Debtors, their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in the *Declaration of Jeffrey S. Stein in Support of Chapter 11 Petitions, First Day Motions, and Related Relief* (the "**First Day Declaration**"), filed substantially contemporaneously with the Debtors' voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

B.     **The December Ripple Tender.**

16.    Prior to the commencement of these Chapter 11 Cases, the Debtors' former management participated in the December Ripple Tender, submitting 90,111 shares of Ripple common stock and 153,333 shares of Ripple preferred stock, for an expected purchase price of approximately $30 million. Of the 243,444 shares offered, 151,105 were filled at a price of $125 per share, for total proceeds of approximately $18.8 million. The tender occurred before current management was hired in January 2025.

17.    Upon learning of the various securities investigations the Debtors faced, new management elected to hold the funds generated from the December Ripple Tender. As of the Petition Date, the Debtors are holding roughly $19.23 million, inclusive of interest, which constitute the December Ripple Tender Proceeds.

18.    The Debtors submit that the December Ripple Tender Proceeds are property of the Debtors' estates and it is in the best interests of their estates that the funds are used in the administration of these Chapter 11 Cases. As set forth in the *Debtors' Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**DIP Financing Motion**") (Docket No. 16), the Debtors are seeking to borrow up to $60,000,000 (the "**DIP Financing**"). The cost of the postpetition financing the Debtors seek to borrow may be as high as 20%. As such, the Debtors would like to use as little of this facility as possible to reduce costs to the estate and to increase the return to their creditors. If the December Ripple Tender Proceeds are authorized to be used to support these Chapter 11 Cases, the Debtors estimate that in excess of $3.5 million will be saved over 12 months.

6

19. Rather than simply using the December Ripple Tender Proceeds, however, the Debtors are providing parties-in-interest, including the SEC and FINRA, the opportunity to object should there be any concerns with the Debtors' proposed use of the December Ripple Tender Proceeds. Accordingly, the Debtors request that the Court authorize the Debtors to use these estate funds as set forth herein.

20. The Debtors seek to use the December Ripple Tender Proceeds in good faith and for a proper purpose. Specifically, the Debtors filed these Chapter 11 Cases to address defects in their organizational structure, obtain the requisite regulatory approvals and licenses to operate, and distribute value to their stakeholders, including their Customers. The Debtors are not operating and cannot operate without regulatory approval, which is not imminent. Therefore, without the use of the December Ripple Tender Proceeds, the Debtors will have to borrow extensively to prosecute a Chapter 11 plan that returns value to the Customers and other creditors. As outlined above, those borrowing costs could exceed $12,000,000 if the entire DIP Financing is drawn and held for 12 months. Authorizing the Debtors to use the December Ripple Tender Proceeds is in the best interests of the Debtors, their estates, and their creditors, including the Customers.

C. **Other Funds and Interest for which the Debtors Seek Relief.**

21. In addition to the December Ripple Tender Proceeds, the Debtors are holding funds arising from distributions and dividends from the Securities. As of the date of this Motion, the Debtors are holding approximately: (a) $550,000 from a distribution from Scale AI; and (b) $91,000 dividend from Blockchain Coinvestors (collectively with the December Ripple Tender Proceeds, the "**Cash Assets**"). The Debtors seek authority to use all of the Cash Assets.

## BASIS FOR RELIEF

22. The use of the Cash Assets is justified by the Debtors' sound business judgment and Sections 363(b) and 105(a) of the Bankruptcy Code. Use of the Cash Assets will enable the

Debtors to defray the expenses associated with the DIP Financing and is the most efficient and cost-effective means of maximizing the value of the Debtors' assets for the benefit of the estates.

23. Section 363(b) of the Bankruptcy Code provides that a debtor in possession, after notice and a hearing, may use, "other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). While the Debtors believe that the Cash Assets comprise estate property and the use of those proceeds falls squarely within their business judgment, out of an abundance of caution, the Debtors seek relief under Section 363(b) to use the Cash Assets to fund their ongoing operations and administration of the Chapter 11 Cases. Such use during the pendency of the Chapter 11 Cases to fund the ongoing operations of the Debtors and related expenses is within their sound business judgment such that Court approval is not strictly required. Nonetheless, so as to avert any dispute concerning the character of the expenditures and to provide the Court with complete transparency regarding the use of the Cash Assets, the Debtors seek an order from the Court finding that the Cash Assets are property of Liquidshares' estate under Section 541(a) and that use of the Cash Assets to fund the Debtors' operations during the pendency of the Chapter 11 Cases is within the sound business judgement of the Debtors under Section 363(b).

24. The Debtors further request that the Court authorize all expenditures out of the Cash Assets, including any debt service payments made on post-petition financing approved by the Court, so long as the underlying expenses or claims being satisfied by the Cash Assets arose on or after the Petition Date.

25. The relief requested herein is also authorized pursuant to Section 105(a) of the Bankruptcy Code, which provides that the Court may enter any order as is appropriate to carry out the provisions of the Bankruptcy Code. 11 U.S.C. § 105(a). The Bankruptcy Code permits a debtor-in-possession to remain in possession of its assets during the pendency of a Chapter 11 proceeding

8

and permits the use of those assets without the need for prior court approval as such expenditures are within the Debtors' sound business judgment. The proposed order will permit the Debtors to use the Cash Assets in a manner consistent with Section 363(b). Authorization of this arrangement is squarely within the authority granted to the Court under Section 105(a). Accordingly, the Debtor respectfully requests that the Court approve the use of Cash Assets to fund the Debtors' daily operations and administration during the pendency of the Chapter 11 Cases.

26. Courts in the Fifth Circuit have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in use, sale, or lease of an estate asset. *See, e.g., In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale.").

27. Courts generally show great deference to a debtor's decisions when applying the business judgment standard. *See In re Alpha Nat. Res., Inc.*, 546 B.R. 348, 356 (Bankr. E.D. Va. 2016) ("Courts apply the deferential business judgment test when analyzing transactions under § 363(b)(1)."). Deference to a debtor's business judgment is inappropriate only if such business judgment is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *Lubrizol Enters., Inc.* v. *Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985). Once the Debtors articulate a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors

of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *In re Filene's Basement, LLC*, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted); *In re Integrated Res., Inc.*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

28. As set forth in the Stein Declaration, the use of the Cash Assets represents a sound exercise of business judgment and is in the best interest of the Debtors' estates and all stakeholders. Use of the Cash Assets allows the Debtors to fund their ongoing operations and pay down post-petition financing, secured at higher market rates as is customary in distress situations, during the pendency of the Chapter 11 Cases, which results in direct benefit Debtors and their creditors. By administering the Chapter 11 Cases using the Cash Assets, in part, rather than incurring interest and fees on the same amount in postpetition financing, the Debtors are able to pass the saved value back to their creditors in the administration of claims in the Chapter 11 Cases. Accordingly, there is a sound business justification for use of the Cash Assets to fund the administration of these Chapter 11 Cases.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

29. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies the requirements of Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule

6004(h). As described above, the relief that the Debtors seek in this motion is necessary for the Debtors to preserve value for their estates through these Chapter 11 Cases.

## RESERVATION OF RIGHTS

30. Nothing contained herein is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, assign, or reject any agreement, contract, or lease pursuant to Section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**NOTICE**

31. The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the Office of the U.S. Trustee for the Southern District of Texas; (b) the holders of the 30 largest vendor unsecured claims against the Debtors (on a consolidated basis); (c) the holders of the 100 largest customer claims against the Debtors; (d) Sandton Capital Solutions Master Fund VI, LP, and counsel thereto; (e) the office of the attorneys general for the states in which the Debtors operate; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the Securities and Exchange Commission; (i) other regulatory agencies having a regulatory or statutory interest in these Chapter 11 Cases; (j) counsel to any statutory or official committee appointed in these Chapter 11 Cases; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (l) the Customers. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice is necessary.

WHEREFORE, the Debtors request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: July 14, 2025  
Houston, Texas

Respectfully submitted,

**SCHWARTZ PLLC**

*/s/Gabrielle A. Hamm*_____  
Gabrielle A. Hamm (TX Bar No. 24041047)  
Veronica A. Polnick (TX Bar No. 24079148)  
Athanasios E. Agelakopoulos (*pro hac vice* pending)  
440 Louisiana Street, Suite 1055  
Houston, Texas 77002  
Telephone:   (713) 900-3737  
Facsimile:   (702) 442-9887  
Email:        ghamm@nvfirm.com  
              vpolnick@nvfirm.com  
              aagelakopoulos@nvfirm.com

Samuel A. Schwartz (*pro hac vice* pending)  
601 East Bridger Avenue  
Las Vegas, Nevada 89101  
Telephone:   (702) 385-5544  
Facsimile:   (702) 442-9887  
Email:        saschwartz@nvfirm.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**Certificate of Service**

      I certify that on July 14, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                     */s/Gabrielle A. Hamm*
                                                     Gabrielle A. Hamm