**Exhibit A**

**Stein Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| LINQTO TEXAS, LLC, *et al.*,[1] | ) ) ) | Case No. 25-90186 |
| Debtors. | ) ) ) | (Jointly Administered) |

**DECLARATION OF JEFFREY S. STEIN IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE USE OF ESTATE PROCEEDS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) DETERMINING THAT THE RIPPLE SALE PROCEEDS ARE ASSETS OF THE BANKRUPTCY ESTATE, AND (III) GRANTING RELATED RELIEF**

I, Jeffrey S. Stein, declare as follows under penalty of perjury.

1. I am the Chief Restructuring Officer of Linqto, Inc. ("**Linqto Parent**"), Linqto Texas, LLC ("**Linqto Texas**"), Linqto Liquidshares, LLC ("**Liquidshares**"), and Linqto Liquidshares Manager, LLC ("**Liquidshares Manager**" or, collectively with Linqto Parent, Linqto Texas, Liquidshares, and Liquidshares Manager the "**Debtors**" and, collectively with their non-debtor affiliates, "**Linqto**" or the "**Company**").

2. Additional information regarding my background, the Debtors, their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in the *Declaration of Jeffrey S. Stein in Support of Chapter 11 Petitions, First Day Motions, and Related Relief* (the "**First Day Declaration**"), which is incorporated herein by this reference.[2]

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: 101 Metro Drive, Suite 335, San Jose, CA 95110.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion or the First Day Declaration, as applicable.

2

3. I submit this declaration (the "**Declaration**") in support of the *Debtors' Motion for Entry of an Order (i) Authorizing the Use of Estate Proceeds Free and Clear of all Liens, Claims, Encumbrances, and Interests, (ii) Determining that the Ripple Sale Proceeds are Assets of the Bankruptcy Estate, and (iii) any Related Relief* (the "**Motion**").

4. I am familiar with the contents of the Motion and believe the relief sought therein is necessary to fund the administration of these cases (the "**Chapter 11 Cases**") and will help minimize the costs incurred by the Debtors' estates during the prosecution of these Chapter 11 Cases.

5. On December 10, 2024, Ripple Labs, Inc. ("**Ripple**") announced an upcoming tender offer, pursuant to which Ripple would buy up to 5% of eligible equity at a price of $125 per share (the "**December Ripple Tender**"). The Debtors' former management participated in the December Ripple Tender, submitting 90,111 shares of Ripple common stock and 153,333 shares of Ripple preferred stock, for an expected purchase price of approximately $30 million. Of the 243,444 shares offered, 151,105 were filled at a price of $125 per share, for total proceeds of approximately $18.8 million. The tender occurred before current management was hired in January 2025.

6. Upon learning of the various investigations the Debtors faced, new management elected to hold the funds generated from the December Ripple Tender (the "**December Ripple Tender Proceeds**"). As of the Petition Date, the Debtors are holding roughly $19.23 million in December Ripple Tender Proceeds.

7. The Debtors submit that the December Ripple Tender Proceeds are property of the Debtors' estates and it is in the best interests of their estates that the funds are used in the administration of these Chapter 11 Cases. As set forth in the *Debtors' <u>Emergency</u> Motion for Entry*

*of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**DIP Financing Motion**") (Docket No. 16), the Debtors are seeking to borrow up to $60,000,000 (the "**DIP Financing**"). The cost of the postpetition financing the Debtors seek to borrow may be as high as 20%.

8. As such, the Debtors would like to use as little of this facility as possible to reduce costs to the estate and to increase the return to their creditors. If the December Ripple Tender Proceeds are authorized to be used to support these Chapter 11 Cases, the Debtors estimate that in excess of $3.5 million will be saved over 12 months.

9. The Debtors are seeking to use the December Ripple Tender Proceeds in good faith and for a proper purpose. Specifically, the Debtors filed these Chapter 11 Cases to address defects in their organizational structure, obtain the requisite regulatory approvals and licenses to operate, and distribute value to their stakeholders, including their Customers. The Debtors are not operating and cannot operate without regulatory approval, which is not imminent.

10. Therefore, without the use of the December Ripple Tender Proceeds, the Debtors will have to borrow extensively to prosecute a Chapter 11 plan that returns value to the Customers and other creditors. As outlined above, those borrowing costs could exceed $12,000,000 if the entire DIP Financing is drawn and held for 12 months. Authorizing the Debtors to use the December Ripple Tender Proceeds is in the best interests of the Debtors, their estates, and their creditors, including the Customers.

11. In addition to the December Ripple Tender Proceeds, the Debtors are holding funds arising from distributions and dividends from the Securities. As of the date of this Declaration, the

Debtors are holding approximately: (a) $550,000 from a distribution from Scale AI; and (b) a $91,000 dividend from Blockchain Coinvestors (collectively with the December Ripple Tender Proceeds, the "**Cash Assets**"). Under the Motion, the Debtors are seeking authority to use all of the Cash Assets.

12. I believe that the Debtors' use of the Cash Assets is a sound exercise of the Debtors' business judgment because such transactions will provide liquidity to fund the administration of these Chapter 11 Cases while limiting the need for costly financing. Without the use of the Cash Assets, the Debtors will have to borrow more extensively to execute a plan of reorganization that returns value to the Customers and other creditors.

13. Accordingly, authorizing the Debtors to use the Cash Assets is in the best interests of the Debtors, their estates, and their creditors, including the Customers.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 14, 2025                              */s/ Jeffrey S. Stein*
                                                  Jeffrey S. Stein
                                                  Chief Restructuring Officer