IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re:<br><br>LINQTO TEXAS, LLC, *et al.*,[1]<br><br>Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 11<br><br>Case No. 25-90186<br><br>(Jointly Administered) |

**DEBTORS' FIRST OMNIBUS MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO (A) REJECT CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES AND (B) ABANDON CERTAIN PERSONAL
PROPERTY, IF ANY, EFFECTIVE AS OF THE REJECTION DATE, AND
<u>(II) GRANTING RELATED RELIEF</u>**

**PARTIES RECEIVING THIS MOTION SHOULD REVIEW THE LIST OF LEASES ON <u>SCHEDULE 1</u> AND THE LIST OF CONTRACTS ON <u>SCHEDULE 2</u> TO THE PROPOSED ORDER TO DETERMINE WHETHER THEY ARE A COUNTERPARTY TO A CONTRACT OR LEASE THAT IS THE SUBJECT OF THE RELIEF REQUESTED IN THIS MOTION.**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on August 5, 2025 at 1:00 P.M. in Courtroom 400, 4th Floor, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Avenue, Houston, TX 77002.**

**You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: 101 Metro Drive, Suite 335, San Jose, CA 95110.

1

> by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's home page. The meeting code is "Judge Perez". Click the settings icon in the upper right corner and enter your name under the personal information setting.
>
> Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-debtor affiliates, "**Linqto**" or the "**Company**") state as follows in support of this motion:[2]

## RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "**Proposed Order**"), (a) authorizing the Debtors to (i) reject the prepetition unexpired leases of nonresidential real property set forth on **Schedule 1** to the Proposed Order, including any guaranties thereof and any amendments, modifications, or subleases thereto (collectively, the "**Leases**"), (ii) abandon any equipment, fixtures, furniture, or other personal property that may be located on the premises of the Leases, and (iii) reject certain executory contracts set forth on **Schedule 2** to the Proposed Order (the "**Contracts**" and, collectively with the Leases, the "**Contracts and Leases**"), each effective as of the rejection date (the "**Rejection Date**") listed on **Schedule 1** and **Schedule 2** to the Proposed Order and (b) granting related relief.

---

[2] Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.* (as amended, the "**Bankruptcy Code**"). All references to a "**Chapter**" or "**Section**" shall be to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure. "**Bankruptcy Local Rule**" or "**BLR**" references are to the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas. Other capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration (as defined herein).

**JURISDICTION AND VENUE**

2. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The Debtors confirm their consent to the entry of a final order by the Court.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are Sections 365(a) and 554(a) of the Bankruptcy Code, Bankruptcy Rules 6006 and 6007, and Bankruptcy Local Rule 9013-1(b).

**BACKGROUND**

6. On July 7, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors continue to operate their business and manage their property as debtors and debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") and no request for the appointment of a trustee or examiner has been made.

7. From February of 2020 until March 14, 2025, Linqto operated a platform (the "**Platform**") designed to provide customers (the "**Customers**") with indirect access to investments in the equity of private companies (the "**Issuing Companies**" and each, an "**Issuing Company**"), with a focus on the technology sector. Debtor Linqto Liquidshares LLC ("**Liquidshares**") purchased and held investment securities (the "**Securities**"), comprised of shares of Issuing Companies and membership units in entities that own shares in Issuing Companies. Liquidshares

3

then purported to allocate economic interests in the Securities to series limited liability companies (the "**Series**") and sell units in the Series to the Customers. More than 13,000 Customers participated through the Linqto Platform. As of the Petition Date, Liquidshares holds Securities in 111 Issuing Companies with an estimated fair market value of in excess of $500 million.

8. Upon their appointment at the beginning of 2025, the Company's new management learned of pending investigations by the U.S. Securities and Exchange Commission (the "**SEC**") and Financial Industry Regulatory Authority, Inc., along with allegations of serious regulatory compliance failures. As Linqto's new leadership team gained access to company records and spoke with Linqto personnel, they quickly developed concerns regarding, among other things, the Company's historical interpretation of and non-compliance with applicable securities laws and its organizational and governance structure. Further investigation uncovered myriad regulatory compliance violations along with a culture of systematic and pervasive non-compliance, requiring immediate and serious corrective action. Linqto's current management, together with the Debtors' professionals, are cooperating with the SEC and other regulators.

9. As new management became aware of the depth and extent of the Company's historical non-compliance with the securities laws, the Company determined that continued operation of the Platform would be ill advised and likely exacerbate the Company's liabilities. As a result, the Company determined to indefinitely suspend operation of the Platform and, by extension, its primary revenue-generating operations, on March 13, 2025.

10. The Company ultimately determined that seeking protection under Chapter 11 will afford the Company the opportunity to (a) preserve the value of its assets, (b) deliberately assess strategic alternatives to maximize the value of its business, (c) negotiate a path forward with the SEC and other regulators and explore restructuring alternatives that bring its operations and

structure into compliance with applicable securities laws, (d) address the Debtors' outstanding liabilities, including the claims of Customers, the SEC, and other regulators, and (e) secure financing to achieve the foregoing objectives.

11. Additional information regarding the Debtors, their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in the *Declaration of Jeffrey S. Stein in Support of Chapter 11 Petitions, First Day Motions, and Related Relief* (the "**First Day Declaration**"), filed substantially contemporaneously with the Debtors' voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

## THE DEBTORS' UNEXPIRED LEASES AND EXECUTORY CONTRACTS

12. Because the Debtors have reduced their operations, the Debtors have commenced a comprehensive review of their executory contracts and unexpired leases to determine which contracts and leases are no longer required and provide no meaningful value or benefit to the Debtors' estates, which review is ongoing. Based on that ongoing review, the Debtors have determined, in the exercise of their sound business judgment, that continuing the Contracts and Leases that are the subject of this Motion would be burdensome and provide no corresponding benefit or value to the Debtors' estates.[3]

A.   **The Unexpired Leases and Related Personal Property.**

13. As of the Petition Date, Linqto, Inc. ("**Linqto Parent**") is a party to the following Leases:

---

[3] The inclusion of any contract, lease, sublease, or other agreement on **Schedule 1** or **Schedule 2** to the Proposed Order is not intended as, nor shall be deemed to constitute, an admission by the Debtors or their estates that such contract, lease, or other agreement is or is not an executory contract or unexpired lease. The Debtors and their estates reserve any and all rights, claims, and defenses with respect to the characterization of the Contracts and Leases under Section 365 of the Bankruptcy Code, applicable non-bankruptcy law, or otherwise, including, without limitation, any and all rights to argue that any of the Contracts or Leases do not constitute an executory contract or unexpired lease.

5

(a) **Metro Drive Lease**. Hudson Metro Plaza LLC, as "licensor," and Linqto Parent, as "licensee," are parties to that certain *Executive Suites License Agreement*, made and entered into as of January 26, 2022, as amended by that certain *First Amendment to Executive Suites License Agreement*, dated October 13, 2022, that certain *Second Amendment to Executive Suites License Agreement*, dated June 30, 2023, and that *Third Amendment to Executive Suites License Agreement*, dated September 30 2024 (the "**Metro Drive Lease**"), for office space located at 101 Metro Drive, Suite 355, San Jose, California Plaza (the "**Metro Drive Premises**"). Pursuant to the Metro Drive Lease, the Debtor also leased certain furniture, fixtures and equipment for use in the office space. The Metro Drive Lease will expire by its terms on January 31, 2027.

(b) **Pacific Grove Lease**. B10 Mountain B SF LP, as landlord, and Linqto Parent, as tenant, are parties to that certain Shopping Center Lease dated October 31, 2011, as amended on October 28, 2012, April 16, 2014, October 30, 2015, March 1, 2016, September 18, 2019, August 12, 2018, February 25, 2019, October 28, 2019, October 27, 2020, August 13, 2021, September 21, 2022, and October 7, 2024 (collectively, the "**Pacific Grove Lease**") for the premises identified as Unit 012 located at 200 Country Club Gate Center, Suite 12, Pacific Grove, California 93950, within the shopping center commonly known as Country Club Gate Shopping Center (the "**Pacific Grove Premises**" and, together with the Metro Drive Premises, the "**Premises**"). The Pacific Grove Lease will expire by its terms on November 30, 2025.

14. As part of the Debtors' ongoing efforts to restructure their businesses, the Debtors have determined in their business judgment that they no longer need the Premises. Accordingly, the Debtors surrendered possession of the Premises prior to the Petition Date. Even so, Linqto Parent is obligated to pay rent and other related charges associated with the Leases. The Debtors have reviewed the market value of the Leases and determined, in their business judgment, that the

6

costs of the Leases exceed any marginal return that could potentially be achieved through the assignments or subleases of the Leases.

15. Accordingly, to avoid incurring further costs and obligations under the Leases, the Debtors have determined, in a good faith exercise of their business judgment, to reject the Leases, to the extent that such Leases are unexpired leases as that term is used in Section 365 of the Bankruptcy Code.

16. Because the Debtors have shuttered all operations at the Metro Drive Premises and Pacific Grove Premises, the Debtors have determined, in the exercise of their business judgment, that any personal property remaining at the Premises following surrender of the Premises (the "**Personal Property**") will no longer be necessary for the administration of the Debtors' estates and will be difficult or expensive to remove and/or store or that there is no benefit to the Debtors' estates in doing so. The Debtors believe that the Personal Property is of *de minimis* value and that they will not realize any economic benefit by retaining it.

17. Accordingly, to reduce postpetition administrative costs and in the exercise of the Debtors' sound business judgment, the Debtors believe that the abandonment of the Personal Property, if any, at each of the Premises is appropriate and in the best interests of the Debtors, their estates, and their creditors.

B. **The Executory Contracts.**

18. In the ordinary course of its business, the Debtors entered into certain contracts, including software subscription agreements, information technology services agreements, and other service contracts that are no longer necessary to the Debtors' operations.

19. As part of the Debtors' ongoing efforts to restructure their business, the Debtors have determined, in their business judgment, that they no longer need the services provided under the Contracts identified on **Schedule 2** to the Proposed Order.

20. The Debtors have determined that the Contracts are unnecessary and burdensome to the Debtors' estates because such services are no longer needed in connection with the operation of the Debtors' business. Rejecting the Contracts will allow the Debtors to avoid the accrual of expenses with no commensurate benefits to the Debtors' estates. Absent rejection, the Debtors may be required to devote estate resources to services that are no longer needed or utilized. Accordingly, rejection of the Contracts will be in the best interests of the Debtors, their creditors, and the estates, and the Debtors' request approval of rejection of the Contracts effective as of the Rejection Date.

## BASIS FOR RELIEF

**A.    The Rejection of the Contracts and Leases as of the Rejection Date Is Appropriate and Provides the Debtors with Significant Cost Savings.**

21. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that the purpose of rejection of executory contracts is to permit the debtor in possession to renounce title to and abandon burdensome property).

22. A debtor's rejection of an executory contract or unexpired lease is ordinarily governed by the "business judgment" standard. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that 'the question whether a lease should be rejected . . . is one of business judgment.'") (quoting *Grp. of Institutional Invs. v. Chi.,*

*M., St. P. & P. R. Co.*, 318 U.S. 523, 550 (1943)); s*ee also In re Texas Sheet Metals, Inc.*, 90 B.R. 260, 264 (Bankr. S.D. Tex. 1988) ("The traditional business judgment standard governs the rejection of ordinary executory contracts."). The business judgment standard requires a court to approve a debtor's business decision unless that decision is the product of "bad faith, or whim or caprice." *See In re Pisces Energy, LLC*, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("In the absence of a showing of bad faith . . . the debtor's business judgment will not be altered."); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (quoting *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 849–50 (Bankr. W.D. Pa. 1987)).

23. Rejection of an unexpired lease is appropriate where such rejection would benefit the estate. *See In re Pisces Energy, LLC*, 2009 WL 7227880, at *6 ("Courts apply the 'business judgment test,' which requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."); *see also Orion Pictures*, 4 F.3d at 1098–99 (stating that section 365 of the Bankruptcy Code permits a debtor in possession, subject to court approval, to decide which executory contracts would be beneficial to reject). Upon finding that a debtor exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a) of the Bankruptcy Code. *See Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

24. Rejection of the Contracts and Leases is well within the Debtors' business judgment and is in the best interest of their estates. The Debtors seek to reject the Contracts and Leases,

which they believe are unlikely to provide a net benefit to their estates, in order to avoid incurring additional, unnecessary expenses related to the Contracts and Leases, including the maintenance and insurance of the leased Premises. Absent rejection, the Leases and Contracts will continue to burden the Debtors' estates with significant administrative expenses, without sufficient marginal revenue to justify the incurrence of such costs. Rejecting the Contracts and Leases will help increase the Debtors' liquidity and otherwise facilitate the efficient administration of the Debtors' estates. The Debtors have also determined that there is no net benefit likely to be realized from efforts to market the Leases for potential assignment or sublease. Accordingly, to relieve the Debtors of burdensome obligations that would drain resources from their estates, the Debtors seek to reject the Contracts and Leases effective as of the Rejection Date.

B.     **The Abandonment of Personal Property Is Appropriate.**

25.    To the extent that any Personal Property remains on any of the leased Premises as of the Rejection Date, the Debtors request authority to abandon such Personal Property pursuant to Section 554(a) of the Bankruptcy Code, with such abandonment being effective as of the Rejection Date.

26.    Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). Neither of these limitations is applicable in this case.

27.    The Debtors submit that the abandoned Personal Property, if any, is of inconsequential value or burdensome to the Debtors' estates to remove or store. Among other

things, the Debtors believe that the cost of retrieving, marketing, and reselling the abandoned Personal Property outweighs any recovery that the Debtors and their estates could reasonably hope to attain for such Personal Property. For the avoidance of doubt, the Debtors will not abandon Personal Property containing any personal identifying information (which means information that, alone or in conjunction with other information, identifies an individual). As a result, the Debtors have determined, in their business judgment, that the abandonment of any such Personal Property is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates and creditors.

C. **Deeming Rejection of the Contracts and Leases Effective as of the Rejection Date is Appropriate.**

28. Pursuant to Sections 105(a) and 365(a) of the Bankruptcy Code, bankruptcy courts may grant retroactive rejection of an executory contract or unexpired lease based on a balancing of the equities of the case. *See, e.g., In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) (granting retroactive relief for contract rejection where debtors were "receiving no benefit" from the lease and the contract counterparties "had unequivocal notice of Debtors' intent to reject prior to the filing of the Motions"); *Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1028-29 (1st Cir. 1995) (indicating "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively" to the motion filing date); *Pacific Shore Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1067 (9th Cir. 2004) (same); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004). ("[T]he court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)."); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that "nothing precludes

a bankruptcy court, based on the equities of the case, from approving" retroactive rejection).

29. Here, the balance of equities favors rejection of the Contracts and Leases effective as of the Rejection Date. The Debtors have determined in their sound business judgment that the Contracts and Leases are burdensome and unnecessary to their estates. Absent rejection effective as of the Rejection Date, the Debtors will potentially incur unnecessary administrative expenses related to the Contracts and Leases—agreements that provide no benefit to the Debtors' estates in light of the rent and related charges the Debtors are obligated to pay thereunder. *See* 11 U.S.C. § 365(d)(3). Further, contemporaneously with the filing of this Motion, the Debtors will cause notice of this Motion to be served on the counterparties to the Leases, thereby providing the counterparties with sufficient opportunity to respond. The Debtors have sought the relief requested at the earliest possible moment in these Chapter 11 Cases and do not seek to reject the Contracts and Leases effective as of the Rejection Date due to any undue delay on their own part. Based on this factual record, no party can assert that the Debtors seek to write any "revisionist history." *Roman Cath. Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 589, U.S. 57, 65 (2020) ("Federal courts may issue *nunc pro tunc* orders, or 'now for then' orders, . . . to 'reflect the reality' of what has already occurred" but not as a "vehicle for . . . creating 'facts' that never occurred") (internal citations omitted). Accordingly, the Debtors respectfully submit that it is fair and equitable for the Court to authorize the rejection of the Contracts and Leases identified on **Schedule 1** and **Schedule 2** to the Proposed Order effective as of the Rejection Date.

## RESERVATION OF RIGHTS

30. Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-

bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease not identified on **Schedule 1** or **Schedule 2** to the Proposed Order pursuant to Section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## NOTICE

31. The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the holders of the 100 largest customer claims against the Debtors; (d) the DIP Lender; (e) the office of the attorneys general for the states in which the Debtors operate; (f) the United States Attorney's Office for the Southern District of Texas; (g) the

Internal Revenue Service; (h) the Securities and Exchange Commission; (i) other regulatory agencies having a regulatory or statutory interest in these Chapter 11 Cases; (j) any official or statutory committee appointed in these Chapter 11 Cases; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and each of the parties to the Contracts and Leases identified on **Schedule 1** and **Schedule 2** attached to the Proposed Order. The Debtors respectfully submit that, in light of the nature of the relief requested, no other or further notice is necessary.

WHEREFORE, the Debtors request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: July 14, 2025  
Houston, Texas

Respectfully submitted,

**SCHWARTZ PLLC**

*/s/Gabrielle A. Hamm*  
Gabrielle A. Hamm (TX Bar No. 24041047)  
Veronica A. Polnick (TX Bar No. 24079148)  
Athanasios E. Agelakopoulos (admitted *pro hac vice*)  
440 Louisiana Street, Suite 1055  
Houston, Texas 77002  
Telephone: (713) 900-3737  
Facsimile: (702) 442-9887  
Email: ghamm@nvfirm.com  
vpolnick@nvfirm.com  
aagelakopoulos@nvfirm.com

Samuel A. Schwartz (admitted *pro hac vice*)  
601 East Bridger Avenue  
Las Vegas, Nevada 89101  
Telephone: (702) 385-5544  
Facsimile: (702) 442-9887  
Email: saschwartz@nvfirm.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

      I certify that on July 14, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                 */s/Gabrielle A. Hamm*
                                                 Gabrielle A. Hamm