IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| LINQTO TEXAS, LLC, *et al.*,[1] | ) |
|  | ) Case No. 25-90186 |
| Debtors. | ) |
|  | ) (Jointly Administered) |
|  | ) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS AND (II) GRANTING RELATED RELIEF**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on August 5, 2025 at 1:00 pm in Courtroom 400, 4th Floor, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Avenue, Houston, TX 77002.**

**You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Perez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Perez's home page. The meeting code is "Judge Perez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Perez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: 101 Metro Drive, Suite 335, San Jose, CA 95110.

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**" and, together with their non-debtor affiliates, "**Linqto**" or the "**Company**") state as follows in support of this motion:[2]

## RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form attached hereto (the "**Proposed Order**"), (a) authorizing, but not directing, the Debtors to continue to retain and compensate certain law firms, attorneys, accountants, consultants, and other non-attorney professionals utilized in the ordinary course of business (each, an "**OCP**" and collectively, the "**OCPs**"), pursuant to the compensation procedures set forth in the Proposed Order (the "**OCP Procedures**"), and (b) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. The Debtors confirm their consent to the entry of a final order by the Court.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105(a), 327, 328, and 330 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, Bankruptcy Local Rules 2014-1, 2016-1, and 9013-1.

---

[2] Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.* (as amended, the "**Bankruptcy Code**"). All references to a "**Chapter**" or "**Section**" shall be to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure. "**Bankruptcy Local Rule**" or "**BLR**" references are to the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas. Other capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration (as defined herein).

**BACKGROUND**

6. On July 7, 2025 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors continue to operate their business and manage their property as debtors and debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") and no request for the appointment of a trustee or examiner has been made.

7. From February of 2020 until March 14, 2025, Linqto operated a platform (the "**Platform**") designed to provide customers (the "**Customers**") with indirect access to investments in the equity of private companies (the "**Issuing Companies**" and each, an "**Issuing Company**"), with a focus on the technology sector. Debtor Linqto Liquidshares LLC ("**Liquidshares**") purchased and held investment securities (the "**Securities**"), comprised of shares of Issuing Companies and membership units in entities that own shares in Issuing Companies. Liquidshares then purported to allocate economic interests in the Securities to series limited liability companies (the "**Series**") and sell units in the Series to the Customers. More than 13,000 Customers participated through the Linqto Platform. As of the Petition Date, Liquidshares holds Securities in 111 Issuing Companies with an estimated fair market value of in excess of $500 million.

8. Upon their appointment at the beginning of 2025, the Company's new management learned of pending investigations by the U.S. Securities and Exchange Commission (the "**SEC**") and Financial Industry Regulatory Authority, Inc., along with allegations of serious regulatory compliance failures. As Linqto's new leadership team gained access to company records and spoke with Linqto personnel, they quickly developed concerns regarding, among other things, the

3

Company's historical interpretation of and non-compliance with applicable securities laws and its organizational and governance structure. Further investigation uncovered myriad regulatory compliance violations along with a culture of systematic and pervasive non-compliance, requiring immediate and serious corrective action. Linqto's current management, together with the Debtors' professionals, are cooperating with the SEC and other regulators.

9. As new management became aware of the depth and extent of the Company's historical non-compliance with the securities laws, the Company determined that continued operation of the Platform would be ill advised and likely exacerbate the Company's liabilities. As a result, the Company determined to indefinitely suspend operation of the Platform and, by extension, its primary revenue-generating operations, on March 13, 2025.

10. The Company ultimately determined that seeking protection under Chapter 11 will afford the Company the opportunity to (a) preserve the value of its assets, (b) deliberately assess strategic alternatives to maximize the value of its business, (c) negotiate a path forward with the SEC and other regulators and explore restructuring alternatives that bring its operations and structure into compliance with applicable securities laws, (d) address the Debtors' outstanding liabilities, including the claims of Customers, the SEC, and other regulators, and (e) secure financing to achieve the foregoing objectives.

11. Additional information regarding the Debtors, their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in the *Declaration of Jeffrey S. Stein in Support of Chapter 11 Petitions, First Day Motions, and Related Relief* (the "**First Day Declaration**"), filed substantially contemporaneously with the Debtors' voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

**THE ORDINARY COURSE PROFESSIONALS**

12. In the ordinary course of their business, the Debtors employ various OCPs who provide a wide range of services to the Debtors in matters unrelated to these Chapter 11 Cases, including, among other things, specialized legal services, litigation services, and business advisory services relating to, among other things, corporate, financial, tax, and legal matters that have a direct and significant impact on the Debtors' business. The Debtors seek to continue to employ the OCPs to provide professional services to their estates in the same manner and for the same or similar purposes as the OCPs were employed before the Petition Date.

13. The OCPs have significant knowledge, expertise, and familiarity with the Debtors and their operations. Without the OCPs' knowledge, expertise, and familiarity in certain matters, the Debtors would incur additional and unnecessary expenses in educating and retaining replacements for the existing OCPs. In addition, each of the OCPs provides essential services to the Debtors at market rates and in many instances discounted market rates. The Debtors anticipate, however, that absent an efficient process for the Debtors to meet their payment obligations to the OCPs on a regular basis, certain of the OCPs may be unwilling to continue rendering services. Accordingly, the continued employment and compensation of the OCPs as set forth in this Motion is in the best interests of their estates, creditors, and other parties in interest.

14. A non-exclusive list of the Debtors' current OCPs is attached as **Exhibit 1** to the Proposed Order (as may be amended or supplemented, collectively, the "**OCP List**"). The Debtors may also seek to employ additional OCPs as necessary throughout the course of these Chapter 11 Cases, subject to the procedures set forth herein. For the avoidance of doubt, the Debtors are not requesting authority to pay prepetition amounts owed to OCPs.

## THE OCP PROCEDURES

15. The OCP Procedures establish a streamlined process for retention and compensation of OCPs on a postpetition basis. The OCP Procedures will permit the Debtors to employ OCPs upon (a) the filing of a declaration of disinterestedness, substantially in the form attached as **Exhibit 2** to the Proposed Order (in each case, a "**Declaration of Disinterestedness**"), and (b) the expiration of a 14-day objection period for parties in interest in these Chapter 11 Cases. Among other things, each Declaration of Disinterestedness will state that the respective OCP does not hold any material interest adverse to the Debtors or their estates with respect to the matter on which such OCP is proposed to be employed.

16. The OCP Procedures further provide that the Debtors shall be authorized to pay, without formal application to the Court by any OCP, 100% of the fees and disbursements to each of the OCPs retained by the Debtors pursuant to the OCP Procedures (including the filing of a Declaration of Disinterestedness) upon the OCP's submission to the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered and expenses incurred after the Petition Date. While these Chapter 11 Cases are pending, the fees of each OCP set forth on the OCP List attached to the Proposed Order as **Exhibit 1**, excluding costs and reimbursable expenses, may not exceed an aggregate of (i) 10,000.00 per month per OCP designated in Tier 1 on the OCP List and (ii) $50,000.00 per month per OCP designated in Tier 2 on the OCP List, each calculated as an average over a rolling three-month period while these Chapter 11 Cases are pending (each and "**OCP Cap**," and collectively the "**OCP Caps**"). In addition, the Debtors seek authority to retain additional OCPs or increase any OCP Cap, as the need arises, by filing a

6

supplement to the OCP List that identifies such additional OCPs or the revised OCP Cap, as applicable, and serving the same on the OCP Notice Parties.[3]

17. To the extent any OCP seeks compensation in excess of the applicable OCP Cap (in each case, the "**Excess Fees**"), the applicable OCP shall (a) file with the Court a *Notice of Fees in Excess of the OCP Cap* (the "**Notice of Excess Fees**") and an invoice setting forth, in reasonable detail, the nature of the services rendered and disbursements actually incurred, and (b) serve the Notice of Excess Fees on the Notice Parties. Parties in interest shall then have 14 days to object to the Notice of Excess Fees. If no objection is filed within 14 days, the Excess Fees shall be deemed approved, and the applicable OCP may be paid 100% of its fees, including any reasonable postpetition retainer or prepayments, and 100% of its expenses without the need to file a fee application. If an objection is timely filed and such objection cannot be resolved by the Debtors, the applicable OCP, and the objecting party within 14 days of its receipt, the Debtors will schedule the matter for a hearing before the Court.

18. Beginning with the period ending on September 30, 2025, and in three-month increments thereafter while these Chapter 11 Cases are pending (each, a "**Quarter**"), the Debtors shall file with the Court and serve on the Notice Parties, no later than 30 days after the conclusion of such Quarter, a statement with respect to each OCP paid during the immediately preceding Quarter. Each statement shall include the following information: (a) the name of the OCP; (b) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by that OCP during the reported Quarter; (c) all postpetition payments made to that OCP to date; and (d) a general description of the services rendered by that OCP. The initial OCP

---

[3] As defined in the OCP Procedures set forth in the Proposed Order.

statement shall cover the period beginning on the Petition Date and ending September 30, 2025, and shall be filed no later than October 30, 2025.

19. The foregoing OCP Procedures shall not apply to those professionals for whom the Debtors filed (or will file) separate applications for approval of employment, such as the Debtors' proposed bankruptcy counsel or other restructuring advisors.

## BASIS FOR RELIEF

20. Section 327(a) of the Bankruptcy Code requires court approval for the employment of "professional persons" retained to represent or perform services of the estate. 11 U.S.C. § 327(a). In determining whether an entity is a "professional" within the meaning of Section 327 and must therefore be retained by express approval of the court, bankruptcy courts generally consider whether such entity is involved in the actual reorganization effort, rather than a debtor's ongoing business operations. *See, e.g.*, *In re Cyrus II P'ship & Behar Dev., Inc.*, No. 05-39857, 2008 WL 3003824, at *2 (Bankr. S.D. Tex. July 31, 2008) ("[T]he phrase 'professional persons,' as used in [section] 327(a) is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate.") (quoting *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986)); *In re Fretheim*, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (holding that only those professionals involved in the actual reorganization effort, rather than the debtor's ongoing business, require approval under section 327 of the Bankruptcy Code).

21. Courts often consider the following factors in determining whether an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code:

    (a) whether the entity controls, manages, administers, invests, purchases, or sells assets that are significant to the debtor's reorganization;

8

(b) whether the entity is involved in negotiating the terms of a plan of reorganization;

(c) whether the employment of the entity is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations;

(d) whether the entity is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate;

(e) the extent of the entity's involvement in the administration of the debtor's estate; and

(f) whether the entity's services involve some degree of special knowledge or skill, such that it can be considered a "professional" within the ordinary meaning of the term.

*See, e.g.*, *In re First Merchs. Acceptance Corp.*, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997) (listing factors); *In re Sieling Assocs. Ltd. P'ship*, 128 B.R. 721, 723-24 (Bankr. E.D. Va. 1991) (finding that an environmental consultant was not a professional under Section 327 of the Bankruptcy Code because his duties were not "central to the reorganization process," and, instead, authorizing the debtor to retain the consultant in the ordinary course of business); *In re Riker Indus., Inc.*, 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (declining to require approval of the fees of a management and consulting firm that performed only "routine administrative functions" and whose "services were not central to [the] bankruptcy case" under section 327 of the Bankruptcy Code*)*; *Rohi v. Brewer & Pritchard, P.C. (In re ABC Dentistry, P.A.)*, No. 18-3205, 2019 WL 913356, at *9 (Bankr. S.D. Tex. Feb. 21, 2019) (finding that professionals not employed as estate or committee professionals are not subject to section 327 or section 330 of the Bankruptcy Code).

22. The foregoing factors must be considered as a whole when determining if an entity is a "professional" within the meaning of section 327 of the Bankruptcy Code. None of the factors alone is dispositive. *See First Merchs.*, 1997 WL 873551 at *3 ("In applying these factors, the

9

Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in [total].").

23. Additionally, Section 327(e) of the Bankruptcy Code provides that "[t]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." 11 U.S.C. § 327(e).

24. Upon consideration of the above-listed factors, and because the OCPs will not be involved in the administration of these Chapter 11 Cases, the Debtors do not believe that the OCPs are "professionals" requiring formal retention proceedings under Section 327(a) of the Bankruptcy Code. Instead, the OCPs will provide services in connection with the Debtors' ongoing business that are ordinarily provided by non-bankruptcy professionals. Nevertheless, to provide clarity and an opportunity for oversight, the Debtors seek the relief requested herein to establish definitive mechanisms for retention and payment of the OCPs pursuant to the OCP Procedures and thereby avoid any subsequent controversy with respect thereto.

25. The Debtors and their estates would be well-served by continued retention of the OCPs because of their established relationships with the Debtors and understanding of the Debtors, their operations, and their legal issues. Moreover, in light of the number of OCPs and the significant costs associated with the preparation of retention applications under Sections 327, 328, and 330 of the Bankruptcy Code for OCPs that will receive relatively modest fees during these Chapter 11 Cases, it would be impractical and inefficient for the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for each OCP. Therefore, it is in the best interests of all creditors and parties in interest to retain and compensate

the OCPs in accordance with the OCP Procedures and thereby avoid any disruption in the professional services that are required for the day-to-day operation of the Debtors' business.

26. Although some of the OCPs may hold unsecured claims against the Debtors for services rendered to the Debtors prepetition, the Debtors do not believe that any OCP holds interests materially adverse to the Debtors, their creditors, or other parties in interest. In any event, the OCP Procedures include a requirement that each OCP file a Declaration of Disinterestedness and be subject to a reasonable objection period before an OCP can be compensated. By this Motion, the Debtors are not requesting authority to pay prepetition amounts owed to OCPs.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

27. The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies the requirements of Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this motion is necessary for the Debtors to operate their business without the risk of interruption and to preserve value for their estates through these Chapter 11 Cases.

## RESERVATION OF RIGHTS

28. Nothing contained herein or any actions taken pursuant to such relief requested is intended to be or should be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion or any order granting the relief requested by this motion or a finding that any particular claim is an

administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to Section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection of, or seek avoidance of, all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## NOTICE

29.   The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the holders of the 100 largest customer claims against the Debtors; (d) the DIP Lender; (e) the office of the attorneys general for the states in which the Debtors operate; (f) the United States Attorney's Office for the Southern District of Texas; (g) the Internal Revenue Service; (h) the SEC; (i) other regulatory agencies having a regulatory or statutory interest in these Chapter 11 Cases; (j) any official or statutory committee appointed in these Chapter 11 Cases; (k) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (l) the OCPs. The Debtors respectfully submit that, in light of the nature of the relief requested,

12

no other or further notice is necessary.

WHEREFORE, the Debtors request that the Court enter the Proposed Order, substantially in the form attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: July 14, 2025  
Houston, Texas

Respectfully submitted,

**SCHWARTZ PLLC**

*/s/ Gabrielle A. Hamm*  
Gabrielle A. Hamm (TX Bar No. 24041047)  
Veronica A. Polnick (TX Bar No. 24079148)  
Athanasios E. Agelakopoulos (admitted *pro hac vice*)  
440 Louisiana Street, Suite 1055  
Houston, Texas 77002  
Telephone:   (713) 900-3737  
Facsimile:   (702) 442-9887  
Email:   ghamm@nvfirm.com  
   vpolnick@nvfirm.com  
   aagelakopoulos@nvfirm.com

Samuel A. Schwartz (admitted *pro hac vice*)  
601 East Bridger Avenue  
Las Vegas, Nevada 89101  
Telephone:   (702) 385-5544  
Facsimile:   (702) 442-9887  
Email:   saschwartz@nvfirm.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**CERTIFICATE OF SERVICE**

      I certify that on July 14, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                         */s/ Gabrielle A. Hamm*
                                         Gabrielle A. Hamm