## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LINQTO TEXAS, LLC, *et a*l.,[1] | ) | Case No. 25-90186 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## EMERGENCY MOTION OF SAPIEN GROUP USA LLC
## AND ITS GROUP AFFILIATES
## TO TRANSFER VENUE OF THE DEBTORS' CASES TO
## THE DISTRICT OF DELAWARE PURSUANT TO 28 U.S.C. § 1412

> **Emergency relief has been requested.  Relief is requested not later than August 5, 2025 at 1:00 p.m.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

NOW COMES Sapien Group USA LLC and its group affiliates (together "**Sapien**"), a major shareholder of Debtor Linqto, Inc. ("**Parent Debtor**" or "**Corporation**")[2] and a party in interest in the jointly-administered Chapter 11 cases ("**Cases**") of the Parent Debtor, Linqto

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: 101 Metro Drive, Suite 335, San Jose, CA 95110.

[2]     Specifically, Sapien was the lead investor in the Corporation's Series AA preferred stock financing in 2020 and continues to hold these preferred shares, as well as SPV units in Linqto Liquidshares, LLC with interests in underlying common shares of the Corporation. In addition, prior to the Petition Date, Sapien purchased common stock and also received written consents and proxies for additional shares that together represent a majority of the common shares. These consents and proxies can be used to replace a majority of the Corporation's board of directors ("**Board**"). The remainder of the Board may be elected by Sapien and other preferred shareholders. *See Declaration of Victor Jiang in Support of Sapien Group USA LLC's Motion to Transfer Venue of the Debtors' Cases to the District of Delaware Pursuant to 28 U.S.C. §1412* submitted contemporaneously herewith at ¶ 2.

Liquidshares, LLC ("**Liquidshares**"), Linqto Liquidshares Manager, LLC ("**Liquidshares Manager**," and together with Liquidshares, "**Related Debtors**"), and Linqto Texas, LLC ("**Texas Debtor**, and together with Parent Debtor and Related Debtor, "**Debtors**"), and respectfully avers as follows in support of its above-captioned emergency motion to transfer venue of the Debtors' Cases to the District of Delaware pursuant to 28 U.S.C. § 1412 ("**Motion**'): 

**<u>RELIEF REQUESTED</u>**

1.      Sapien seeks the entry of an order, substantially in the form attached to this Motion ("**Order**"), transferring venue of the Debtors' Cases to the District of Delaware in the interest of justice pursuant to 28 U.S.C. § 1412. Transfer is warranted because the Debtors lack any meaningful relationship whatsoever with this District, entrenched management having created the Texas Debtor as a new Texas limited liability company only <u>three</u> short months before filing for bankruptcy. The Texas Debtor was formed furtively, without the knowledge or approval of the Parent Debtor's shareholders or even the scintilla of any notice to them. As the evidence will demonstrate, a review of the records on file with the Texas Secretary of State reveals that the Texas Debtor was formed on April 7, 2025, and thus was not even in existence for the entire 180-day period leading up to the filing of the Cases that is set forth in 28 U.S.C. § 1408(1). Moreover, a review of the bankruptcy pleadings filed to date does not demonstrate that the Texas Debtor contributes any revenue to the Parent Debtor, the Related Debtors, or the reorganization effort – to the contrary, at the time of filing, the Texas Debtor had no apparent operations or business purpose. The true operating Debtors – the Parent Debtor and the Related Debtors -- are all formed, exist, and operate under the internal laws of the State of Delaware. Consistent with this fact, the bankruptcy petitions for the Parent Debtor and the Related Debtors

represent under penalty of perjury that the basis for their filing in this District (as opposed to Delaware, where the cases rightfully belong) is that they are purportedly related to the case of the newly-formed Texas Debtor pursuant to Section 1408(2), as opposed to being based on any of the debtor-specific criteria set forth in Section 1408(1). This is because the principal place of business and the post office box mailing address for the Parent Debtor and the Related Debtors as well as the physical location of the members of the entrenched management team are all outside of Texas, instead located in the State of California. The filing of the Cases before this Court in this District appears to be the quintessential example of improper forum shopping, with the newly-formed Texas Debtor being created for the apparent purpose of manufacturing and manipulating venue before this Court, as part of a scheme by the Debtors' entrenched management to evade the efforts of the Parent Company's shareholders in the Parent Debtor, including Sapien, to address serious allegations of mismanagement, conflicts of interest, and breaches of fiduciary duties by Parent Debtor's Board[3] and Chief Executive Officer.

2.      While there have been a number of concerning allegations raised about the Debtors' founder and former CEO, the Parent Debtor's current Board has taken actions in blatant derogation of the rights of the Parent Debtor's shareholders under Delaware laws, including: (i) not holding shareholder meetings for an extended period of time; (ii) making inconsistent representations to shareholders, including misleading them about their intention to file these Cases; and (iii) taking unilateral actions in a stealthy and secretive manner, including, without limitation, amending the Parent Debtor's Bylaws without shareholder approval, forming the

---

[3]      By using the term "Board" throughout this Motion, Sapien is referring generally to the group of individuals purporting to hold themselves out as the Corporation's directors at any particular point in time. Sapien's use of this term should not be viewed as an admission or acknowledgement that all such individuals were properly elected board members with authority to act on behalf of the Corporation. To the contrary, as this Motion highlights, that is a disputed issue.

Texas Debtor without the knowledge of the shareholders and other interested parties, and filing

these Cases immediately on the Monday after the July 4th holiday weekend. Furthermore, there

are serious questions as to whether the Parent Debtor's Board is properly formed and had the

requisite authority to file these Cases in the first place, an issue that is under investigation by the

shareholders and will shortly be the subject of Rule 2004 requests. On their face, the resolutions

authorizing the filing of the Cases raise issues about the propriety of the authorization having

been authorized by a "General Committee" appointed by the Parent Debtor's Board, as opposed

to a direct resolution from the Board itself.

3.      In support of this Motion, Sapien respectfully submits the *Declaration of Victor*

*Jiang in Support of Sapien Group USA LLC's Motion to Transfer Venue of the Debtors' Cases to*

*the District of Delaware Pursuant to 28 U.S.C. §1412* ("**Jiang Declaration**") submitted

contemporaneously with, and in support of, this Motion. Mr. Jiang is the Founder and Managing

Partner of Sapien and a former Director of the Parent Debtor, having served on the Board from

October, 2022 until May 30, 2025, when he submitted his written resignation along with another

Director, Karim Nurani ("**Joint Resignation Letter**"). *See* Jiang Declaration at ¶¶ 1, 3 and

**Exhibit A**. Messers. Jiang and Nurami resigned from the Board because they believe that the

Board has engaged in very serious breaches of fiduciary duties owed to the shareholders of the

Corporation, violated securities laws, and failed to adhere to corporate governance requirements

under Delaware law and the Corporation's Certificate of Incorporation and Bylaws. *Id.* at ¶ 4.

Prior to their resignation, Messrs. Jiang and Nurami were non-executive directors, not involved

in the day-to-day management of the Corporation. *Id.*

4.      Based on the filing and pendency of the Debtors' Cases, this Court currently has

jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to

28 U.S.C. § 157(b)(2)(A). Sapien consents to this Court's entry of a final order with respect to the Motion.

5.      The Debtors have asserted that venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §§ 1408 and 1409. As set forth in this Motion, while venue may be correct in the Southern District of Texas as a purely technical matter, Sapien asserts by this Motion that the proper venue is the District of Delaware, the state where all of the Debtors other than the newly-formed Texas Debtor are organized.

6.      The legal basis for the relief requested herein in 28 U.S.C. § 1412, Rules 1014, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**" or "**FRBP**"), and Rule 9013-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of Texas.

## **FACTS**

7.      The Debtors commenced these Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on July 7, 2025 ("**Petition Date**").

8.      On July 8, 2025, this Court entered an Order directing the joint administration of all of the Debtors' Cases for procedural purposes only under the Texas Debtor's case number. [Dkt. No. 21].

9.      The Debtors have alleged that they "paused" operations prior to the Petition Date in February of 2025, converting that pause to an indefinite suspension of operations on March 13, 2025. *See Declaration of Jeffrey S. Stein in Support of Chapter 11 Petitions, First Day Motions, and Related Relief* [Dkt. No. 10] ("**Stein Declaration**") at ¶ 47.

10.     The Debtors allege that their operations were paused in February of 2025 (two months prior to the Texas Debtor's formation) to allegedly address recently discovered

operational and compliance deficiencies and the Debtors subsequently suspended indefinitely because of alleged concerns that the continued operation of the Debtors' platform would purportedly exacerbate the Debtors' potential liability for non-compliance with federal securities laws. *Id.* This intentional shutdown of the Debtors' operations brought a halt to their revenue-generating businesses, and in the ensuing months, the Debtors' cash reserves of approximately $16.4 million were depleted to under $125,000, primarily by paying professionals who, along with the Board, were the architects of the current Cases. *See* Jiang Declaration at ¶ 21; *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (Dkt. No. 16) at ¶ 26 ("As of the Petition Date, the Debtors' currently available cash on hand is approximately $123,000…..").

11.     On May 13, 2025, the Board purported to create a "General Committee" comprised of all but one of the Board members to, with certain exceptions, generally hold and exercise the powers and responsibilities of the Board. *Id.* at ¶ 4. The General Committee subsequently purported to create a "Special Subcommittee," to which it delegated, among other things, certain investigatory powers, to be exercised with the guidance of Special Subcommittee Counsel that the Debtors intend to seek Court authority to retain. *Id.* at ¶¶ 5-8.

12.     The Texas Debtor is a Texas limited liability company that allegedly has its principal place of business in Houston, Texas, but has a mailing address in Sunnyvale, California. *See Voluntary Petition* filed by Texas Debtor [Dkt. No. 1] ("**Texas Debtor Petition**") at p. 1, ¶ 4 and *Action by Written Consent of the Managing Member of Linqto Texas LLC, a Texas Limited Liability Company* attached at pp.13-18. A search of the Texas Secretary of State's

website reveals that the Texas Debtor was not created and registered as an entity in Texas until April 7, 2025, *See Declaration of Kristin Lawson* ("**Lawson Declaration**") at ¶¶ 4-5 and **Exhibit A**. Notably, this was after the other Debtors had suspended their operations, and appears to have been done for the sole purpose of manufacturing venue in Texas for an anticipated bankruptcy filing. In paragraph 11 of the Texas Debtor Petition, the Texas Debtor checked the box attesting to the fact that it "has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district." Texas Debtor Petition at p. 2, ¶ 11. As of the Petition Date, the Texas Debtor had only been in existence and domiciled in Texas for 91 days, during which time it does not appear to have done any business, employed any persons, or held any assets in the State of Texas.

13.     The Parent Debtor is a Delaware corporation with its principal place of business in San Jose, California and a mailing address in Sunnyvale, California. *See Voluntary Petition* filed by Parent Debtor [Case No, 25-90187, Dkt. No 1] ("**Parent Debtor Petition**") at p. 1, ¶ 4 and A*ction by Written Consent of the General Committee of the Board of Directors of Linqto, Inc., a Delaware Corporation* attached at pp. 13-18. The Parent Debtor does not allege any independent nexus to the State of Texas, and has instead based its filing in this District on the existence of the Texas Debtor's case. *Id.* at p. 2, ¶ 11 ("A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.").

14.     Liquidshares is also a Delaware limited liability company with its principal place of business in San Jose, California and a mailing address in Sunnyvale, California. *See Voluntary Petition* filed by Linqto Liquidshares LLC [Case No. 25-90188, Dkt. No. 1] ("**Liquidshares Petition**") at p. 1, ¶ 4 and *Action by Written Consent of the Managing Member of Linqto*

*Liquidshares LLC, a Delaware Limited Liability Company* attached at pp.13-18. Liquidshares also does not allege any independent nexus to the State of Texas, and has instead based its filing in this District on the existence of the Texas Debtor's case. *Id.* at p. 2, ¶ 11 ("A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.").

15.     Liquidshares Manager is also a Delaware limited liability company with its principal place of business in San Jose, California and a mailing address in Sunnyvale, California. *See Voluntary Petition* filed by Linqto Liquidshares Manager LLC [Case No.25-90189, Dkt. No. 1] ("**Liquidshares Manager Petition**") at p. 1, ¶ 4 and *Action by Written Consent of the Sole Member of Linqto Liquidshares Manager LLC, a Delaware Limited Liability Company* attached at pp. 13-18. Liquidshares Manager does not allege any independent nexus to the State of Texas, and has instead based its filing in this District on the existence of the Texas Debtor's case. *Id.* at p. 2, ¶ 11.

16.     A review of the Debtors' Petitions, various first-day motions, and supporting declarations filed on the Petition Date reveals virtually no information specific to the Texas Debtor, other than statements reflecting the fact that the Parent Debtor is the sole member and manager of the Texas Debtor. *See, e.g.*, *Corporate Ownership Statement* included as p. 7 of the Texas Debtor Petition (identifying Parent Debtor. as the owner of 100% of the equity interests in the Texas Debtor); Stein Declaration at ¶ 17 ("Linqto Parent is the managing member of Linqto Texas, a Texas limited liability company."). Notably, none of these pleadings state what business the Texas Debtor was formed to conduct or may have actually conducted prior to the Petition Date.

17.     Despite the lack of any evidence that the Texas Debtor engaged in any business operations prior to the Petition Date, the Texas Debtor Petition states that the Texas Debtor has

between 10,0001 and 25,000 creditors, and between $500,000,001 and $1 billion in assets and liabilities. *See* Petition at p. 3, ¶¶ 14-16. The Texas Debtor Petition further lists creditors holding the 30-largest unsecured claims that are not insiders. *Id.* at p. 8. This information provided by the Texas Debtor is identical to the information provided by each of the remaining three Debtors that actually had operations prior to the Petition Date (outside the State of Texas). *Compare* Texas Debtor Petition; Parent Debtor Petition; Liquidshares Petition; Liquidshares Manager Petition. It is noteworthy that many, if not most, of the claims listed in the Voluntary Petition for the Texas Debtor appear to antedate the legal existence of the Texas Debtor (an issue that will be the subject of further discovery and additional proceedings).

## **BASIS FOR RELIEF**

18.    28 U.S.C. § 1408 governs venue in bankruptcy cases, providing as follows:

[A] case under title 11 may be commenced in the district court for the district--

(1)    in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, or the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

28 U.S.C. § 1408. Venue in a particular district is proper if a debtor satisfies any of the tests set forth in Section 1408. *See, e.g., In re Segno Communications, Inc.*, 264 B.R. 501, 505 (Bankr. N.D. Ill. 2001 (finding that, given that the four tests in Section 1408(a) "are stated in the alternative, any of the four is jurisdictionally sufficient"). If, however, none of the tests are satisfied, venue is not proper, and the Court must transfer or dismiss the case. *See, e.g.*, 28 U.S.C. § 1406 ("The district court of a district in which is filed a case laying venue in the wrong

division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R. 122, 134 (Bankr. S.D.N.Y. 2012) (transferring case where venue was improper because the "Court cannot find satisfaction of any of the four bases under § 1408(1)").

19.     In these Cases, the Texas Debtor has alleged venue under Section 1408(1), based on its representation that it had its "domicile, principal place of business, or principal assets in this district" for either the 180 days immediately preceding the Petition Date "or for a longer part of such 180 days than in any other district." Texas Debtor Petition at p. 2, ¶ 11. For each of the Parent Debtor and the Related Debtors, venue is based solely on their status as affiliates of the Texas Debtor. *See* Parent Debtor Petition at p. 2, ¶ 11; Liquidshares Petition at p. 2, ¶ 11; Liquidshares Manager Petition at p. 2, ¶ 11. Thus, venue for all four Debtors is proper in this District if, and only if, venue is proper for the Texas Debtor. *See In re Houghton Mifflin*, 474 B.R. at 134 (finding that venue was improper for all 25 debtors, 23 of which were based on affiliate status under Section 1408(2), where it was improper for the two key debtor's alleging venue under Section 1408(1)).

20.     28 U.S.C. § 1412 provides for the transfer of a Chapter 11 case to another district, stating that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.

21.     Similarly, Rule 1014(a) of the Bankruptcy Rules provides:

(1) *Petition in the Proper District.* If a petition is filed in the proper district, the court may transfer the case to another district in the interest of justice or for the convenience of the parties. The court may do so:

    (A) on its own or on a party in interest's timely motion; and

(B) only after a hearing on notice to the petitioner, United States trustee, and other entities as the court orders.

*(2) Petition Filed in an Improper District*. If a petition is filed in an improper district, the court may dismiss the case or may transfer it to another district on the same grounds and under the same procedures as stated in (1).

FRBP 1014(a).

22.     A business entity generally resides or is domiciled, and venue is therefore appropriate under Section 1408, in the state where it was organized or incorporated. *See In re Crosby Nat'l Golf Club, LLC*, 534 B.R. 888, 890 (Bankr. N.D. Tex. 2015) ("In the case of a business entity, the state where it was organized is generally its domicile or residence."); *In re Segno Communications, Inc*., 264 B.R. 501, 506 (Bankr. N.D. Ill, 2001) ("To determine the domicile of a corporation we look to the state of its incorporation."); *In re Spicer Oaks Apartments, Ltd*., 80 B.R. 142, 143 (Bankr. E.D. Mo. 1987) ("Section 1408 does not define the term 'domicile' for venue purposes. However, the state of incorporation of a corporation is to be the domicile of the corporation and it has been held that the legal existence, the home and the habitat, the residence and the citizenship of a corporation can only be in the state that created the corporation.") (citations omitted). The Parent Debtor and the Related Debtors are all organized under the laws of the State of Delaware. Thus, transfer of the Debtors' Cases to the District of Delaware would be entirely proper due to the undisguised manufacture of venue in the State of Texas as a blatant exercise of forum shopping.

23.     The Debtors will no doubt contend that venue is technically proper because the Texas Debtor was domiciled in Texas for 91 days, which is longer than it was domiciled anywhere else (*i.e.*, nowhere) in the 180 days preceding the Petition Date. However, the evidence strongly supports that the Texas Debtor was created for the sole purpose of manipulating the filing of the Cases in Texas. The Texas Debtor was not created until April 7, 2025, after all of the

11

Debtors' business operations were intentionally halted and their cash reserves depleted in an apparent attempt to create an insolvency justification for the filing of the Cases. The creation of the Texas Debtor, just like the engineered insolvency, was crafted by the Board with the assistance of its highly-paid professionals to support its bankruptcy filings in this District. Even assuming, *arguendo*, that venue is technically proper in this District, Section 1412 and Bankruptcy Rule 1014(a)(1) permit venue to be transferred in this case in the interest of justice because the question of "[w]here a bankruptcy case *may* be filed is a separate question from where a bankruptcy case *should* be filed." *In re Victorville Aerospace, LLC*, Nos. 08-35790, 08-35785, 2008 WL 5482785, at *2 (Bankr. S. D. Tex. Dec. 9, 2008) (emphasis in original).

24.     Courts considering whether transfer of a bankruptcy case is appropriate under Section 1412 have generally adopted the same analysis that applies to the transfer of venue in federal civil cases generally under 28 U.S.C. § 1404(a). *See Id.* (applying case law interpreting Section 1404(a) to bankruptcy venue dispute). Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* at *3.

25.     There is a key difference between Sections 1404(a) and 1412, however, in that "28 U.S.C. § 1412 is disjunctive ('in the interest of justice *or* for the convenience of the parties') and 28 U.S.C. § 1404(a) is conjunctive ('[f]or the convenience of the parties and witnesses, in the interests of justice')." *Quicksilver Resources Inc. v. Eagle Drilling, LLC*, Civil No. H-08-0868, 2010 WL 1633348, at *4 (S.D. Tex. Apr. 22, 2010) (emphasis added)*; see also Schouten v. GEA Farm Techs., Inc. (In re Schouten)*, 657 B.R. 531, 538 (Bankr. N.D. Tex. 2024) ("[B]ecause § 1412 is *disjunctive*, the movant need only show the transfer is either 'in the interest of justice' or 'for the convenience of the parties.'") (emphasis in original); *see also In re DBRC Lofts, Ltd.*,

No. 12-115599-CAG, 2013 WL 395129, at *2 (Bankr. W.D. Tex. Jan. 31, 2013) ("Justice and convenience are **two separate paths to transfer** under § 1412; **either can justify transfer on its own**.") (emphasis added). Moreover, Section 1404(a) "includes an additional requirement that the transferee court be one in which the action could have been brought originally." *Quicksilver*, 2010 WL 1633348, at *4. "Thus, 28 U.S.C.§ 1404 (a) sets the bar a bit higher than 28 U.S.C. § 1412." *Id.*

26.     "The 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness…." *Zhang v. Rothrock*, No. Civ.A. H-05-3461, 2006 WL 213951, at *1 (S.D. Tex. Jan. 25, 2006) (quoting *In re Manville Forest Product Corp*., 896 F.2d 1384, 1391 (2d Cir. 1990))*; see also In re BDRC Lofts*, 2013 WL 395129, at *2 ("The standard for transfer in the interest of justice is flexible, and relevant factors include the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness.").

27.     An underlying premise of the venue transfer statutes is to prohibit forum shopping and prevent a plaintiff or debtor from abusing its privilege to select a venue by subjecting other parties to inconvenient venues. *See In re Victorville Aerospace*, 2080 WL 5482785, at 3. Courts take allegations of venue manipulation seriously. *See Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*, Civil Action No. 4:18-cv 474, 2019 WL 3082314, at *10 (E.D. Tex. July 15, 2019). Accordingly, courts have consistently recognized that a debtor's forum shopping is grounds for a transfer of venue under the 'interest of justice' standard. *See, e.g., In re Lazaro*, 128 B.R. 168, 174 (Bankr. W. D. Tex. 1991) ("[C]ourts evaluating 'the interest of justice' are well-advised to consider whether the debtor has been engaging in forum-shopping, and to transfer the

case if that is what they conclude is going on. Section 1412 gives the court ample authority

therefore to discourage abuse."); *see also In re Eclair Bakery Ltd*., 255 B.R. 121, 142 (Bankr.

S.D.N.Y. 2000) (holding that interest of justice requires that the court not reward forum shopping

efforts); *In re ERG Intermediate Holdings, LLC*, No. 15-31858-HDH11, 2015 WL 6421607, at

*6 (Bankr. N.D. Tex. Oct. 27, 2015) ("Courts evaluating the 'interest of justice' also commonly

consider whether a debtor has engaged in abusive forum shopping, and will transfer a case if the

court finds such abuse."); *see also In re Certa Dose, Inc.*, No. 21-11045 (LGB), 2021 WL

5177376, at *12 (Bankr. S.D.N.Y. Nov. 4, 2021) (same).

28.    A transfer of venue in the 'interest of justice" is further justified to protect the

integrity of the bankruptcy system. *See, e.g., In re Barrington Spring House, LLC*, 509 B.R. 587,

606 (Bankr. S.D. Ohio 2014 (fairness and integrity of the bankruptcy system are relevant factors

when considering motion to transfer venue under Section 1412); *see also In re Patriot Coal

Corp*., 482 B.R. 718, 739 (Bankr. S.D.N.Y. 2012) ("Ensuring that parties do not abuse the

bankruptcy court system, by filing in a district for the purpose of 'forum shopping,' is also

grounds to transfer venue in the interests of justice."). "[T]he Supreme Court has long urged

courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's

attempt at manipulation." *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (citing

cases).

29.    In this case, the purposeful creation of an affiliate seemingly solely for purposes

of establishing venue in this District requires transfer in the "interest of justice" under Section

1412 and Bankruptcy Rule 1014 as a penalty for its undisguised forum shopping. As one court

explained:

> To ignore it would be to condone the Debtors' strategy and elevate form over
> substance in a manner that courts have found impermissible; it would run afoul of

> any reasonable application of the intent of the venue statue. While the Debtors did
> in fact comply with section 1408, **how** they complied with the statute must be
> taken into account when considering the "interest of justice" prong of section
> 1412.

*In re Patriot Coal*, 482 B.R. at 743 (emphasis added)*; see also id.* at 744 ("[T]his Court cannot

allow the Debtors' venue choice to stand, as to do so would elevate form over substance in way

that would be an affront to the purpose of the bankruptcy venue statute and the integrity of the

bankruptcy system."); *see also id.* at 746 ("[T]he Debtors created facts in order to satisfy the

statute, as opposed to taking advantage of the facts as they existed. ***Permitting the Debtors'***

***cases to remain in this District under these circumstances would all but render the venue***

***statute meaningless***. It would allow potential large corporate debtors to choose what they view

as the optimal venue for their bankruptcy cases and, in preparation for filing chapter 11,

incorporate an affiliate in that location for purposes of satisfying section 1408.") (emphasis

added)*; see also Virginia Innovation Sciences*, *supra*, 2019 WL 3082314, at *9-10 ("The

Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws

are not frustrated by a party's attempt at manipulation. As such, the Supreme Court explained

that Section 1404(a) 'should be construed to prevent parties who are opposed to a change of

venue from defeating a transfer which, but for their own deliberate acts or omissions, would be

proper, convenient and just.' A plaintiff's attempts to manipulate venue in anticipation of

litigation or a motion to transfer venue falls squarely within these prohibited activities.

Accordingly, '[t]he Federal Circuit cautions that ***where a plaintiff's "presence in Texas appears***

***to be recent, ephemeral, and an artifact of litigation," courts should not be misled***.'") (citations

omitted) (emphasis added). Forum shopping cannot be rewarded or incentivized by permitting

the manufacture of venue in the State of Texas.

30.     Moreover, when considering which venue is most appropriate, this Court may properly consider in the interest of justice the fact that the Parent Debtor is a Delaware corporation, and the Cases are likely to involve vigorously contested issues regarding the constitution of the Parent Debtor's Board and the Parent Debtor's resulting authority (or lack thereof) under the Delaware General Corporation Law to file these Cases. The Fifth Circuit has noted that a state's familiarity with the applicable law is especially probative in any transfer of venue analysis. *In re Planned Parenthood Federation of Am., Inc.*, 52 F.4th 625, 632 n.5 (5th Cir. 2022).

31.     While California might also qualify as an alternate venue for the Cases, Delaware is unequivocally the proper choice due to material and substantial legal issues that will be brought before the appropriate court in short order concerning corporate governance, including: (i) whether amended Bylaws were properly authorized for the Parent Debtor; (ii) whether the Parent Debtor's Board was properly constituted and has the requisite authority to appoint the General Committee, the Special Subcommittee, and to act generally; and  (iii) whether the Parent Debtor's Board had the proper authority to authorize the filing of these Cases. *See* Jiang Declaration at ¶¶ 6-18.  All of these issues must be decided applying Delaware corporate law, and who better to adjudicate these issues than a Delaware court, whether it be a Delaware District Court, Bankruptcy Court, or the Delaware Court of Chancery.

32.     Specifically, these Cases were all authorized, directly or indirectly, by the Parent Debtor. Whether the Parent Debtor properly authorized or filed the Cases will depend on whether necessary actions by its Board and shareholders were properly taken. That is a question of Delaware corporate law, including Delaware's corporate statute, the Delaware General Corporation Law, and extensive Delaware case law. *See In re Franchise Services of North*

*America, Incorporated*, 891 F.3d 198, 206-207 (2018) ("In absence of federal incorporation, that authority finds its source in local law." *Price v. Gurney*, 324 U.S. 100, 106, 65 S.Ct. 513, 89 L.Ed. 776 (1945). State law thus determines who has the authority to file a voluntary petition on behalf of the corporation. *See id.* at 106–07, 65 S.Ct. 513; *In re Nica Holdings, Inc.*, 810 F.3d 781, 789 (11th Cir. 2015). If the petitioners lack authorization under state law, the bankruptcy court "has no alternative but to dismiss the petition." *Price*, 324 U.S. at 106, 65 S.Ct. 513. "It is not enough that those who seek to speak for the corporation may have the right to obtain that authority." *Id.* Rather, they must have it at the time of filing. *See id.* at 106–07, 65 S.Ct. 513. Absent a duly authorized petition, the bankruptcy court has no power "to shift the management of a corporation from one group to another, to settle intracorporate disputes, and to adjust intracorporate claims." *Id.*).

33.     Prior to the Petition Date, the Corporation has consistently failed to hold annual shareholder meetings for the purposes of electing directors, despite its obligation to do so under Delaware law and the Corporation's Bylaws. *See* Jiang Declaration at ¶¶ 8-9. Despite the unanimous agreement of members of the Board to schedule a shareholder meeting, the promise of a meeting was not kept once the Corporation's current Chief Executive Officer, Daniel Siciliano, was hired in December 2024. *Id.* at ¶ 10. Instead, despite numerous additional promises and a formal written demand in May of 2025 by Gavin Solomon, a shareholder of the corporation ("**Shareholder Demand**"), the Corporation has not held an annual shareholder meeting since November of 2023. *Id.* at ¶ 10 and **Exhibit B**. The Shareholder Demand outlines in detail the many broken promises to hold an annual shareholder meeting and states Mr. Solomon's belief that no appropriate annual shareholder meeting has been held since at least January of 2020. *Id.* at **Exhibit B**.

34.     Following Mr. Siciliano's hiring as the Corporation's CEO, he purported to act as a Director. *Id.* at ¶ 12. It does not appear, however, that Mr. Siciliano was ever elected to the Board by the Corporation's shareholders, either at a meeting of shareholders by written consent, or that he was appointed by the Board to fill a vacancy. *Id.* As a result, the validity of any actions taken by Mr. Siciliano as Director, together with any actions taken by the Board that required his vote to pass, appear to be invalid. *Id.*

35.     In addition, a second Director, Alison Kutler, was initially elected as a Director to represent preferred shareholders of the Corporation, but it appears that her directorship was subsequently "switched" to represent common shareholders after Mr. Siciliano began purporting to act as a Director. *Id.* at ¶ 13. With the switch of Ms. Kutler to a common director and Mr. Siciliano purporting to be a common director, they were able to achieve a majority voting block and control the Corporation. *Id.* at ¶ 14. This "switch," however, was not authorized by either the common or preferred shareholders of the Corporation, who elect the Board's directors. *Id.* at ¶ 15.

36.     Once Mr. Siciliano gained ostensible control of the Corporation's Board, he caused the Board to amend the Corporation's Bylaws to make it more difficult for shareholders to exercise their voting rights to remove directors of the Corporation, adding additional notice requirements that are more typical of publicly-held corporations. This is relevant because the Board became aware in the Spring of 2025 that certain shareholders were asserting their rights to an election. *Id.* at ¶ 16-17.

37.     Each of these issues need to be addressed, with the Board's resulting authority or lack thereof to be determined by interpreting Parent Debtor's Certificate of Incorporation and Bylaws as well as applicable Delaware law. These significant issues of Delaware law go to the

heart of these bankruptcy cases and their resolution will determine whether the Cases were properly filed or should be dismissed. Because the authority of the Parent Debtor's current Board is in question, this significant issue of Delaware law, which may well result in the dismissal of the Cases, should be answered by the Delaware courts.

38.     Although Sapien's investigation of these facts is not yet complete, and likely will require additional discovery in these Cases, Sapien cannot rule out the possibility that dismissal of these Cases may be warranted due to a lack of proper corporate authority, and reserves the right to make a motion to such effect at an appropriate time. In the meantime, however, the potential for significant questions of Delaware corporate law going to the heart of these cases, and the proper authority to file them in the first place, makes transfer to the District of Delaware particularly appropriate, as that District has significant experience in dealing with such issues as well as an interest in having such disputes resolved locally.

39.     Based on the foregoing, the interest of justice strongly supports this Court's transfer of venue of the Debtors' Cases to the District of Delaware.

## REQUEST FOR EMERGENCY RELIEF

40.     Sapien asserts that an expedited hearing on this Motion on less than 21 days' notice is necessary under the circumstances of this case. The Debtors have already obtained interim DIP financing in the amount of $10 million, and a hearing for final approval of the full $60 million DIP facility is scheduled for August 5, 2025 at 1:00 p.m. In addition, the Debtors have just filed and noticed four additional motions for a hearing on August 5th, including a motion which seeks a declaration that certain securities held by the Debtors are property of the Debtors' estates. In light of the securities laws issues that the Debtor has already identified, Sapien believes that the issue of whether various shares issued by third parties are the legal and equitable property of the Debtors or are subject to claims of the Debtors' customers is a key legal issue that will need to be determined in these Cases, one that is more properly the subject of an adversary proceeding following full discovery and not a rushed decision on a motion pursuant to Section 363 of the Bankruptcy Code. Moreover, this  Motion addresses the propriety of venue before this Court, a threshold legal issue that impacts whether the Court can and should rule on any further motions in these Cases. Considerations of both convenience and fundamental fairness dictate that this critical procedural Motion be heard before the Debtors are allowed to push forward with a host of motions in the Cases in an attempt to obtain the benefits of their forum shopping. Accordingly, Sapien respectfully requests that the hearing on this Motion be set for hearing on or prior to the hearings currently scheduled for August 5th.

## CONCLUSION

WHEREFORE, Sapien respectfully requests that the Court enter the attached Order, granting the emergency relief requested herein and such other and further relief as this Court deems just and proper.

Dated: July 16, 2025

Respectfully submitted,

**BONDS ELLIS EPPICH SCHAFER JONES LLP**


By: */s/ Aaron M. Guerrero*
Aaron M. Guerrero (TX Bar No. 24050698)
Bryan Prentice (TX Bar No. 24099787)
402 Heights Blvd.
Houston, TX 77007
Telephone: 713.335.4990
Facsimile: 713.335.4991
aaron.guerrero@bondsellis.com
bryan.prentic@bondsellis.com

**LEECH TISHMAN NELSON HARDIMAN, INC.**
Sandford L. Frey (CA I.D. # 117058)
*Pro Hac Vice Application Pending*
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
Telephone: 424.738.4400
Facsimile: 424.738.5080
sfrey@leechtishman.com

**LEECH TISHMAN FUSCALDO & LAMPL, LLC**
John M. Steiner (PA I.D. #79390)
Kristin Anders Lawson (PA I.D. #74497)
*Pro Hac Vice Applications Pending*
525 William Penn Place, 28th Floor
Pittsburgh, PA  15219
Telephone:  412.261.1600
Facsimile:   412.227.5551
jsteiner@leechtishman.com
klawson@leechtishman.com

*Counsel for the Sapien Group USA LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 16, 2025, I caused a copy of the foregoing document to be served on all parties receiving notice via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas, and by email to the email addresses listed in the Master Service List (as of July 11, 2025) [Doc. No. 75].

*/s/ Aaron M. Guerrero*