IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>LINQTO TEXAS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-90186<br><br>(Jointly Administered) |

**DECLARATION OF JEFFREY S. STEIN IN SUPPORT OF:
(A) DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING
THE USE OF ESTATE PROCEEDS FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS, AND ENCUMBRANCES, (II) DETERMINING THAT THE RIPPLE
SALE PROCEEDS ARE ASSETS OF THE BANKRUPTCY ESTATE, AND (III)
GRANTING RELATED RELIEF; AND (B) DEBTORS' EMERGENCY MOTION FOR
ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO
OBTAIN POSTPETITION SECURED FINANCING, (II) GRANTING LIENS AND
PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE**

I, Jeffrey S. Stein, declare as follows under penalty of perjury.

1. I am the Chief Restructuring Officer of Linqto, Inc. ("**Linqto Parent**"), Linqto Texas, LLC ("**Linqto Texas**"), Linqto Liquidshares, LLC ("**Liquidshares**"), and Linqto Liquidshares Manager, LLC ("**Liquidshares Manager**" or, collectively with Linqto Parent, Linqto Texas, Liquidshares, and Liquidshares Manager the "**Debtors**" and, collectively with their non-debtor affiliates, "**Linqto**" or the "**Company**"). I am over the age of 18 and mentally competent.

2. I either have personal knowledge of the matters set forth herein or I have reviewed, with the benefit of assistance from the Debtors' financial and legal professionals, relevant books and records of the Debtors kept in the ordinary course of business and in accordance with Federal

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: P.O. Box 2859, Sunnyvale, CA 94087.

1

Rule of Evidence 803(6).  With respect to those matters set forth herein predicated upon my information and belief, I believe such matters to be true and correct.  If called upon to testify as to the matters set forth in this Declaration, I could and would do so.

3.  Additional information regarding my background, the Debtors, their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in the *Declaration of Jeffrey S. Stein in Support of Chapter 11 Petitions, First Day Motions, and Related Relief* (the "**First Day Declaration**"), which is incorporated herein by this reference.[2]

4.  I submit this declaration (the "**Declaration**") in support of the following:

   (a)  *Debtors' Motion for Entry of an Order (i) Authorizing the Use of Estate Proceeds Free and Clear of all Liens, Claims, Encumbrances, and Interests, (ii) Determining that the Ripple Sale Proceeds are Assets of the Bankruptcy Estate, and (iii) any Related Relief* [Docket No. 79] (the "**Ripple Motion**"); and

   (b)  *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 16] (the "**DIP Motion**" and, together with the Ripple Motion, the "**Financing Motions**").

5.  I am familiar with the contents of the Financing Motions and believe, based on my informed business judgment, that the relief sought therein, as modified by the terms set forth in

---

[2]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion or the First Day Declaration, as applicable.

2

the *Debtors' Emergency Motion for Entry of an Order (I) Approving Settlement Between the Debtors, the Official Committee of Unsecured Creditors, and the Deaton Parties Regarding Ripple Tender Proceeds, DIP Financing, and Customer Treatment Pursuant to Bankruptcy Rule 9019, and (II) Granting Related Relief* [Docket No. 505] (the "**Settlement Motion**"), is necessary to fund the administration of these cases (the "**Chapter 11 Cases**") and will help minimize the costs incurred by the Debtors' estates.

6. On December 10, 2024, Ripple Labs, Inc. ("**Ripple**") announced an upcoming tender offer, pursuant to which Ripple would buy up to 5% of eligible equity at a price of $125 per share (the "**December Ripple Tender**"). The Debtors' former management participated in the December Ripple Tender, submitting 90,111 shares of Ripple common stock and 153,333 shares of Ripple preferred stock, for an expected purchase price of approximately $30 million. Of the 243,444 shares offered, 151,105 were filled at a price of $125 per share, for total proceeds of approximately $18.8 million. True and correct copies of the Letter of Transmittal, Disclosure Notice, and other transaction documents for the December Ripple Tender are being filed contemporaneously herewith.

7. The Debtors' participation in the December Ripple Tender occurred before current management was hired in January 2025.

8. Upon learning of the various securities investigations the Debtors faced, the Debtors' new management elected to hold the funds generated from the December Ripple Tender (the "**Ripple Tender Proceeds**") in a money market account at Silicon Valley Bank, a division of First-Citizens Bank & Trust, held by Liquidshares (the "**Proceeds Account**"), which Proceeds Account was transferred to a to a debtor-in-possession money market account at Customers Bank on or about September 10, 2025.

9. While the Debtors elected to segregate the Ripple Tender Proceeds from funds held in other money market and operating accounts out of an abundance of caution, the Proceeds Account is not a restricted account or escrow account.

10. As of the Petition Date, the Proceeds Account held roughly $19,230,000 in Ripple Tender Proceeds, inclusive of interest.

11. The Ripple shares underlying the Ripple Tender Proceeds were purchased by Liquidshares, with Liquidshares' own funds. True and correct copies of certain Ripple stock certificates issued to Liquidshares are being filed contemporaneously herewith.

12. In addition to the Ripple Tender Proceeds, Liquidshares is holding funds arising from distributions and dividends from other Securities corresponding to Customer accounts (the "**Platform Securities**"). As of the Petition Date, the Debtors were holding approximately $641,000 from dividends and distributions from Platform Securities other than Ripple (collectively with the Ripple Proceeds, the "**Platform Securities Proceeds**").

13. The Platform Securities were purchased by Liquidshares, with Liquidshares' own funds. True and correct copies of certain stock certificates of the Platform Securities issued to Liquidshares are being filed contemporaneously herewith.

14. When Customers signed up for the Linqto platform, they each executed a subscription agreement (the "**Subscription Agreements**" and each, a "**Subscription Agreement**"). The Subscription Agreements are substantially similar, though not all precisely identical. A copy of each version of the Subscription Agreement used by Linqto is being filed contemporaneously herewith.

15. The *Second Amended and Restated Limited Liability Company Operating Agreement* of Liquidshares, dated as of January 1, 2024 (as amended, the "**Liquidshares**

Operating Agreement") is being filed contemporaneously herewith. The Subscription Agreements provide that the Customers agreed to be bound by the Liquidshares Operating Agreement, as may be amended from time to time, and that the Liquidshares Operating Agreement would control in the event of a conflict between the provisions of the relevant Subscription Agreement and the Liquidshares Operating Agreement.

16. On the Petition Date, the Debtors filed the *Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**DIP Financing Motion**") [Docket No. 16], seeking to borrow up to $60,000,000 (the "**DIP Financing**"), including $10,000,000 on an interim basis.

17. On September 16, 2025, the Debtors filed the Settlement Motion, seeking approval of a proposed settlement set forth in the *Settlement Stipulation Regarding Ripple Tender Proceeds, DIP Financing, Customer Treatment, and Related Relief* (the "**Stipulation**" and the settlement documented therein, the "**Settlement**") between the Official Committee of Unsecured Creditors (the "**Committee**"), and John E. Deaton ("**Deaton**"), on behalf of himself and the "Deaton Represented Creditors" (together with Deaton, the "**Deaton Parties**" and, collectively with the Debtors and the Committee, the "**Settlement Parties**").

18. Under the Settlement, the Debtors will be authorized to finance the administration of the Chapter 11 Cases through use of (i) the proceeds from the sale of Reserved Securities (as defined in the Settlement Motion), (ii) the Platform Securities Proceeds (including the Ripple Tender Proceeds, and (iii) the DIP financing in an aggregate amount of up to $25,000,000 (the "**DIP Facility Amount**" and the loans made pursuant thereto, the "**DIP Loans**"), in accordance

with the budget attached to the Stipulation as **Exhibit 2** (the "**Approved Budget**"). In exchange, the Debtors agreed to the treatment of Customer claims or interests under a plan of reorganization to be proposed, the principal terms of which are set forth in the "Customer Securities Treatment Term Sheet" attached to the Stipulation as **Exhibit 1** (the "**Term Sheet**").

19. As described in the First Day Declaration, the Company indefinitely suspended operation of the Platform and by extension, its primary revenue-generating operations, on March 13, 2025. As a result, the Debtors have limited operations and are generating limited revenue, primarily from the sale of the Reserved Securities held in reserve by Liquidshares for its own account.

20. The Debtors' Reserved Securities and cash on hand are insufficient to fund, among other things, payroll and benefits, insurance, vendors, and other costs required for maintenance of the Debtors' operations and administration of the Chapter 11 Cases. In order to fund the administration of the Chapter 11 Cases, including prosecution of a plan of reorganization that returns to Customers their economic interests in the Platform Securities, the Debtors require the use of the Reserved Securities, the Platform Securities Proceeds, and the DIP Facility pursuant to the Approved Budget.

21. The Debtors worked with their professionals, including their financial advisor, Triple P TRS, LLC ("**Portage Point**"), along with the Committee's professionals, to project the amount of postpetition funding necessary to administer the Chapter 11 Cases while operating the Debtors' business and develop the Approved Budget.

22. The Debtors and their advisors determined that the Debtors would require liquidity of approximately $35,000,000 to $40,000,000 to operate in the ordinary course of business during

the Chapter 11 Cases, and satisfy all administrative costs and expenses, while giving the Debtors the opportunity to address the estates' outstanding liabilities and prosecute a plan.

23. The Approved Budget contains line items for each category of revenue anticipated to be received and all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of their business for the period set forth therein. The Approved Budget establishes that the Debtors will have adequate liquidity to operate their business and administer their Chapter 11 Cases if use of the Platform Securities Proceeds and the DIP Facility are authorized.

24. Nonetheless, the cost of the postpetition financing the Debtors seek to borrow is high and the Debtors seek to charge the Platform Securities, which correspond to Customers' accounts, as little as possible in order to increase the recovery to the Customers and creditors. Accordingly, and as set forth in the Stipulation, the Debtors will allocate costs, to the extent possible and practicable, first to the proceeds of Reserved Securities, second to the Platform Securities Proceeds, and third, to the DIP Facility.

25. The Debtors are seeking to use the Ripple Tender Proceeds in good faith and for a proper purpose. Specifically, the Debtors filed these Chapter 11 Cases to address defects in their organizational structure, obtain the requisite regulatory approvals and licenses to operate, and distribute value to their stakeholders, including their Customers. The Debtors have limited operations and cannot restart the platform without regulatory approval, which is not imminent.

26. Use of the Platform Securities Proceeds and DIP Facility in accordance with the Settlement will ensure that the estates have adequate capital to (i) administer these Chapter 11 Cases in a manner that maximizes value for Customers and all parties in interest, (ii) facilitate the collaborative formulation of a plan that delivers economic interests to Customers which, to the

greatest extent legally and financially possible, match the economic interests purported to be sold to such Customers, and (iii) enable the plan confirmation process to proceed expeditiously.

27. I believe that the use of the Platform Securities Proceeds is a sound exercise of the Debtors' business judgment because such transactions will provide liquidity to fund the administration of these Chapter 11 Cases, while limiting the need for costly financing. Without the use of the Platform Securities Proceeds, the Debtors will not have the funding necessary to prosecute a plan that delivers economic interests to Customers, which would necessitate more borrowing.

28. Accordingly, authorizing the Debtors to use the Platform Securities Proceeds and authorization of the DIP Facility are in the best interests of the Debtors, their estates, their Customers, and their creditors and other stakeholders.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2025               */s/ Jeffrey S. Stein*
                                                               Jeffrey S. Stein
                                                               Chief Restructuring Officer