IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| LINQTO TEXAS, LLC, *et al.*,[1] ) | |
| ) | Case No. 25-90186 |
| Debtors. ) | |
| ) | (Jointly Administered) |
| ) | |

**DECLARATION OF JEFFREY S. STEIN IN SUPPORT OF DEBTORS'
EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING
SETTLEMENT BETWEEN THE DEBTORS, THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, AND THE DEATON PARTIES REGARDING
RIPPLE TENDER PROCEEDS, DIP FINANCING, AND CUSTOMER TREATMENT
PURSUANT TO BANKRUPTCY RULE 9019, AND (II) GRANTING RELATED RELIEF**

I, Jeffrey S. Stein, declare as follows under penalty of perjury.

1. I am the Chief Restructuring Officer of Linqto, Inc. ("**Linqto Parent**"), Linqto Texas, LLC ("**Linqto Texas**"), Linqto Liquidshares, LLC ("**Liquidshares**"), and Linqto Liquidshares Manager, LLC ("**Liquidshares Manager**" or, collectively with Linqto Parent, Linqto Texas, Liquidshares, and Liquidshares Manager the "**Debtors**" and, collectively with their non-debtor affiliates, "**Linqto**" or the "**Company**"). I am over the age of 18 and mentally competent.

2. Certain information regarding my background, the Debtors, their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in the *Declaration of Jeffrey S. Stein in Support of Chapter 11 Petitions, First Day Motions, and Related Relief*, which is incorporated by reference as though fully set forth herein.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: P.O. Box 2859, Sunnyvale, CA 94087.

1

3. I submit this declaration (this "**Declaration**") in support of the *Debtors' Emergency Motion for Entry of an Order (I) Approving Settlement Between the Debtors, the Official Committee of Unsecured Creditors, and the Deaton Parties Regarding Ripple Tender Proceeds, DIP Financing, and Customer Treatment Pursuant to Bankruptcy Rule 9019, and (II) Granting Related Relief* [Docket No. 505] (the "**Motion**").[2]

4. Pursuant to the Motion, the Debtors seek approval of the proposed settlement set forth in the *Settlement Stipulation Regarding Ripple Tender Proceeds, DIP Financing, Customer Treatment, and Related Relief* (the "**Stipulation**" and the settlement documented therein, the "**Settlement**") between the Debtors, the Official Committee of Unsecured Creditors (the "**Committee**"), and John E. Deaton ("**Deaton**"), on behalf of himself and the Deaton Represented Creditors (together with Deaton, the "**Deaton Parties**").

5. Except as otherwise indicated, the facts set forth in this Declaration are based on my personal knowledge of the Debtors' business, employees, operations, and financial condition that I have obtained since Breakpoint was retained, my review of relevant documents, and my opinion based upon experience, knowledge, and information concerning the Company's operations and financial condition, my own reasonable inquiry, and my discussions with members of the Board, the General Committee, the Special Subcommittee, the Debtors' senior management and employees, and the Debtors' professionals. If called upon to testify, I would testify competently to the facts set forth in this Declaration and the Motion.

A. **The DIP Financing Motion.**

6. On the Petition Date, the Debtors filed the *Emergency Motion for Entry of Interim*

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

2

*and Final Orders: (I) Authorizing the Debtors to Obtain Postpetition Secured Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**DIP Financing Motion**") [Docket No. 16], seeking to borrow up to $60,000,000 (the "**DIP Financing**"), including $10,000,000 on an interim basis.

7. On July 8, 2025, the Court entered an order (the "**Interim DIP Order**") [Docket No. 40] authorizing the Debtors to incur and guarantee the DIP Obligations (as defined in the Interim DIP Order) up to the amount of $10,000,000 on an interim basis and granting the DIP Lender, *inter alia*, superpriority administrative expense claims against each of the Debtors, on a joint and several basis, and legal, valid, enforceable, non-avoidable, and automatically and fully perfected DIP Liens (as defined in the Interim DIP Order) in all of the Debtors' right, title, and interest to cash and cash equivalents, funds in any deposit account, all securities, and other DIP Collateral (as defined in the Interim DIP Order) to secure the DIP Obligations.

8. The current DIP Obligations total $10,000,000, plus fees and costs.

9. As of the week ending September 21, 2025, the Debtors were holding approximately $3.92 million in unrestricted funds, exclusive of the Platform Securities Proceeds (defined below).

B. **The Ripple Tender Proceeds and Other Platform Securities Proceeds.**

10. As of the Petition Date, Liquidshares held Securities in 111 Issuing Companies with an estimated fair market value of in excess of $500 million. Of these Securities, the majority corresponded to Customer accounts (the "**Platform Securities**") and approximately $16 million were held in reserve by Liquidshares for its own account and subsequent sales of units to Customers (the "**Reserved Securities**").

3

11. In December 2024, Ripple Labs, Inc. ("**Ripple**") announced a tender offer that closed on or about January 8, 2025 (the "**December Ripple Tender**"). Liquidshares tendered 243,444 shares of Ripple in the December Ripple Tender, for an expected purchase price of approximately $30 million. Of the 243,444 shares offered, Ripple purchased 151,105 shares (the "**Ripple Shares**") at a price of $125 per share, for total proceeds of approximately $18.8 million (the "**Ripple Tender Proceeds**").[3]

12. The December Ripple Tender occurred before current management was hired in January 2025. Upon learning of the various securities investigations the Debtors faced, the Debtors' new management elected to hold the Ripple Tender Proceeds in a money market account at Silicon Valley Bank, a division of First-Citizens Bank & Trust, held by Liquidshares (the "**Proceeds Account**"), which Proceeds Account was transferred to a to a debtor-in-possession money market account at Customers Bank on or about September 10, 2025.

13. While the Debtors elected to segregate the Ripple Tender Proceeds from funds held in other money market and operating accounts, the Proceeds Account is not a restricted account or escrow account.

14. As of the Petition Date, the Proceeds Account held roughly $19,230,000 in Ripple Tender Proceeds, inclusive of interest.

15. Along with the Ripple Tender Proceeds, the Proceeds Account holds funds arising from distributions and dividends from Issuing Companies other than Ripple (collectively with the Ripple Proceeds, the "**Platform Securities Proceeds**"). As of the Petition Date, the Proceeds Account held roughly $641,000 from Platform Securities other than Ripple.

---

[3]   The Ripple Shares were Platform Securities.

4

16. On July 14, 2025, the Debtors filed the *Motion for Entry of an Order (i) Authorizing the Use of Estate Proceeds Free and Clear of all Liens, Claims, Encumbrances, and Interests, (ii) Determining that the Ripple Sale Proceeds are Assets of the Bankruptcy Estate, and (iii) any Related Relief* [Docket No. 79] (the "**Ripple Motion**"), seeking authority to use the Platform Securities Proceeds, including the Ripple Tender Proceeds, free and clear of all liens, claims, encumbrances, and interests, (ii) determining that the Platform Securities Proceeds are assets of the Debtors' bankruptcy estate and may be used by the Debtors for the daily operations of the enterprise, which includes the administration of the Chapter 11 Cases, and (iii) granting related relief.

C. **Objections to the DIP Financing and Ripple Motions.**

17. The Debtors have received formal and informal objections to the DIP Financing Motion and Ripple Motion (collectively, the "**Objections**"), including, but not limited to the following:

   a. The Committee has asserted informal objections directly to the Debtors regarding the DIP Financing and Ripple Motions;

   b. On July 29, 2025, the Deaton Parties filed an objection to the DIP Financing Motion and Ripple Motion [Docket No. 142]. Approximately 200 Customers filed joinders to the Deaton Objection or similar objections, responses, or requests for relief as pro se parties in interest (collectively, the "**Customer Objections**"). Of these Customer Objections, approximately 90 were filed by Deaton Represented Creditors; and

   c. On August 12, 2025, Sapien Group USA LLC and its group affiliates filed objections to the DIP Financing Motion and Ripple Motion [Docket Nos. 230 and 231].

18. It is my understanding that the Objections primarily assert that the Platform Securities and Platform Securities Proceeds are not assets of the Debtors' estates, but, rather, are held in constructive trust for the Customers. I believe these disputes create material uncertainty with respect to the Debtors' ability to fund the administration of these Chapter 11 Cases and

confirm a Chapter 11 plan. Moreover, these disputes increase the prospect of protracted, value-destructive litigation.

**D.     The Settlement.**

19.     After extensive good faith, arms' length negotiations, the Debtors, the Committee and the Deaton Parties (collectively, the "**Settlement Parties**") reached a compromise regarding funding the administration of these Chapter 11 Cases and the treatment of the claims or interests of Customers. The Settlement resolves the material disputes among the parties and facilitates a consensual path forward in these Chapter 11 Cases.

20.     Under the Settlement, the Debtors will be authorized to finance the administration of the Chapter 11 Cases through use of (i) the proceeds of the Reserved Securities, (ii) the Platform Securities Proceeds (including the Ripple Tender Proceeds), and (iii) DIP financing in an aggregate amount of up to $25,000,000, in accordance with the Approved Budget. In exchange, the Debtors have agreed to the treatment of Customer claims or interests under a plan of reorganization to be proposed, the principal terms of which are set forth in the Term Sheet attached to the Motion.

21.     Pursuant to the Term Sheet and in accordance with the Bankruptcy Code, the Debtors will propose a plan of reorganization (the "**Plan**") that provides each Customer with the option to elect to retain a beneficial interest in a liquidating trust or trusts (collectively, the "**Trust**") that holds the equity of Liquidshares or have its interests in the Platform Securities contributed to a registered and publicly-listed closed-end fund (a "**CEF**"). In other words, Customers may elect to either (a) hold a non-transferable beneficial interest in the Trust that closely models the economic interests purported to be sold to such Customers when they sought to purchase Securities, or (b) obtain an interest in a CEF that will be publicly tradable. As I understand

it, this structure will ensure Customers retain the "upside" of their investments, rather than having such investments liquidated to cash in a Chapter 7 proceeding or otherwise.

22. With respect to the Ripple Tender Proceeds, the Settlement Parties have agreed the Plan will provide those Customers affected by the sale of Ripple shares with a separate ratable interest related to the cash held by the Debtors.

23. Notably, the Debtors have both accredited and unaccredited customers. The agreement reached by the Settlement Parties pursuant to the Term Sheet allows for distributions to both accredited and unaccredited Consumers in the same manner (*i.e.* unaccredited Customers will not be prejudiced relative to accredited Customers).

### E. Approval of the Settlement is in the Best Interests of the Debtors' Estates.

24. I have thoroughly reviewed and independently considered the appropriateness of the Settlement. I believe that the Settlement is fair and reasonable and is a sound exercise of the Debtors' business judgment.

25. In my opinion, the Settlement provides a value maximizing outcome for the Debtors' estates by avoiding costly and value destructive litigation regarding the validity and extent of Customer interests in the Platform Securities. Resolving the disputes as set forth in the Settlement ensures that the estates have adequate capital to administer these Chapter 11 Cases in a manner that maximizes value for Customers and all parties in interest.

26. Absent the Settlement, I believe the parties would be required to litigate the constructive trust or equitable title claims with hundreds, if not thousands, of Customers in order to secure the funding to administer these Chapter 11 Cases. The docket of this Chapter 11 Case demonstrates the complexity, inconvenience and potential expense of litigating the various disputes among the parties. It is my understanding that these issues involve fact-intensive questions

that are likely to require expensive discovery and costly expert witnesses, and could take months to resolve. Even so, the probability of success in any litigation is unknown. I believe such litigation would divert valuable estate resources that could otherwise be used for administration of the Chapter 11 Cases and distributions to creditors.

27. The Settlement is supported by the Committee and the Deaton Parties and provides some certainty for all parties in interest. In my view, the Settlement will allow the Chapter 11 Cases to move forward as expeditiously as possible, while limiting the expense, uncertainty, and delay of litigation, which in turn will help maximize the return to Customers and other creditors.

28. For these reasons, I believe the Settlement is in the best interests of the Debtors' estates and creditors and should be approved.

I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

Dated: September 30, 2025

*/s/ Jeffrey S. Stein*
Jeffrey S. Stein
Chief Restructuring Officer