IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LINQTO TEXAS, LLC, *et al.*,[1] | ) | Case No. 25-90186 (ARP) |
| | ) | |
| Debtor. | ) | (Jointly Administered) |
| | ) | |
| | ) | |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF THE AD HOC GROUP
OF EQUITY HOLDERS TO THE DEBTORS' EMERGENCY MOTION FOR ENTRY
OF AN ORDER (I) APPROVING SETTLEMENT BETWEEN THE DEBTORS, THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THE DEATON
PARTIES REGARDING RIPPLE TENDER PROCEEDS, DIP FINANCING, AND
CUSTOMER TREATMENT PURSUANT TO BANKRUPTCY RULE 9019, AND
(II) GRANTING RELATED RELIEF**

The ad hoc group of shareholders of Linqto, Inc. (the "**Ad Hoc Group**") respectfully states

the following in support of this limited objection and reservation of rights (the "**Limited

Objection**") to the *Debtors' Emergency Motion for Entry of an Order (I) Approving Settlement

Between the Debtors, the Official Committee of Unsecured Creditors, and the Deaton Parties

Regarding Ripple Tender Proceeds, DIP Financing, and Customer Treatment Pursuant to

Bankruptcy Rule 9019, and (II) Granting Related Relief* [Dkt. No. 505] (the "**Rule 9019 Motion**").

**PRELIMINARY STATEMENT**

1.     The Ad Hoc Group, a subset of the shareholders of Linqto, Inc. (the "**Linqto

Shareholders**"), strongly believes that there is meaningful value for the Linqto Shareholders in

these cases, including value that can be realized by restarting Linqto as a regulatory compliant

business.  Consistent with this conviction, the Ad Hoc Group recently submitted to the Debtors

---

[1]     The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745].  The location of the Debtors' service address is: 101 Metro Drive, Suite 335, San Jose, CA 95110.

and the Official Committee of Unsecured Creditors (the "**UCC**") a proposed restructuring and recapitalization plan for Linqto (the "**AHG Term Sheet**").  The Ad Hoc Group's proposal focuses on how to recapitalize and provide value to the Company's Unitholders,[2] avoiding the 5% "haircut" to Unitholders' recoveries apparently contemplated by the proposed settlement that is the subject of the Rule 9019 Motion (the "**Settlement**").  As part of this effort, the Linqto Shareholders and certain affiliated parties would provide $35-50 million of new equity capital. The Ad Hoc Group's proposal is intended to work side-by-side with the UCC's desire to have a litigation vehicle to pursue claims and causes of action, which will enhance stakeholder value.

2.     The Settlement, however, on its face, would appear to foreclose further consideration of the AHG Term Sheet or any other value-maximizing alternatives.  The Settlement provides for both a liquidating trust and a closed-end fund, and the term sheet accompanying the Settlement provides that the UCC and the Debtors will jointly select the liquidating trustee and the fund manager, with the Debtors' CRO having sole and exclusive authority to act on the Debtors' behalf.  No further details regarding the selection process, or the precise remit of the liquidating trustee or the fund manager, are provided.  In discussions with the Ad Hoc Group, the Debtors' professionals have made vague references to a potential process to monetize the Linqto platform in the future, but such a process is nowhere contemplated in the Settlement itself, and there is a risk that the Settlement could be viewed as foreclosing any transaction that would restructure or restart the Linqto business.  Namely, there is no disclosure (in the Settlement or elsewhere) regarding the timing of such a process, how the Company and/or its assets would be marketed and

---

[2]     The term "**Unitholders**" is defined herein to refer to users of the Linqto platform who made investments in exchange for units in a special purpose vehicle.

sold, or who would oversee the process.[3]  Heightening these concerns, the retention of the Debtors' investment bank, Jefferies LLC, remains subject to the UCC's objection.[4]  The Settlement also contemplates the premature liquidation of the Reserved Securities (as defined in the Rule 9019 Motion), which is potentially a source of recovery for the Linqto Shareholders and which, if sold, could further limit alternative transaction opportunities.  For these reasons, the Ad Hoc Group submits this Limited Objection, among other reasons, to ensure that the Debtors and the UCC remain open to alternatives that will serve the interests of all stakeholders.

3.      In addition, while the Ad Hoc Group does not read the Rule 9019 Motion to ask the Court to fully and finally determine disputed issues concerning the treatment of claims under a plan of reorganization, or to foreclose any plan objections, to the extent it could be read otherwise, the Ad Hoc Group further objects on that basis as a precaution.  Plainly, the plan structure and confirmation requirements cannot be circumvented through approval of a settlement pursuant to Rule 9019.

## LEGAL STANDARD

The Court may approve a compromise or settlement pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure.  Fed. R. Bankr. P. 9019(a).  "However, the court should approve the settlement only when the settlement is fair and equitable and in the best interest of the estate."  *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995).  "The words 'fair and equitable' are terms of art, referring to the creditor priority scheme of the Bankruptcy Code."  *In re GPR Holdings, L.L.C.*, 2003 Bankr.

---

[3]     Adding to the opaqueness of the process, as of the time this Limited Objection was filed, the Debtors appear to have filed all of their supporting exhibits under seal.  The Ad Hoc Group reserves all rights to obtain such sealed exhibits.

[4]     *See Joint Mot. of the Debtors and the Official Comm. of Unsecured Creditors to Vacate the Order Authorizing the Employment and Retention of Jefferies LLC as the Debtors' Investment Banker* [Dkt. No. 558] ¶ 1 (referencing the UCC's unresolved "informal objections" to the retention application).

LEXIS 1402, at *3 (Bankr. N.D. Tex. Oct. 29, 2003) (citation omitted). When considering a settlement, the Court considers: "(1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise." *Foster Mortg.*, 68 F.3d at 917 (citation omitted); *In re Wright*, 545 B.R. 541, 561 (Bankr. S.D. Tex. 2016). Factors "bearing on the wisdom of the compromise" include the "paramount interests of creditors with proper deference to their reasonable views" and "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Foster Mortg.*, 68 F.3d at 917–18; *Wright*, 545 B.R. at 561.

## <u>LIMITED OBJECTION</u>

4.      The Ad Hoc Group asserts this Limited Objection on three grounds. *First*, the Ad Hoc Group does not understand the Rule 9019 Motion to ask the Court to finally resolve the disputed issues concerning the treatment of Unitholders' claims. *See* Rule 9019 Mot. at Ex. A, ¶ 2 ("In consideration of the other agreements set forth herein, and *subject to Sections 1124, 1126, and 1129 of the Bankruptcy Code*, the Settlement Parties agree to seek confirmation and effectuation of a plan of reorganization that provides for the treatment of claims or interests held by Customers . . . .") (emphasis added). To the extent, however, that the Settlement parties or the Court view the Settlement terms as somehow requesting such relief, the Ad Hoc Group objects as a precaution, as such relief would clearly be premature and not authorized by Rule 9019 or the Bankruptcy Code. *See Official Comm. of Unsecured Creditors of Tower Auto. v. Debtors & Debtors in Possession (In re Tower Auto. Inc.)*, 241 F.R.D. 162, 168 (S.D.N.Y. 2006) ("A settlement which has the effect of dictating the terms of the debtor's plan of reorganization prior to the confirmation process cannot be approved."); *cf. In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) ("The

debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with the sale of assets.").  The Ad Hoc Group therefore respectfully requests that any order approving the Settlement clarify that such approval, insofar as it relates to any plan terms, including (without limitation) the treatment of the Unitholders' claims, is only an approval of the Settlement parties' agreement to *seek* such plan terms and claim treatment.

5.      *Second*, the Settlement should include a "fiduciary out" to permit the Debtors (and the UCC) to consider value-maximizing alternatives to the Settlement terms, including the plan contemplated therein.  The Ad Hoc Group is concerned that the Settlement prematurely and unnecessarily commits the Debtors to proposing a plan that would wind down the Linqto platform without any meaningful consideration of alternative transactions that could maximize value.  The Ad Hoc Group believes there is meaningful value for equity and, putting its money where its mouth is, recently provided the Debtors with the AHG Term Sheet that contemplates the infusion of $35-50 million in new equity capital to the Debtors in an effort to: (1) ensure the Unitholders get the benefit of their investment without taking the 5% haircut apparently contemplated by the Settlement; (2) avoid the liquidation of the Reserved Securities; and (3) restart the Debtors' business in a manner that complies with all relevant laws and regulations.  The parties have engaged in productive, but as yet unresolved, discussions concerning the AHG Term Sheet.  The express terms of the Settlement, however, would appear to foreclose further consideration of the AHG Term Sheet or other potential value-maximizing alternatives.  Clearly this would not be in the best interests of the estate, and the fulfillment of the Debtors' fiduciary duties to maximize the value of such estate for the benefit of all stakeholders, including the Linqto Shareholders.

6.      As noted above, in discussions with the Ad Hoc Group, the Debtors have made reference to a potential process, at some point in the future, to monetize the Linqto platform. But the Debtors have provided scant details, and the Settlement itself appears to contemplate a winddown of the business. The Debtors should of course be engaged in every effort to maximize value for all stakeholders. At a minimum, the Settlement should not create even the potential risk of foreclosing any value-maximizing alternatives.

7.      Further underscoring the need for a fiduciary out, the Ad Hoc Group notes that the Settlement charts a course toward a plan that may very well be unconfirmable and therefore could be a waste of estate resources. Among other things, the contemplated plan, depending on its precise terms, may violate the corollary to the absolute priority rule that parties cannot receive more than the full amount of their entitlement under the Bankruptcy Code. *See In re Vill. at Camp Bowie I, L.P.*, 2012 Bankr. LEXIS 102, at *3 (Bankr. N.D. Tex. Jan. 11, 2012) (describing "the corollary to the absolute priority rule: that senior debt, if fully satisfied, is not entitled to a greater return at the expense of junior—in this case equity—interests."); *In re Mcorp Fin., Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992) ("[F]or a plan to be confirmed when stockholders are eliminated, creditors must not be provided for more than in full.") (citation omitted); *see also* 7 Collier on Bankr. P. 1129.03[4][a][ii] ("The second major component of the 'fair and equitable' requirement is that no creditor or interest holder be paid a 'premium' over the allowed amount of its claim. Once the participant receives or retains property equal to its claim, it may receive no more.").

8.      The Debtors have taken the position that Unitholders do not own the underlying securities and are merely unsecured creditors, whose claims are fixed at the petition date. *See* Rule 9019 Mot. ¶ 42 ("Here, the Debtors did not agree to deliver Platform Securities or economic interests in Platform Securities to the Customers. . . . Thus, the Debtors agreed to provide the

Customers an economic interest in an entity, not in the assets of the entity. . . . Accordingly, the Customers have asserted no basis for an equitable interest in the Platform Securities, rather than claims for breach of contract.").  The Unitholders disagree, arguing that they are entitled to the "benefit of their bargain." *Id.* ¶ 44 ("The Committee and the Deaton Parties allege that these facts give rise to a constructive and/or resulting trust (either in favor of customers directly, or in favor of the SPVs in which customers had an ownership interest) that would deliver Customers the benefit of their bargain.").  Assuming for the sake of argument that Unitholders are correct, the settlement construct contemplated for the plan still may pay Unitholders more than 100% of their claims if the Unitholders' assertions concerning the validity of various causes of action arising from pre-petition conduct prove correct.  *See, e.g.,* UCC Statement[5] ¶ 40.  That is, the Settlement would, according to the Unitholders, pay them 95% of their "bargain" through the allocation of the securities and, on top of that, provide them (along with other creditors) with 100% of the value of the causes of action they claim are legitimate and valuable.  UCC Statement ¶ 42 ("All claims will be placed in a Litigation Trust (separate from the Liquidating Trust) and pursued on behalf of Linqto Customers and creditors.  Customers will be entitled to recover their 5% against the funds recovered from those who contributed to or participated in this fraud; as will unsecured creditors of Linqto who otherwise face going unpaid.").  But there does not appear to be any cap on the amount Unitholders will receive through these causes of action, which creates a realistic possibility that Unitholders will recover more than 100% of their "bargain" (and certainly more than 100% of their claims if they were treated as unsecured creditors) at the direct expense of the Linqto Shareholders.  This structure is inconsistent with the Bankruptcy Code's distribution scheme.  *See*

---

[5]    "**UCC Statement**" refers to the *Statement of the Official Comm. of Unsecured Creditors in Support of the Emergency Mot. for Entry of an Order (I) Approving Settlement Between the Debtors, the Official Comm. of Unsecured Creditors, and the Deaton Parties Regarding Ripple Tender Proceeds, DIP Financing, and Customer Treatment Pursuant to Bankruptcy Rule 9019, and (II) Granting Related Relief* [Dkt. No. 583].

*Mcorp Fin.*, 137 B.R. at 235 (finding that the terms of the debtors' plan were not fair and equitable to equity interests because the plan included a provision which established no upper limit on the amount that junior creditors of the debtors would receive from a litigation asset that would yield "in all likelihood 100% of principal plus interest" to junior creditors). As such, a plan pursuant to the Settlement terms may be unconfirmable, underscoring the need for a fiduciary out.

9.      *Third*, the Ad Hoc Group objects to the extent the Rule 9019 Motion asks the Court to authorize the Debtors to sell the Reserved Securities before they have fully exhausted alternatives, including the AHG Term Sheet. The Ad Hoc Group understands that the Reserved Securities have significant value, although that value may be difficult to assess. Even the Debtors value such securities in excess of $16 million. *See* Rule 9019 Mot. ¶ 15. Moreover, given the nature of the issuers of the securities, the Reserved Securities have the potential to rise in value very quickly. Given that these Reserved Securities have the potential for significant upside, their value should not be sacrificed through a rushed liquidation. Indeed, the premise of the Settlement from the Unitholders' perspective is that the Securities have the potential for significant upside and that premature liquidation would be catastrophic. *See* UCC Statement ¶ 1 ("The Settlement delivers to account holders at Linqto [] the best possible result: getting back their economic interest in the securities (and all upside) that they invested in rather than an unsecured claim."); *id.* ¶ 26 ("Many Customers feel strongly about the future value of the investments they made, and seek to hold them until the issuers of those securities go public (or beyond)."); *id.* ¶ 33 ("Absent funding these cases, the Committee sees no viable path to return Customer Securities to Customers. A liquidation of Customer Securities and distribution in cash, through a Chapter 7 process, would likely be inevitable[.]"). But the Debtors and the UCC have agreed to do exactly that with respect to the Reserved Securities, sacrificing the interests of the Linqto Shareholders, who would

otherwise realize the value of such upside.  And the Debtors have not established that selling such Securities is necessary to fund the case, at least not in the immediate term before all possible alternatives have been considered.

## **RESERVATION OF RIGHTS**

10.     The Ad Hoc Group expressly reserves all rights with respect to these chapter 11 cases, including the right to supplement this objection and to object to confirmation of any chapter 11 plan on any grounds, including those related to the Settlement and its proposed treatment under any chapter 11 plan.

*[Remainder of page intentionally left blank]*

Dated: October 1, 2025

Respectfully submitted,

By: */s/ Gregory F. Pesce*

**WHITE & CASE LLP**
Gregory F. Pesce (admitted *pro hac vice*)
111 South Wacker Drive
Suite 5100
Chicago, Illinois 60606
Telephone: (312) 881-5400
Facsimile: (312) 881-5450
Email: gregory.pesce@whitecase.com

-and-

J. Christopher Shore (admitted *pro hac vice*)
Philip Abelson (admitted *pro hac vice*)
Colin T. West (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: cshore@whitecase.com
        philip.abelson@whitecase.com
        cwest@whitecase.com

*Counsel for Ad Hoc Group of Equity Holders*

## CERTIFICATE OF SERVICE

I certify that, on October 1, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Gregory F. Pesce*
Gregory F. Pesce