**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| LINQTO TEXAS, LLC, *et al.*,[1] | Case No. 25-90186 |
| Debtors. | (Jointly Administered) |

**MOTION FOR RECONSIDERATION OF THE ORDER ON THE MOTION OF THE
DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
VACATE THE ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
JEFFERIES LLC AS THE DEBTORS' INVESTMENT BANKER**

Jefferies LLC ("Jefferies") hereby moves (the "Motion") for reconsideration of the order [Docket No. 599] (the "Order to Vacate") vacating the Retention Order (as defined below) and approving, after only five days, the relief requested in the *Motion of the Debtors and the Official Committee of Unsecured Creditors to Vacate the Order Authorizing the Employment and Retention of Jefferies LLC as the Debtors' Investment Banker* [Docket No. 558] (the "Motion to Vacate")[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee"). In support of this Motion, Jefferies states as follows:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: 101 Metro Drive, Suite 335, San Jose, CA 95110.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

## BACKGROUND

1.      On July 7, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[3] The Debtors continue to operate their business and manage their property as debtors and debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2.      On July 18, 2025, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed the Committee [Docket No. 98]. To date, no request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

3.      On July 25, 2025, the Debtors filed the *Application for Entry of an Order (A) Authorizing the Employment and Retention of Jefferies LLC as Investment Banker, (B) Waiving and Modifying Certain Time Keeping Requirements, and (C) Granting Related Relief* [Docket No. 129] (the "Retention Application").

4.      After the expiration of the 21-day objection period, on August 19, 2025, no formal objections having been filed and no informal comments having been relayed to Jefferies, the Debtors filed a certificate of no objection with respect to the Retention Application [Docket No. 324] (the "CNO").

5.      Jefferies had received no objections or comments to its Retention Application and specifically asked counsel for the Debtors on August 18, and 19, 2025, as to whether any objections or even comments had been received. Counsel for Jefferies was assured that no objections or comments were received. *See* e-mail string by and between Jefferies' counsel and Debtors' counsel attached hereto as **Exhibit 1**. Based on the foregoing, Jefferies understood that the Debtor had received no written formal or informal objections to the Retention Application at that time.

---

[3]      All references to "§" or chapter are references to the Bankruptcy Code, unless otherwise indicated.

6.     Accordingly, on August 19, 2025, this Court entered the *Order (A) Authorizing the Employment and Retention of Jefferies LLC as Investment Banker, (B) Waiving and Modifying Certain Time Keeping Requirements, and (C) Granting Related Relief* [Docket No. 326] (the "Retention Order").

7.     Notwithstanding the foregoing, the Committee now contends — more than five weeks after the entry of the Retention Order — that it asserted "informal objections" to the Retention Application and that the Retention Order should therefore be vacated. However, the Committee provides no details whatsoever as to what those objections were, how they were made, to whom, and, perhaps most importantly, when they were made. On information and belief, Jefferies believes that any such informal objections (to the extent they were even asserted) were so vague as to be meaningless and, moreover, were only voiced after the Retention Application had been granted and after the time for making any objections.

8.     Several weeks after the entry of the Retention Order, somewhere on or about September 10, 2025, Jefferies was made aware that the Committee had issues with certain of Jefferies' projected fees — not its retention — and requested that the Debtors and Jefferies explain the roles and activities that Jefferies was providing and was going to provide to the Debtors in these cases. Jefferies provided that list and understands that the list was shared with the Committee. Moreover, Jefferies engaged in negotiations with the Committee for certain fee concessions and, as a result of those negotiations, Jefferies agreed to additional crediting of its Monthly Fees against its Restructuring Fee and moreover agreed to credit 50% of its DIP Financing Fee against the Restructuring Fee. Those concessions were encapsulated within the approved DIP budget that itself is encapsulated within the UCC 9019 Motion (defined *infra*) and resulted in significant cost savings for the Debtors.

9.      On September 16, 2025, the Debtor filed *the Debtor's Emergency Motion for Entry of an Order (I) Approving Settlement between the Debtors, the Official Committee of Unsecured Creditors, and the Deaton Parties Regarding Ripple Tender Proceeds, DIP Financing, and Customer Treatment Pursuant to Bankruptcy Rule 2019* (the "UCC 9019 Motion").

10.     The UCC 9019 Motion settles all the issues and objections related to the DIP funding and approval. Reaching agreements on those issues led to a much larger and wider ranging discussion amongst the parties about the resolution of these cases. The agreements encapsulated in the terms the UCC 9019 Motion asks this Court to approve, in many respects, laid out what the essential terms of a plan would look like. The plan structure envisioned in the UCC 9019 Motion contemplates a "Restructuring" as that term is defined in the Application and Engagement Letter that were approved by the Retention Order. Therefore if a plan such as the one envisioned by the UCC 9019 Motion were approved, the Restructuring Fee would become due and payable to Jefferies. Denying Jefferies the benefit of its bargain in its arms-length, market tested agreement with the Debtors, already approved by this Court, is the real target and end goal of the Committee in the Motion to Vacate.

11.     Jefferies has been assisting and will continue to assist the Debtors in their pursuit of that plan or any alternative restructuring proposals that may arise and advising the Debtors on all aspects related thereto.

12.     With the Committee still apparently unhappy with the projected fees of Jefferies (even after the Monthly Fee and DIP Financing Fee crediting concession described above), over a month after the entry of the Retention Order, on September 24, 2025, the Debtors and the Committee filed the Motion to Vacate seeking to have the Retention Order vacated in order to

allow the Committee to object to Jefferies' retention — as opposed to the Committee having to object to the Court-approved fees of Jefferies in any fee application.

13.     In addition, the Motion to Vacate is explicit that "[i]f you object to the relief requested, you must respond in writing. … within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested" Motion to Vacate at 1. As the Motion to Vacate was filed on September 24, 2025, the 21-day objection period would expire on October 15, 2025.

14.     On September 26, 2025, and as indicated in the Certificate of Conference, Jefferies' counsel informed Debtors' counsel that it intended to file an Objection to the Motion to Vacate and the reasons therefore. Debtors' counsel indicated that the Debtors would not oppose the relief requested in such Objection.

15.     Despite this and despite the clear 21-day objection deadline and lack of declaratory or evidentiary support, the Order was entered on September 29, 2025, vacating the Retention Order before the stated objection period had expired.

16.     Furthermore, on September 26, 2025, a group of shareholders filed an *Emergency Motion of the Ad Hoc Group of Equity Holders for Entry of an Order Directing the U.S. Trustee to Appoint an Official Committee of Equity Security Holders Pursuant to 11 U.S.C. § 1102* [Docket No. 574] (the "Motion to Appoint"). The Ad Hoc Group of Equity Holders (the "Ad Hoc Group") also filed a limited objection to the UCC 9019 Motion [Docket No. 671] (the "Ad Hoc Group Objection").

17.     By raising the issues of a recapitalization and other attendant issues, the Ad Hoc Group Objection makes it even more necessary that Jefferies continue its work for the Debtors.

Jefferies has already previously advised upon the issues raised in the Ad Hoc Group Objection, but now must engage on even more so given the Ad Hoc Group Objection.

18.     The Ad Hoc Group Objection was ultimately settled and the DIP Financing approved with the Debtor specifically acknowledging on the record that it held a fiduciary duties to all stakeholders and would pursue and any all transactions that could lead to a recovery for equity.  Such acknowledgments just further illustrate that (1) the work Jefferies did up and through the dates of the signing of the Engagement Letter, submission of the Retention Application, entry of the Retention Order, filing of the Motion to Vacate, and up through and continuing until after the filing of this Objection provides meaningful value to the Debtors and (2) if any of the alternative types of transactions that must at least be considered (*i.e.*, a recapitalization and restart of the Debtors' business), or are implemented, then Jefferies' input and value add is all the more evident. Jefferies continues its work by and through the filing of this Motion for Reconsideration in reliance upon the Retention Order, even while its workload is being considerably enlarged by recent developments. Despite this, at the very same time these developments are coming up in this case, the Committee is seeking to attack Jefferies' right to earn its agreed upon fees by this out-of-time and impermissible attack on the Retention Order.

19.     Based on the foregoing, Jefferies submits that the Motion to Vacate is a blatant attempt to revisit the amount of fees that may become due and owing to Jefferies under its Court-approved retention if a plan in line with the UCC 9019 Motion is confirmed but looking backwards with the "benefit" of hindsight as to how the discussions amongst the parties about the treatment of customer claims that led to a settlement. The Court should not countenance this end-around the fee application process and attempt to second guess the retention of professionals after the time for objecting has passed and the Retention Application has been granted and parties have relied

upon the entry of the Retention Order in continuing their work on the cases. The appropriate time to revisit compensation issues is at the final fee application stage.

20.     Additionally, the Order to Vacate was entered before the expiration of the stated objection period and before Jefferies had an opportunity to respond to the relief requested in the Motion to Vacate.

21.     Accordingly, Jefferies respectfully asks this Court to reconsider entry of the Order to Vacate and to deny the relief requested in the Motion to Vacate.

**ARGUMENT AND AUTHORITY**

**A.     The Order to Vacate Should be Reconsidered Under Federal Rule 60(b)**

22.     Courts typically rule on motions for reconsideration under Federal Rules of Civil Procedure (the "Federal Rules") 54(b), 59, and 60. *Fishman Jackson PLLC v. Israely*, 180 F.Supp.3d 476, 481 (N.D. Tex. 2016). Under Federal Rule 60 there are five specific bases for granting relief from a judgment: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or misconduct of an adverse party; (4) the judgment is void and (5) satisfaction, discharge or release of the judgment. Fed. R. Civ. P. 60. Federal Rule 60(b)(6) also provides that a court may relieve a party from a judgment for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6).

23.     This clause is a "'grand reservoir of equitable power' to do justice in a case when relief is not warranted by the five enumerated grounds. *Smith V. Pinchback*, Case No. 02-548, 2006 WL 148897, at *1 (S.D. Tex. Jan. 18, 2006) (quoting *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995)).

24.     The Motion to Vacate indicated a 21-day objection period. However, the Order to Vacate was entered merely five days after the Motion to Vacate was filed.

25.     Accordingly, Jefferies was not afforded the 21-day period it relied upon to

7

formulate a response to the Motion to Vacate.

26. As the Motion to Vacate represented that a 21-day objection period would be observed, Jefferies believes that the Order to Vacate may have been entered in error. If so, Federal Rule 60(b) would allow for the Order to Vacate to be stricken due to mistake and for the entire 21-day objection period to run before entry of an order ruling on the Motion to Vacate.

27. If, however, the Court does not believe a mistake was made in entering the Order to Vacate, grounds still exist for reconsidering the Order to Vacate under the "reservoir of equitable power" this Court holds.

28. While Jefferies recognizes reconsideration will only be granted in "extraordinary circumstances," Jefferies believes those circumstances exist here. *Smith*, 2006 WL 148897, at *1 (internal citations omitted).

29. In this case, as discussed further *infra*, compelling reasons exist to deny the Motion to Vacate. Jefferies relied on the entry of the Retention Order and continued its work on these Chapter 11 cases in such reliance. Without Jefferies' work, it is questionable whether the Debtors would have come to a successful conclusion on the UCC 9019 Motion or other issues raised in this case.

30. Further, the Motion to Vacate represents an impermissible collateral attack on Jefferies' fees. There is an appropriate time and manner for objections to fees, but rather than bear the burden of showing that Jefferies' fees are unreasonable, the Committee, through the Motion to Vacate, has attempted to shift the burden on Jefferies to retroactively prove its worth in the case

31. These factors, each as discussed further *infra*, and coupled with Jefferies' reliance on the 21-day objection period, coalesce to create extraordinary circumstances which justify the reconsideration of the Order to Vacate.

**B.**     **The Retention Order was Relied Upon by Jefferies and an Injustice Will Ensue if the Order to Vacate is not Reconsidered**

32.     The Motion to Vacate cites to Federal Rule 60(b) for authority in vacating the Retention Order. "[D]iscretion" under Rule 60(b) "should incline toward granting rather than denying relief, especially if no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue". *United States v. O'Keefe*, 169 F.3d 281, 286 n. 4 (5th Cir. 1999).

33.     The very language cited by the Committee from the *O'Keefe* case indicates why the Retention Order should not be vacated — Jefferies relied on the entry of the Retention Order and continued its staffing and working on the Debtors' cases in accordance with the Retention Order.

34.     In reliance on the Retention Order, Jefferies continued its work on securing debtor in possession financing on a final basis, including:

> i.     Conducting outreach to additional debtor in possession investors, including certain parties suggested by the advisors to the Committee;
>
> ii.    Fielding inbounds from potentially interested parties regarding the proposed debtor in possession financing;
>
> iii.   Negotiating, on behalf of the Debtors, confidentiality agreements with potential investors;
>
> iv.    Managing a data room for and facilitating due diligence by potential investors;
>
> v.     Analyzing the various debtor in possession financing proposals and the potential cost to the Debtors;
>
> vi.    Developing competitive tension among the proposed and potential competing debtor in possession financing providers and negotiating improvements for the benefit of the Debtors;
>
> vii.   Reviewing and commenting on various iterations of a revised debtor in possession budget;
>
> viii.  Providing the Debtors and its advisors with advice and recommendations regarding the debtor in possession financing process; and
>
> ix.    Engaging in frequent communications with the advisors to the Committee regarding the status of the debtor in possession financing process.

35.     Jefferies also leveraged its industry and capital markets expertise to consult with the Debtors regarding the proposed sale to the proposed sale of certain securities to generate additional proceeds to fund these Chapter 11 cases.

36.      Finally, Jefferies participated in the development and evaluation of various restructuring paths, including advising the Debtors with respect to implementation alternatives and reviewing and commenting on the Customer Securities Treatment Term Sheet and engaging with numerous parties who expressed potential interest in participating in the plan of reorganization process.

37.     Jefferies continues its work today in reliance on the Retention Order by advising the Debtors with respect to the process Jefferies has designed and will implement to identify and select those parties necessary to support the proposed plan that is encapsulated and discussed in the UCC 9019 Motion or other competing restructuring proposals.

38.     Thus, while the Motion to Vacate attempts to ensure this Court that no injustice will be done by vacating the Retention Order, this is simply untrue. An injustice will be done to Jefferies, who continued its work on the Debtors' cases in reliance on the Retention Order.

39.     Further, the Motion to Vacate indicates that there have been "wide-ranging settlement discussions" which have "resolved the most significant issues in the case." Motion to Vacate at 2.

40.     However, without the work Jefferies did prior to the filing of the Motion to Vacate, it is possible that these settlement discussions would not have been successful. Jefferies' work prior to the settlement was focused largely on the DIP Financing, the interim draw on which provided the Debtors the financial lifeline to have these settlement discussions. The Jefferies Engagement Letter contemplated multiple paths, an M&A Transaction and a Restructuring, which

reflected that neither Jefferies, nor the Debtors, knew exactly how this might play out.

41.     In parallel with the DIP financing, Jefferies also began the preliminary evaluation of potential restructuring alternatives (including with strategic parties who could play the role of plan sponsor, acquiror, or — as the 9019 settlement contemplates — asset manager for a liquidating trust and a closed end fund).  Those efforts continued after the entry of the Retention Order and the UCC 9019 Motion.

42.     The M&A fee language in the Jefferies Engagement Letter that was attached to the Retention Application was designed to cover situations such as one in which some/all customer accounts were sold to another platform (and the associated securities were migrated to the acquiror).

43.     Now that a Restructuring appears to be the likely path forward Jefferies has changed its focus and will support the debtors in its efforts to implement the type of Restructuring contemplated by the UCC 9019 Motion.

**C.      The Motion Represents an Impermissible Collateral Attack on Jefferies' Fees**

44.     Now, having essentially reached terms with the Debtor that would constitute a Restructuring, as that term is defined in the Retention Application, the Committee seemingly seeks to collaterally attack a final order of this Court that approved Jefferies' fee structure.

45.     While the Motion to Vacate indicates that the Committee asserted certain informal comments prior to entry of the CNO, these comments were never relayed to Jefferies.

46.     The Motion to Vacate makes no mention of what these comments were and what, specifically, the Committee has issue with in the Retention Order, merely that the Committee provided comments, which were never relayed to Jefferies prior to entry of the CNO and Retention Order. Again, it is not clear from the Motion *when* the informal comments were made.

47.     In fact, the Committee allowed the Retention Order to sit on this Court's docket for over a month before it determined to seek to vacate the Retention Order.

48.     Unless the Committee provides evidence of its alleged informal objections, including, without limitation, the substance of the informal objections, who asserted the objections and when, this Court should summarily deny the Motion to Vacate.

49.     Even if however the Committee provides competent and admissible evidence, and the Court concludes it is appropriate to revisit the retention notwithstanding the harm to Jefferies and the retention process, any further retention hearing should address only the narrow issues the Committee had identified as being objectionable. Of course, it is impossible to say at this juncture what those issues are, as the Motion to Vacate nor the Committee has communicated what the Committee's issues are.

50.     As it stands, the timeline of events surrounding the Motion to Vacate is suspect. Again, neither Jefferies nor Jefferies' counsel was made aware of any comments, informal or otherwise, by the Committee. *See* Ex. 1. And, after *over a month* of the CNO and the Retention Order sitting on this Court's docket, the Committee has decided that it wants the opportunity to object to the Retention Application.

51.     Further, the Retention Application was filed a week after the Committee was formed and carried the typical 21-day objection deadline, meaning the Committee had ample time to review the Retention Application and object, either formally on the docket or by conveying its comments to Jefferies or Jefferies' counsel, before the entry of the Retention Order.

52.     Instead, the Committee did nothing and now wants to rewind the clock on Jefferies' Retention. At this juncture, the Committee should wait to object to Jefferies' fees at the appropriate time, rather than asking this Court to vacate an appropriately entered order.

53.     As such, this Court should deny the Motion to Vacate and allow Jefferies' work to go forward in the manner it has been progressing for over a month in these Chapter 11 cases.

WHEREFORE, Jefferies respectfully requests that this Court (i) reconsider entry of the Order to Vacate; (ii) deny the Motion to Vacate; and (iii) grant such other and further relief as appropriate.

Dated: October 9, 2025

Respectfully submitted,

By:/s/ Clay M. Taylor
Clay M. Taylor
**DENTONS US LLP**
100 Crescent Court
Suite 900
Dallas, TX 75201
(214) 259-0900
clay.taylor@dentons.com

Thomas A. Labuda
Elysa J. Chew
233 S. Wacker Dr.
Suite 5900
Chicago, IL 60606
(312) 876-8000
thomas.labuda@dentons.com
elysa.chew@dentons.com

*Counsel for Jefferies*

## CERTIFICATE OF CONFERENCE

I hereby certify that Counsel for Creditor conferred with Counsel for Debtor on September 26, 2025. and he indicated that Debtor would not oppose an Objection to the Motion to Vacate being sustained and the Motion to Vacate being denied.  The undersigned then confirmed this understanding on October 8-9, 2025, via e-mail by sending a draft of the Motion for Reconsideration to Debtor's counsel on October 8, 2025, and receiving a reply to that communication on October 9, 2025, indicating the Debtor did not oppose the Motion for Reconsideration.  The undersigned held preliminary conversations with counsel for the UCC on October 2, 2025, and they are maintain the Motion to Vacate is well founded and would therefore oppose this Motion for Reconsideration.

*/s/ Clay M. Taylor*
Clay M. Taylor

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all parties and counsel of record via the Court's CM/ECF filing portal on this 9th day of October 2025.

*/s/ Clay M. Taylor*
Clay M. Taylor