**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| LINQTO TEXAS, LLC, *et al.*,[1] | ) | |
| | ) | Case No. 25-90186 |
| Debtors. | ) | |
| | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT**
**OF (A) FINAL APPROVAL OF THE DEBTORS' DISCLOSURE**
**STATEMENT AND (B) CONFIRMATION OF THE DEBTORS' PLAN**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Linqto, Inc. [0332]; Linqto Liquidshares, LLC [8976]; Linqto Liquidshares Manager, LLC [8214]; and Linqto Texas, LLC [5745]. The location of the Debtors' service address is: P.O. Box 2859, Sunnyvale, CA 94087.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 2

BACKGROUND ............................................................................................................... 3

    **I.**    **Procedural History** ........................................................................................... 3

    **II.**    **Summary of the Plan** ....................................................................................... 4

        **A.**    **Customer Recission Claims Settlement.** ............................................. 5

        **B.**    **The Restructuring Transactions.** ....................................................... 6

    **III.**    **The Solicitation Process and Voting Results.** ................................................. 7

        **A.**    **Plan Solicitation and Notice of Confirmation Hearing.** ................. 7

        **B.**    **Voting Results.** ................................................................................. 10

ARGUMENT .................................................................................................................. 11

    **I.**    **The Disclosure Statement Contains "Adequate Information" as Required by Section 1125 of the Bankruptcy Code, and the Debtors Satisfied the Applicable Notice Requirements.** ........................................................... 11

        **A.**    **The Disclosure Statement Contains Adequate Information.** ........ 11

        **B.**    **The Debtors Complied with the Applicable Notice Requirements.** ............................................................................................................. 14

        **C.**    **The Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith.** .................................................................. 14

    **II.**    **The Plan Satisfies Each Requirement for Confirmation.** .......................... 15

        **A.**    **Section 1129(a)(1): Plan Compliance with Bankruptcy Code Provisions.** ...................................................................................... 15

        **i.**    **The Plan Complies with Section 1122 of the Bankruptcy Code.** ... 15

        **ii.**    **The Plan Satisfies the Seven Mandatory Plan Requirements of Section 1123(a)(1)–(7) of the Bankruptcy Code.** ........................... 17

        **B.**    **Section 1129(a)(2): Debtors' Compliance with the Bankruptcy Code.** ................................................................................................ 20

        **i.**    **Section 1125: Post-Petition Disclosure Statement and Solicitation.** ............................................................................................................. 20

        **ii.**    **Section 1126: Acceptance of the Plan.** ............................................ 21

        **C.**    **Section 1129(a)(3): Good Faith.** ...................................................... 23

        **D.**    **Section 1129(a)(4): Professional Fees Subject to Bankruptcy Court Approval.** ......................................................................................... 24

        **E.**    **Section 1129(a)(5): Information Regarding Proposed Officers and Managers.** ......................................................................................... 24

i

F.     Section 1129(a)(6): Inapplicable Provision. ..................................... 25

G.     Section 1129(a)(7): Treatment of Holders of Impaired Classes.... 26

H.     Section 1129(a)(8): Acceptance by Each Impaired Class of Claims or Interests ........................................................................................ 28

I.      Section 1129(a)(9): Payment of Priority Claims. ......................... 28

J.      Section 1129(a)(10): Acceptance by Impaired Classes. ................. 29

K.     Section 1129(a)(11): Feasibility. ......................................................... 30

L.      Section 1129(a)(12): Payment of U.S. Trustee Fees. ..................... 32

M.    Sections 1129(a)(13)–(16): Inapplicable Provisions. ..................... 32

N.     Section 1129(b)—(e): The Plan Complies with the Other Provisions of Section 1129. .................................................................... 32

IV.     The Discretionary Contents of the Plan Comply with Section 1123(b) of the Bankruptcy Code. ...................................................................................... 33

A.     The Plan Appropriately Incorporates a Settlement of Claims and Causes of Action. ............................................................................... 34

B.     The Plan's Release, Exculpation, and Injunction Provisions Are Appropriate and Comply with the Bankruptcy Code. ................. 35

i.      The Debtor Releases are Appropriate and Comply with the Bankruptcy Code. ............................................................................ 35

ii.     The Third-Party Releases are Consensual, Appropriate, and Complies with the Bankruptcy Code. ............................................. 37

iii.    The Plan's Exculpation Provision Is Appropriate ........................ 38

iv.    The Injunction Sought Is Necessary to Enforce the Releases and Exculpations Contained in the Plan. ................................................ 40

C.     Assumption and Rejection of Executory Contracts and Unexpired Leases (Section 1123(b)(2)) ............................................................... 41

V.      The Modifications to the Plan Do Not Require Resolicitation and Should Be Approved. ................................................................................................... 42

CONCLUSION ................................................................................................................ 43

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999) .............. 27

*Boullion v. McClanahan*, 639 F.2d 213 (5th Cir. 1981) ................................................. 40

*Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985)................................... 40

*In re 47th and Belleview Partners*, 95 B.R. 117 (Bankr. W.D. Mo. 1988) ................................. 32

*In re Am. Solar King Corp.*, 90 B.R. 808 (Bankr. W.D. Tex. 1988) ........................................ 43

*In re AWECO, Inc.*, 725 F.2d 293 (5th Cir. 1984) ........................................................ 34

*In re Bigler LP*, 442 B.R. 537 (Bankr. S.D. Tex. 2010) .................................................. 36

*In re Block Shim Dev. Co.-Irving*, 939 F.2d 289 (5th Cir. 1991) ......................................... 24

*In re Briscoe Enterprises, Ltd., II*, 994 F.2d 1160 (5th Cir. 1993) ..................................... 31

*In re Brotby*, 303 B.R. 177 (B.A.P. 9th Cir. 2003) ...................................................... 31

*In re Cajun Elec. Power Co-op., Inc.,* 119 F.3d 349 (5th Cir. 1997) ..................................... 37

*In re Cajun Elec. Power Co-op., Inc.,* 150 F.3d 503 (5th Cir. 1998) ................................. 21, 25

*In re Capmark Fin. Grp., Inc.*, 438 B.R. 471 (Bankr. D. Del. 2010) ...................................... 27

*In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569 (Bankr. N.D. Tex. 1986) ............................... 25

*In re Couture Hotel Corp.*, 536 B.R. 712 (Bankr. N.D. Tex. 2015)......................................... 15

*In re Cypresswood Land Partners, I*, 409 B.R. 396 (Bankr. S.D. Tex. 2009)........................... 21, 31

*In re Divine Ripe, L.L.C.*, 554 B.R. 395 (Bankr. S.D. Tex. 2016)......................................... 12

*In re Dow Corning Corp.*, 237 B.R. 374 (E.D. Mich. 1999) ................................................ 43

*In re Eastgate Tower Hotel Associates, L.P.,* 2012 WL 5128145 (Bankr. S.D.N.Y. Aug. 20, 2012)................................................................................................. 32

*In re Eddington Thread Mfg. Co.*, 181 B.R. 826 (Bankr. E.D. Pa. 1995) .................................. 31

*In re Enron Corp.*, 2004 Bankr. LEXIS 2549 (Bankr. S.D.N.Y. July 15, 2004) ............................. 27

*In re Farwest Pump Co.*, 621 B.R. 871 (Bankr. D. Ariz. 2019) ............................................ 32

*In re Foster*, 2023 WL 20872 (5th Cir. Jan. 3, 2023) .................................................... 40

iii

*In re General Homes Corp.*, 134 B.R. 853 (Bankr. S.D. Tex. 1991) ..................................... 36, 37

*In re Greystone III Joint Venture*, 995 F.2d 1274 (5th Cir. 1991) ................................................. 15

*In re Heritage Org., LLC*, 375 B.R. 230 (Bankr. N.D. Tex. 2007) ............................................... 36

*In re Highland Capital Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022) ....................................... 40, 41

In re Hydroscience Techs., Inc., 2018 WL 672507 (Bankr. N.D. Tex. Jan. 31, 2018) ............... 32

*In re Lakeside Global II, Ltd.*, 116 B.R. 499 (Bankr. S.D. Tex. 1989) ....................................... 31

*In re Landing Assocs.,* 157 B.R. 791 (Bankr. W.D. Tex. 1993) ................................................... 26

*In re Lason, Inc.*, 300 B.R. 227 (Bankr. D. Del. 2003) ................................................................. 27

*In re Mangia Pizza Invs., LP*, 480 B.R. 669 (Bankr. W.D. Tex. 2012) ....................................... 43

*In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984) .................................... 13

*In re Mirant Corp*., 348 B.R. 725 (Bankr. N.D. Tex. 2006) ................................................... 36, 37

*In re Neff*, 60 B.R. 448 (Bankr. N.D. Tex. 1985) ........................................................................ 27

*In re Nortel Networks, Inc.*, 522 B.R. 491 (Bankr. D. Del. 2014) ................................................ 27

In re Pero Bros. Farms, Inc., 90 B.R. 562 (Bankr. S.D. Fla. 1988) .............................................. 32

*In re Phoenix Petroleum Co.*, 278 B.R. 385 (Bankr. E.D. Pa. 2001) .......................................... 13

*In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000) ......................................................... 39, 40

*In re R.E. Loans, LLC*, 2012 WL 2411877 (Bankr. N.D. Tex. June 26, 2012) ........................... 43

*In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346 (5th Cir. 1989) .................................................... 31

*In re Scioto Valley Mortg. Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988) ....................................... 13

*In re Sentry Operating Co. of Texas, Inc.*, 264 B.R. 850 (Bankr. S.D. Tex. 2001) ..................... 15

In re Station Casinos, Inc., 2010 WL 11492265 (Bankr. D. Nev. Apr. 9, 2010) ........................ 32

*In re Sun Country Dev., Inc*., 764 F.2d 406 (5th Cir. 1985) ......................................................... 24

*In re Tex. Extrusion Corp*., 844 F.2d 1142 (5th Cir. 1988) .................................................... 12, 27

*In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790 (5th Cir. 1997) ......................................... 24, 31

*In re Transwest Resort Props., Inc.*, 881 F.3d 724 (9th Cir. 2018) .............................................. 30

*In re Two Streets, Inc.*, 597 B.R. 309 (Bankr. S.D. Miss. 2019) .................................................. 32

*In re U.S. Brass Corp.*, 194 B.R. 420 (Bankr. E.D. Tex. 1996) .................................................. 13

*In re Vill. at Camp Bowie I, L.P.*, 710 F.3d 239 (5th Cir. 2013) .................................................. 24

*In re Voyager Digital Holdings, Inc.*, 2023 WL 2731737 (S.D.N.Y. Apr. 1, 2023) ................... 40

*In re Wyly*, 2019 WL 2590035 (Bankr. N.D. Tex. June 22, 2019) ............................................... 32

*In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995) .................................................................................. 34

*Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*, 354 B.R. 1 (D. Conn. 2006) .................. 31

**Statutes**

11 U.S.C. § 101 .................................................................................................................................... 1

11 U.S.C. § 1107 ................................................................................................................................. 40

11 U.S.C. § 1107(a) ............................................................................................................................. 3

11 U.S.C. § 1108 .................................................................................................................................. 3

11 U.S.C. § 1122 ..................................................................................................................... 15, 16, 18

11 U.S.C. § 1122(a) ........................................................................................................................... 15

11 U.S.C. § 1123 ................................................................................................................................ 15

11 U.S.C. § 1123(a) ................................................................................................................. 18, 19, 20

11 U.S.C. § 1123(a)(1) ....................................................................................................................... 18

11 U.S.C. § 1123(a)(2) ....................................................................................................................... 18

11 U.S.C. § 1123(a)(3) ....................................................................................................................... 18

11 U.S.C. § 1123(a)(4) ....................................................................................................................... 18

11 U.S.C. § 1123(a)(5) ................................................................................................................... 19, 20

11 U.S.C. § 1123(a)(6) ....................................................................................................................... 20

11 U.S.C. § 1123(a)(7) ................................................................................................................... 20, 21

11 U.S.C. § 1123(b) ........................................................................................................................... 34

11 U.S.C. § 1123(b)(1) ....................................................................................................................... 34

11 U.S.C. § 1123(b)(2) ............................................................................................... 34, 41

11 U.S.C. § 1123(b)(3) ............................................................................................... 34, 36

11 U.S.C. § 1123(b)(3)(A) .......................................................................................... 34, 36

11 U.S.C. § 1123(b)(4) ..................................................................................................... 34

11 U.S.C. § 1123(b)(5) ..................................................................................................... 34

11 U.S.C. § 1123(b)(6) ..................................................................................................... 34

11 U.S.C. § 1123(d) ................................................................................................... 41, 42

11 U.S.C. § 1125 ....................................................................................................... passim

11 U.S.C. § 1125(a) ................................................................................................... 13, 22

11 U.S.C. § 1125(a)(1) ..................................................................................................... 22

11 U.S.C. § 1125(b) ................................................................................................... 21, 22

11 U.S.C. § 1125(c) .......................................................................................................... 22

11 U.S.C. § 1125(e) ................................................................................................... 14, 39

11 U.S.C. § 1126 ...................................................................................... 10, 22, 23, 35

11 U.S.C. § 1126(a) .......................................................................................................... 23

11 U.S.C. § 1126(b)(2) ..................................................................................................... 13

11 U.S.C. § 1126(c) .......................................................................................................... 23

11 U.S.C. § 1126(d) .......................................................................................................... 23

11 U.S.C. § 1126(f) ........................................................................................................... 23

11 U.S.C. § 1126(g) .......................................................................................................... 23

11 U.S.C. § 1127(a) .......................................................................................................... 42

11 U.S.C. § 1127(a)(7) ...................................................................................................... 27

11 U.S.C. § 1127(d) .......................................................................................................... 42

11 U.S.C. § 1129 ....................................................................................................... passim

11 U.S.C. § 1129(a) .......................................................................................................... 33

11 U.S.C. § 1129(a)(1)........................................................................................................ 15

11 U.S.C. § 1129(a)(10)................................................................................................ 30, 31

11 U.S.C. § 1129(a)(11)................................................................................................ 31, 32

11 U.S.C. § 1129(a)(12)...................................................................................................... 32

11 U.S.C. § 1129(a)(13)...................................................................................................... 33

11 U.S.C. § 1129(a)(14)...................................................................................................... 33

11 U.S.C. § 1129(a)(15)...................................................................................................... 33

11 U.S.C. § 1129(a)(16)...................................................................................................... 33

11 U.S.C. § 1129(a)(2).................................................................................................. 21, 23

11 U.S.C. § 1129(a)(3).................................................................................................. 24, 39

11 U.S.C. § 1129(a)(4).................................................................................................. 24, 25

11 U.S.C. § 1129(a)(5)........................................................................................................ 25

11 U.S.C. § 1129(a)(5)(A)(i) ....................................................................................... 25, 26

11 U.S.C. § 1129(a)(5)(A)(ii) ...................................................................................... 25, 26

11 U.S.C. § 1129(a)(5)(B) .................................................................................................. 26

11 U.S.C. § 1129(a)(6)........................................................................................................ 26

11 U.S.C. § 1129(a)(7).................................................................................................. 27, 28

11 U.S.C. § 1129(a)(7)(A) .................................................................................................. 27

11 U.S.C. § 1129(a)(8)...................................................................................... 28, 29, 30, 33

11 U.S.C. § 1129(a)(9).................................................................................................. 29, 30

11 U.S.C. § 1129(a)(9)(A) ........................................................................................... 29, 30

11 U.S.C. § 1129(a)(9)(B) ........................................................................................... 29, 30

11 U.S.C. § 1129(a)(9)(C) ........................................................................................... 29, 30

11 U.S.C. § 1129(b) .............................................................................................. 29, 33, 37

11 U.S.C. § 1129(c) ............................................................................................................ 33

11 U.S.C. § 1129(d) ........................................................................................................... 33

11 U.S.C. § 1129(e) ........................................................................................................... 34

11 U.S.C. § 157(b)(2)(L) ................................................................................................... 39

11 U.S.C. § 326(a) ............................................................................................................. 28

11 U.S.C. § 328 .................................................................................................................. 25

11 U.S.C. § 330 .................................................................................................................. 25

11 U.S.C. § 365 .................................................................................................................. 42

11 U.S.C. § 503(b) ............................................................................................................. 29

11 U.S.C. § 503(b)(2) ........................................................................................................ 28

11 U.S.C. § 507(a)(1) ........................................................................................................ 29

11 U.S.C. § 507(a)(2) ........................................................................................................ 29

11 U.S.C. § 507(a)(4) ........................................................................................................ 29

11 U.S.C. § 507(a)(5) ........................................................................................................ 29

11 U.S.C. § 507(a)(6) ........................................................................................................ 29

11 U.S.C. § 507(a)(7) ........................................................................................................ 29

11 U.S.C. § 507(a)(8) ........................................................................................................ 29

15 U.S.C. § 77e ................................................................................................................. 33

28 U.S.C. § 1930 ............................................................................................................... 32

**Rules**

Fed. R. Bankr. P. 1015(b) .................................................................................................... 4

Fed. R. Bankr. P. 1019(2) .................................................................................................. 28

Fed. R. Bankr. P. 3002(c) .................................................................................................. 28

Fed. R. Bankr. P. 3019 ...................................................................................................... 43

Fed. R. Bankr. P. 3019(a) .................................................................................................. 43

Fed. R. Bankr. P. 9019 ........................................................................................................ 5

**Other Authorities**

H.R. Rep. No. 95-595, *reprinted in* 1978 U.S.C. C.A.N. 5936, (1977) ................................ 15, 21

S. Rep. No. 95-989, *reprinted in* 1978 U.S.C.C.A.N. 5787 (1978) .............................................. 15

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") submit this memorandum of law (the "**Confirmation Brief**") in support of (i) approval of the *Disclosure Statement for the Joint Chapter 11 Plan of Linqto Texas, LLC and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "**Disclosure Statement**") on a final basis, and (ii) confirmation of the *Joint Chapter 11 Plan of Linqto Texas, LLC and its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "**Plan**").[2]   In further support of confirmation of the Plan and final approval of the Disclosure Statement, the Debtors filed the following declarations (collectively, the "**Supporting Declarations**"):[3]

a.   *Declaration of Jeffrey S. Stein in Support of Confirmation* of the *Joint Chapter 11 Plan of Linqto Texas, LLC and its Debtor Affiliates* [Docket No. 1498-40] (the "**Stein Declaration**");

b.   *Declaration of Thomas Studebaker in Support of Confirmation* of the *Joint Chapter 11 Plan of Linqto Texas, LLC and its Debtor Affiliates* [Docket No. 1498-41]; and

c.   *Declaration of Emily Young, on Behalf of Epiq Corporate Restructuring, LLC, Regarding Solicitation and Tabulation of Ballots Cast in Connection With the Joint Chapter 11 Plan of Linqto Texas, LLC And Its Debtor Affiliates* [Docket No. 1509] (the "**Solicitation and Voting Declaration**").

---

[2]        Unless otherwise indicated, all chapter and section references are to the Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.* (as amended, the "**Bankruptcy Code**"). All references to a "**Chapter**" or "**Section**" shall be to the Bankruptcy Code. "**Bankruptcy Rule**" references are to the Federal Rules of Bankruptcy Procedure. "**Bankruptcy Local Rule**" or "**BLR**" references are to the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas. Other capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable. All references to an Article refer to the applicable article of the Plan unless otherwise specified herein.

[3]        The Supporting Declarations and any testimony and other declarations that may be proffered or submitted in connection with the Combined Hearing (as defined herein) are fully incorporated herein.

## PRELIMINARY STATEMENT[4]

1.      The Plan is the culmination of extensive negotiations, careful structuring, and sustained collaboration among the Debtors, the Official Committee of Unsecured Creditors, and other key stakeholders to resolve exceptionally complex legal, regulatory, and operational issues in a manner that maximizes value and delivers meaningful recoveries to customers and creditors. These Chapter 11 Cases involve non-traditional and illiquid assets, evolving regulatory considerations, and a large and diverse customer base with differing recovery objectives.

2.      Through a coordinated set of transactions, including the creation of a Wind-Down Trust, a Liquidating Trust, and a Closed-End Fund, the Plan preserves asset value, provides transparency, and offers stakeholders recovery options tailored to the unique nature of the Debtors' Platform Securities and regulatory environment.  The Plan channels disputes into defined post-confirmation structures, resolves material sources of uncertainty, and replaces costly, piecemeal litigation with an efficient court-approved framework going forward.

3.      The Plan has broad support from the Debtors' creditor constituencies and reflects a consensus-driven resolution reached after months of arm's-length negotiations and independent investigation.  The evidentiary record demonstrates that the Plan provides recoveries materially superior to any realistic chapter 7 alternative, treats similarly situated creditors consistently, and respects the priority scheme established by the Bankruptcy Code. The overwhelming acceptance of the Plan by voting creditors further confirms that it represents the best available outcome for stakeholders under the circumstances of these Chapter 11 Cases.

---

[4]      This Confirmation Brief addresses the legal requirements for confirmation of the Plan under Section 1129 of the Bankruptcy Code.  The Debtors will respond to individual confirmation objections in a separate reply.  The Debtors submit that none of the confirmation objections present a reason to deny confirmation of the Plan and risk destroying the value associated with consummation of the Plan, which has been, and continues to be, the best value-maximizing alternative for all of the Debtors' stakeholders.

4.      Confirmation of the Plan will bring these cases to a necessary and constructive close, allowing the Debtors' Customers and other creditors to receive distributions and move forward without the continued delay, expense and uncertainty inherent in protracted litigation.

5.      The recoveries provided under the Plan are premised on two central features.  First, substantially all remaining assets of the Debtors are transferred to post-Effective Date trusts administered by independent fiduciaries, ensuring orderly monetization, claims reconciliation, and distribution in accordance with the Plan's waterfall priority scheme.  Second, the Plan implements comprehensive settlements and governance mechanisms that resolve disputes, allocate risk appropriately, and enable the efficient administration and wind-down of the Debtors' estates while preserving potential upside for customers to the maximum extent practicable.

6.      The Debtors submit that the Plan represents the optimal path to resolution of these Chapter 11 Cases. Faced with significant regulatory complexity, disputed claims, and illiquid and non-traditional assets, the Debtors evaluated available alternatives and, in close consultation with their stakeholders, determined that the Plan provides the highest and best recoveries achievable.

7.      As set forth in further detail below, the Plan satisfies the elements of Section 1129 of the Bankruptcy Code and should be confirmed.

## BACKGROUND

**I.      Procedural History.**

8.      On July 7, 2025, each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors continue to operate their business and manage their property as debtors and debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. These Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [Docket No. 21].

9. On July 18, 2025, the Office of the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Committee**") [Docket No. 98].

10. Additional information regarding the Debtors, their business, and the facts and circumstances supporting the Debtors' Chapter 11 Cases is set forth in the Declaration of Jeffrey S. Stein in Support of Chapter 11 Petitions, First Day Motions, and Related Relief [Docket No. 10].

11. On August 19, 2025, the Court entered the *Order authorizing (I) Employment and Retention of Breakpoint Partners LLC, (II) Designation of Jeffrey S. Stein as Chief Restructuring Officer, and (III) Granting Related Relief* [Docket No. 329], which authorized the Debtors to retain and employ Breakpoint Partners LLC ("**Breakpoint**") and designate Mr. Jeffrey S. Stein as Managing Partner of Breakpoint, as chief restructuring officer ("**CRO**").

## II.    Summary of the Plan

12. The Plan provides for the administration and disposition of the Debtors' estates through post-Effective Date vehicles established under the Plan. It sets forth the structure for claims reconciliation, asset administration, and distributions in accordance with the Bankruptcy Code.

13. To carry out this structure, the Plan provides for the creation of three vehicles: a Wind-Down Trust, a Liquidating Trust, and a Closed-End Fund. The Wind-Down Trust serves as the primary vehicle for estate administration, including the reconciliation and payment of non-customer claims, the monetization of retained assets and causes of action, and the completion of the Debtors' wind-down. Except as otherwise provided for Customer Claims, recoveries for holders of Allowed Claims are administered through the Wind-Down Trust pursuant to the Plan.

14. The Plan separately establishes an election-based framework for Customer Claims. Customers may elect to contribute their Customer Interests to the Liquidating Trust, the Closed-End Fund, or a combination of the two, subject to the terms and conditions of the Plan. The Liquidating Trust and Closed-End Fund govern the administration and distribution of contributed Customer Interests as provided in the Plan and applicable governing documents.

15. The Plan is funded through assets allocated to the respective post-Effective Date vehicles and provides for the payment of administrative, priority, and secured claims as required by the Bankruptcy Code.

16. The Plan also incorporates certain settlements and governance provisions implemented through the Plan's post-Effective Date structure.

**A.    Customer Recission Claims Settlement.**

17. The Plan contains a settlement of Customer Recission Claims pursuant to Rule 9019. The Debtors and the Committee are aware that significant numbers of customers may hold recission claims. However, Linqto's customer base may not be aware of their potential rights under securities law. Linqto may have defenses to such claims, in whole, in part, or with respect to individual claimants. There is also a risk that governmental regulators would assert, on behalf of customers, a recission claim. To avoid the costs of litigating such claims, and potential arguments (by customers or regulators) that such claims should exist notwithstanding the failure to file such claims by the bar date, the Debtors and the Committee have proposed a settlement of such claims in the Plan. Pursuant to this settlement, each customer would have an automatically allowed recission claim, without the need to assert such a claim or to litigate that claim. In exchange, such recission claims would take (as a class) no more than 33% of all distributions with other *pari passu* creditors until all such other *pari passu* creditors were paid in full. Each Customer Recission Claim would be paid *pari passu* with other Customer Recission

Claims. If the Customer Recissions Claim Settlement is not approved, then neither the automatic claim filing and allowance, nor the 33% class-wide cap shall apply to Customer Recission Claims.

**B.**     **The Restructuring Transactions.**

18.     The Plan provides for the creation of three vehicles: a Wind-Down Trust, a Liquidating Trust, and a Closed-End Fund. Customers may elect to have their Customer Interests contributed to the Liquidating Trust, the Closed-End Fund, or a combination of the two, subject to the terms and limitations in the Plan. Each vehicle has a distinct purpose:

a.     The Wind-Down Trust will be responsible for monetizing certain assets including the Reserved Securities and the Retained Causes of Action. It will also be responsible for the reconciliation of Claims against the Estates, and the administrative tasks associated with the winding up of the Debtors, subject to the terms of the Plan. Except for Customer Claims, which get the treatment described in b. and c. below, the Wind-Down Trust is the vehicle through which all Claims will recover through the Plan.

b.     The formation of the Liquidating Trust will allow Customers, other than those who indirectly hold any Designated Platform Securities, to contribute their Customer Interest to the Liquidating Trust in exchange for Liquidating Trust Interests that represent the Customers' economic interest in a Liquidshares Portfolio Company. The Liquidating Trust will terminate upon the earlier of (i) five (5) years from the Effective Date (subject to periodic extensions as may be approved by the Bankruptcy Court) and (ii) the occurrence of certain events as set forth in the Liquidating Trust Agreement. The Liquidating Trust is designed to allow most Customers to keep their envisioned investment as close to their original intent as possible.

c.     The formation of the Closed-End Fund will allow Customers, including those who indirectly hold any Designated Platform Securities, to contribute their Customer Interest to the Closed-End Fund in exchange for publicly traded shares. The Closed-End Fund will not have a termination date. The Closed-End Fund will allow Customers to obtain intraday liquidity and to hold their investment long-term. All contributed Customer Interests will be pooled in the Closed-End Fund, and Electing Customers will receive shares of the Closed-End Fund equal to the value of such Electing Customers' contribution.

19.     These vehicles will allow Customers to retain the "upside" of their intended investments to the maximum extent possible.

20.     The Debtors believe that the Distributions under the Plan will provide all Holders of Claims against and Interests in the Debtors at least the same recovery on account of Allowed Claims and Interests as would a liquidation of the Debtors' assets conducted under chapter 7 of the Bankruptcy Code. Furthermore, Distributions under the Plan to Holders of Claims would be made more quickly than Distributions by a chapter 7 trustee and a chapter 7 trustee would charge a substantial fee, reducing the amount available for Distribution on account of Allowed Claims. Thus, the Debtors believe that confirmation and consummation of the Plan is in the best interest of all Holders of Claims and Interests.

### III.     The Solicitation Process and Voting Results.

#### A.     Plan Solicitation and Notice of Confirmation Hearing.

21.     On December 11, 2025, the Court entered an order [Docket No. 1142] (the "**Conditional Approval Order**") (a) authorizing the Debtors to solicit votes on the Plan, (b) conditionally approving the Disclosure Statement, ((c) approving the solicitation and documents to be included in the solicitation packages; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; I approving management selection procedures; and (f) scheduling certain dates with respect thereto.  More specifically, the Conditional Approval Order established, among other things, (i) December 17, 2025 as the deadline for the Debtors to serve their Solicitation Packages and Combined Hearing Notice (as each term is defined in the Conditional Approval Order) and (ii) February 2, 2026, as the date for the combined hearing to consider final approval of the adequacy of the Disclosure Statement and confirmation of the Plan.

22.     In accordance with the Conditional Approval Order, on or about December 16, 2025 through December 17, 202, the Debtors caused their claims, noticing, and solicitation agent, Epiq Corporate Restructuring, LLC  (the "**Claims and Solicitation Agent**"), to distribute copies of, among other things, the Disclosure Statement and the Plan, and the exhibits thereto, the applicable form of ballot with voting instructions (the "**Ballot**"), and a cover letter explaining the purpose of the distribution to the Holders of (a) Claims in Class 4 (Customer Claims), (b) Class 5 (Convenience Trade Claims), and (c) Class 6 (Unsubordinated Governmental Claims, (d) Class 7 Other General Unsecured Claims, (e) Class 8 (Customer Deficiency Claims ), and (f) Class 9 (Customer Rescission Claims ) (collectively, the "**Voting Classes**").[5]

23.     The Debtors were not required to solicit votes from Holders of Claims or Interests in Non-Voting Classes, as such Holders are not entitled to vote on the Plan. Holders of Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (Exited Customer Claims), Class 10 (Intercompany Claims), Class 11 (Subordinated Governmental Claims), Class 12 (Other Subordinated Claims) and Class 13 (Existing Equity Interests) (collectively, the "**Non-Voting Classes**") because the Holders in the Non-Voting Classes are either Unimpaired under the Plan and deemed to accept the Plan, or are Impaired and deemed to reject the Plan. Instead, in accordance with the Conditional Approval Order, the Debtors caused the Claims and Solicitation Agent to distribute a notice of non-voting status (the "**Notice of Non-Voting Status**") to (i) the Holders of Claims or Interests in the Non-Voting Classes who are not entitled to vote on the Plan.[6]

---

[5]     *See* Solicitation and Voting Declaration at ¶ 8.

[6]     *Id.*

The Notice of Non-Voting Status also included a return form and instructions for such Holders to opt in to the Third-Party Release (as defined herein) at their election.[7]

24.     In addition, the Debtors caused the Claims and Solicitation Agent to serve a notice of the Combined Hearing and the Objection Deadline to all known Holders of Claims as of the Voting Recore Date, and all parties in interest entitled to notice under Bankruptcy Rule 2002 and applicable Bankruptcy Rules, and parties listed in the creditor matrix on or about December 12, 2025 and December 15, 2025.[8] The Debtors also caused the Claims and Solicitation Agent to publish a substantially similar Combined Hearing Notice in the national edition of the *Wall Street Journal* on December 17, 2025.[9]

25.     The deadline for all Holders of Claims entitled to vote on the Plan to cast their ballots was January 26, 2026, at 5:00 p.m. (prevailing Central Time) (the "**Voting Deadline**"). The deadline to file objections to the Disclosure Statement and confirmation of the Plan was January 21, 2026, at 5:00 p.m., at 5:00 p.m. (prevailing Central Time).

26.     The Combined Hearing to consider final approval of the Disclosure Statement and confirmation of the Plan will commence at 9:00 a.m. (prevailing Central Time) on February 2, 2026.

27.     The Debtors' proposed order confirming the Plan (the "**Confirmation Order**") is filed contemporaneously herewith.

---

[7]     *Id.*

[8]     *Id.*

[9]     *See Affidavit Re: Publication – The Wall Street Journal*, filed on December 17, 2025 [Docket No. 1163].

B.    **Voting Results.**

28.    Contemporaneously herewith, the Claims and Solicitation Agent filed Solicitation and Voting Declaration tabulating the Ballots received by the Voting Deadline from Holders of Claims in the Voting Classes.  The voting results are summarized below.

29.    In accordance with Section 1126 of the Bankruptcy Code, only Holders of Claims and Interests in Impaired Classes receiving or retaining property on account of such Claims or Interests were entitled to vote on the Plan. As a result, Holders of Claims and Interests in the following Classes were entitled to vote to accept or reject the Plan:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 4 | Customer Claims | Impaired | Entitled to Vote |
| 5 | Convenience Trade Claims | Impaired | Entitled to Vote |
| 6 | Unsubordinated Governmental Claims | Impaired | Entitled to Vote |
| 7 | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Customer Deficiency Claims | Impaired | Entitled to Vote |
| 9 | Customer Rescission Claims | Impaired | Entitled to Vote |

30.    Holders of Claims and Interests were not entitled to vote if their rights are (a) Unimpaired by the Plan or (b) Impaired by the Plan such that they will receive no distribution of property under the Plan. As a result, the following Classes of Claims and Interests were ***not*** entitled to vote on the Plan, and the Debtors did not solicit votes from Holders of such Claims and Interests:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Exited Customer Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| Class | Claims and Interests | Status | Voting Rights |
|:---:|:---:|:---:|:---:|
| 10 | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Subordinated Governmental Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 12 | Other Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 13 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

31.    As set forth in the Solicitation and Voting Declaration, all Impaired Classes that were solicited voted to accept the Plan.[10]

## **ARGUMENT**

32.    This brief is divided into two parts. *First*, the Debtors request final approval of the Disclosure Statement. *Second*, the Debtors demonstrate that the Plan satisfies the confirmation requirements of Section 1129 of the Bankruptcy Code, and, accordingly, request that the Court confirm the Plan.

**I.    The Disclosure Statement Contains "Adequate Information" as Required by Section 1125 of the Bankruptcy Code, and the Debtors Satisfied the Applicable Notice Requirements.**

**A.    The Disclosure Statement Contains Adequate Information.**

33.    The primary purpose of a disclosure statement is to provide material information, or "adequate information," that allows parties entitled to vote on a proposed plan to make an informed decision about whether to vote to accept or reject the plan.[11] "Adequate information" is a flexible standard, based on the facts and circumstances of each case.[12] Courts within the Fifth

---

[10]    *See* Solicitation and Voting Declaration at Exhibit A. There were no Holders of Claims in Class 6 (Unsubordinated Governmental Claims) or Class 12 (Other Subordinated Claims) as of the time of the solicitation mailing, therefore no votes were solicited in those Classes. *Id.* at ¶ 8.

[11]    *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988).

[12]    *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 400 (Bankr. S.D. Tex. 2016).

Circuit and elsewhere acknowledge that bankruptcy courts have broad discretion in determining what constitutes "adequate information" for the purpose of satisfying Section 1125 of the Bankruptcy Code.[13]

34.    Courts generally look for certain information when evaluating the adequacy of the disclosures in a proposed disclosure statement, including:

- the events that led to the filing of a bankruptcy petition;

- the relationship of the debtors with their affiliates;

-  a description of the available assets and their value;

- the anticipated future of the companies;

-  the source of information stated in the disclosure statement;

- the present condition of the debtors while in chapter 11;

- claims asserted against the debtors;

-  the estimated return to creditors under a chapter 7 liquidation;

- the chapter 11 plan or a summary thereof;

-  financial information, valuations, and projections relevant to the creditors'

- decision to accept or reject the chapter 11 plan;

-  information relevant to risks posed to creditors under the plan;

- the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

---

[13]        *See, e.g.*, *In re Tex. Extrusion*, 844 F.2d at 1157.

- litigation likely to arise in a non-bankruptcy context; and

- tax attributes of the debtors.[14]

35.    The Disclosure Statement contains adequate information and was previously approved on a conditional basis on December 11, 2025. The Disclosure Statement contains descriptions and summaries of, among other things: (a) the Plan, (b) the Debtors' business operations, (c) key events leading to the commencement of these chapter 11 cases, (d) the Debtors' prepetition indebtedness, (e) the proposed capital structure of the Reorganized Debtors, (f) financial information and valuations that would be relevant to creditors' determination to accept or reject the Plan, including projected recoveries, (g) a liquidation analysis setting forth the estimated return that Holders of Claims and Interests would receive in a hypothetical chapter 7 liquidation, (h) securities disclosures with respect to the Plan, (i) risk factors associated with the Plan, and (j) federal tax law consequences of the Plan.

36.    Accordingly, the Debtors submit that the Disclosure Statement served in accordance with the Conditional Approval Order, contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations. Moreover, the Disclosure Statement contains "adequate information" (as such term is defined in Section 1125(a) of the Bankruptcy Code and used in Section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the distributions and transactions contemplated by the Plan, and should be approved.

---

[14]    *See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996) (citing *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)); *see also In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (citing factors that courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (setting forth a non-exhaustive list of 19 categories of information that may be included in a disclosure statement). Disclosure regarding all of the aforementioned topics is not necessary in every case. *See In re U.S. Brass*, 194 B.R. at 425; *see also In re Phoenix Petroleum*, 278 B.R. at 393 ("[C]ertain categories of information of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.")

**B.**     **The Debtors Complied with the Applicable Notice Requirements.**

37.     In addition to conditionally approving the adequacy of the Disclosure Statement, the Conditional Approval Order granted final relief regarding solicitation and noticing procedures and materials including, among other things: (a) approving the Solicitation Procedures; (b) approving the form and manner of the Combined Hearing Notice; and (c) approving certain dates and deadlines with respect to the Plan and Disclosure Statement. The Debtors complied with the procedures and timeline approved by the Solicitation Procedures Order.

**C.**     **The Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith.**

38.     Section 1125(e) of the Bankruptcy Code provides that "a person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan.[15] As set forth in the Disclosure Statement, and as demonstrated by the Debtors' compliance with the Solicitation Procedures Order,[16] the Debtors at all times engaged in arm's-length, good faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with Section 1125 of the Bankruptcy Code. Therefore, the Debtors request that the Bankruptcy Court grant the parties the protections provided under Section 1125(e) of the Bankruptcy Code.

---

[15]     11 U.S.C. § 1125(e).

[16]     *See* Solicitation and Voting Declaration.

## II.     The Plan Satisfies Each Requirement for Confirmation.

### A.     Section 1129(a)(1): Plan Compliance with Bankruptcy Code Provisions.

39.     Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of the Bankruptcy Code.[17]   The principal aim of this provision is to ensure compliance with the sections of the Bankruptcy Code governing classification of claims and interests and the contents of a plan of reorganization.[18]   Accordingly, the determination of whether the Plan complies with Section 1129(a)(1) of the Bankruptcy Code requires an analysis of Sections 1122 and 1123 of the Bankruptcy Code.

### i.     The Plan Complies with Section 1122 of the Bankruptcy Code.

40.     Section 1122 of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[19]   Because claims only need to be "substantially" similar to be placed in the same class, plan proponents have broad discretion in determining how to classify claims together.[20]   Likewise, the Fifth Circuit has recognized that plan proponents may place similar claims into different classes, provided there is a rational basis to do so.[21]

---

[17]     11 U.S.C. § 1129(a)(1).

[18]     *See* S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5936, 6368.

[19]     11 U.S.C. § 1122(a).

[20]     *See In re Sentry Operating Co. of Tex., Inc.*, 264 B.R. 850, 860 (Bankr. S.D. Tex. 2001) (recognizing that section 1122 is broadly permissive of "any classification scheme that is not [specifically] proscribed, and that substantially similar claims may be *separately* classified.").

[21]     *In re Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991) (holding that section 1122(a) permits classification of "substantially similar" claims in different classes if undertaken for reasons other than to secure the vote of an impaired, assenting class of claims); *see also In re Couture Hotel Corp.*, 536 B.R. 712, 733 (Bankr. N.D. Tex. 2015).

41.    The Plan's classification of Claims and Interests satisfies the requirements of Section 1122 of the Bankruptcy Code because the Plan places Claims and Interests into 13 separate Classes, with each Class differing from the Claims and Interests in each other Class in a legal or factual nature or based on other relevant criteria.[22]  Specifically, the Plan provides for the separate classification of Claims and Interests into the following Classes:

| Class | Claims and Interests |
|-------|----------------------|
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |
| 3 | Exited Customer Claims |
| 4 | Customer Claims |
| 5 | Convenience Trade Claims |
| 6 | Unsubordinated Governmental Claims |
| 7 | Other General Unsecured Claims |
| 8 | Customer Deficiency Claims |
| 9 | Customer Rescission Claims |
| 10 | Intercompany Claims |
| 11 | Subordinated Governmental Claims |
| 12 | Other Subordinated Claims |
| 13 | Existing Equity Interests |

42.    Claims and Interests assigned to each particular Class described above are substantially similar to the other Claims and Interests in such Class. In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests. Namely, the Plan separately classifies the Claims because each Holder of such Claims or Interests may hold (or may have held) rights in the Estate legally dissimilar to the Claims or Interests in other Classes or because substantial administrative convenience resulted from such classification.  For example, Claims (rights to payment) are

---

[22]     Plan, Art. III.

classified separately from Interests (representing ownership in the business) and Secured Claims are classified separately from Unsecured Claims.  These classifications facilitate the ease of distributions on the Effective Date.

43.     For the foregoing reasons, the Plan satisfies Section 1122 of the Bankruptcy Code.

ii.     **The Plan Satisfies the Seven Mandatory Plan Requirements of Section 1123(a)(1)–(7) of the Bankruptcy Code.**

44.     The seven applicable requirements of Section 1123(a) of the Bankruptcy Code generally relate to the specification of claims treatment and classification, the equal treatment of claims within classes, and the mechanics of implementing a plan. The Plan satisfies each of these requirements.

45.     *Specification of Classes, Impairment, and Treatment.* The first three requirements of Section 1123(a) of the Bankruptcy Code are that a plan specify (1) the classification of claims and interests, (2) whether such claims and interests are impaired or unimpaired, and (3) the precise nature of their treatment.[23]   The Plan, in particular Article III, sets forth these specifications in detail in satisfaction of these three requirements.[24]

46.     *Equal Treatment.*  The fourth requirement of Section 1123(a) of the Bankruptcy Code is that a plan must "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment."[25]  The Plan meets this requirement because, as set forth in Article III.B., except as except as otherwise agreed to by a Holder of a particular Claim or Interest, all Holders of Allowed Claims or Interests will

---

[23]     11 U.S.C. § 1123(a)(1); 11 U.S.C. § 1123(a)(2); 11 U.S.C. § 1123(a)(3)

[24]     Plan, Art. III.

[25]     11 U.S.C. § 1123(a)(4).

receive the same rights and treatment as other Holders of Allowed Claims or Interests within such holders' respective Class.

47.      ***Adequate Means for Its Implementation.***  The fifth requirement of Section 1123(a) is that a plan must provide adequate means for its implementation.[26]  The Plan, together with the documents and forms of agreement included in the Plan Supplement, provides a detailed blueprint for the transactions that underlie the Plan.

48.      In particular, Article IV of the Plan sets forth the means for implementation of the Plan.  It also describes the means for implementation of the transactions underlying the Plan, including: (a) effectuating the Restructuring Transactions, including the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, (b) executing the Liquidating Trust Agreement, the Closed-End Fund Governing Documents, and the Wind-Down Trust Agreement; (c) authorizing the Debtors to take all actions contemplated under the Plan including: (1) the establishment of the Liquidating Trust and the transfer of the Liquidating Trust Assets to the Liquidating Trust; (2) the establishment of the Closed-End Fund and the transfer of the Closed-End Fund Assets to the Closed-End Fund; (3) the establishment of a Wind-Down Trust and the transfer of the Wind-Down Trust Assets to the Wind-Down Trust; (d) preservation and vesting all applicable assets in property

---

[26]      *See* 11 U.S.C. § 1123(a)(5). Section 1123(a)(5) requires a plan to provide for "adequate means" for the plan's implementation, "such as— (A) retention by the debtor of all or any part of the property of the estate; (B) transfer of all or any part of the property of the estate to one or more entities, whether organized before or after confirmation of such plan; (C) merger or consolidation of the debtor with one or more persons; (D) sale of all or any part of property of the estate … among those having an interest in such property of the estate; (E) satisfaction or modification of any lien; (F) cancellation or modification of any indenture or similar instrument; (G) curing or waiving of any default; (H) extension of a maturity date or change in an interest rate or other term of outstanding securities; (I) amendment of the debtor's charter; or (J) issuance of securities of the debtor, or of any entity referred to in subparagraph (B) or (C) of this paragraph, for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose."

the Liquidating Trust Assets, Closed-End Fund Assets and Wind-Down Trust Assets for the beneficiaries of the respective trusts, including the preservation and vesting of the Retained Causes of Action in the Liquidating Trust; and (e) providing for and selection and appointment of the Liquidating Trustee, the Manager of the Closed-End Fund, and the Wind-Down Trustee.   In addition to these core transactions, the Plan sets forth the other critical mechanics of the Plan, such as the cancellation of existing securities, the establishment and termination of certain agreements, and the settlement of Claims and Interests.

49.     Accordingly, the Plan, together with the documents set forth in the Plan Supplement, provide the means for implementing the Plan as required by Section 1123(a)(5) of the Bankruptcy Code.

50.     ***Non-Voting Stock.***  The sixth requirement of Section 1123(a) is that a plan must contemplate a provision in the debtor's corporate documents that prohibits issuance of nonvoting equity securities or, with respect to preferred stock, adequate provisions for the election of directors upon an event of default.[27]  Because the Debtors are not issuing any new securities under the Plan, Section 1123(a)(6) does not apply to the Plan.

51.     ***Selection of Officers and Directors.***  Finally, Section 1123(a)(7) of the Bankruptcy Code requires that the Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan."[28]  There will be no officers or directors of the Debtors following the Effective Date. Instead, the Plan sets forth the manner for selecting the Liquidating Trustee, the Manager of the Closed-End Fund, and the Wind-Down Trustee. The Plan

---

[27]     11 U.S.C. § 1123(a)(6).

[28]     11 U.S.C. § 1123(a)(7).

further specifies that the Wind-Down Trustee shall act as the Debtors' sole officer, director, and manager, as applicable, with respect to the Debtors' affairs. Therefore, the Plan satisfies Section 1123(a)(7).

**B.      Section 1129(a)(2): Debtors' Compliance with the Bankruptcy Code.**

52.      Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponents comply with applicable provisions of the Bankruptcy Code.   Case law and legislative history indicate that this section principally reflects the disclosure and solicitation requirements of section 1125 of the Bankruptcy Code,[29] which prohibits the solicitation of plan votes without a court-approved disclosure statement.[30]

**i.      Section 1125: Post-Petition Disclosure Statement and Solicitation.**

53.      Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[31]  Section 1125 of the Bankruptcy Code ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision whether to approve or reject the plan.[32]

---

[29]      *See* 11 U.S.C. § 1129(a)(2); H.R. Rep. No. 95-595, at 412 (1977) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); *see In re Cypresswood Land Partners, I*, 409 B.R. 396, 424 (Bankr. S.D. Tex. 2009) ("Bankruptcy courts limit their inquiry under § 1129(a)(2) to ensuring that the plan proponent has complied with the solicitation and disclosure requirements of § 1125.").

[30]      *See* 11 U.S.C. § 1125(b).

[31]      *Id.*

[32]      *See In re Cajun Elec. Power Co-op., Inc.*, 150 F.3d 503, 518 (5th Cir. 1998) (finding that section 1125 of the Bankruptcy Code obliges a debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

54.     Section 1125 of the Bankruptcy Code is satisfied here. Before the Debtors solicited votes on the Plan, the Court conditionally approved the Disclosure Statement in accordance with Section 1125(a)(1) of the Bankruptcy Code.[33]   The Court also approved the contents of the Solicitation Packages provided to Holders of Claims and Interests entitled to vote on the Plan, the non-voting materials provided to parties not entitled to vote on the Plan, and the relevant dates for voting and objecting to the Plan.[34]   The Debtors, through their Claims and Solicitation Agent, complied with the content and delivery requirements of the Conditional Approval Order, thereby satisfying Sections 1125(a) and (b) of the Bankruptcy Code.[35]   The Debtors also satisfied Section 1125(c) of the Bankruptcy Code, which provides that the same disclosure statement must be transmitted to each holder of a claim or interest in a particular class. Here, the Debtors caused the Disclosure Statement to be transmitted to all parties entitled to vote on the Plan.[36]

55.     Based on the foregoing, the Debtors submit that they have complied in all respects with the solicitation requirements of Section 1125 of the Bankruptcy Code and the Conditional Approval Order.

ii.     **Section 1126: Acceptance of the Plan.**

56.     Section 1126 of the Bankruptcy Code sets forth the procedures for soliciting votes on a plan and determining acceptance thereof.  Pursuant to Section 1126, only holders of allowed claims or equity interests in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject

---

[33]     *See generally*, Conditional Approval Order.

[34]     *See id.*

[35]     *See generally* Solicitation and Voting Declaration.

[36]     *See id.*

such plan.[37]  As set forth above, the Debtors solicited acceptances of the Plan only from the Holders of Claims in the Voting Classes, which are the only Classes that are Impaired and entitled to vote on the Plan.[38] The Debtors did not solicit votes to accept or reject the Plan from the Holders of Claims and Interests in the Non-Voting Classes, all of which are either (a) Unimpaired and, therefore, deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code, or (b) presumed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

57.     Sections 1126(c) and (d) of the Bankruptcy Code specify that holders of an impaired class of claims or interests must vote in favor of a plan by at least two-thirds in amount and more than one-half in number of the allowed claims, or interests, of such class to accept the plan.[39]  The Solicitation and Voting Declaration reflects the results of the voting process in accordance with Section 1126 of the Bankruptcy Code.[40] The Solicitation and Voting Declaration, summarized above, reflects the results of the voting process in accordance with Section 1126 of the Bankruptcy Code.[41]

58.     As set forth in the Solicitation and Voting Declaration, all Voting Classes entitled to vote voted to accept the Plan.  Based on the foregoing, the Debtors submit that they have

---

[37]     *See* 11 U.S.C. §§ 1126(a), (f), and (g).

[38]     *See* Solicitation and Voting Declaration.

[39]     "A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of [section 1126], that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of [section 1126], that have accepted or rejected such plan." 11 U.S.C. § 1126(c). "A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan." *Id.* § 1126(d).

[40]     *See generally*, Solicitation and Voting Declaration.

[41]     *See id.*

satisfied the requirements of Section 1129(a)(2) of the Bankruptcy Code, and no party has asserted otherwise.

### C.    Section 1129(a)(3): Good Faith.

59.    Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."[42] Good faith is generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.[43] The good faith standard is "viewed in light of the totality of circumstances surrounding establishment of a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code to give debtors a reasonable opportunity to make a fresh start."[44]

60.    The Plan has been proposed by the Debtors in good faith and for the legitimate and honest purposes of maximizing recoveries to the Debtors' stakeholders in accordance with the requirements of the Bankruptcy Code. The Plan is the culmination of extensive, good-faith negotiations among the Debtors, the Committee, and the Debtors' key economic stakeholders. The Debtors have been in direct communications with each of the foregoing stakeholder groups throughout this process.  Furthermore, the Plan is "not by any means forbidden by law," and indeed, is in full compliance with the Bankruptcy Code and applicable nonbankruptcy law.

61.    Accordingly, the Debtors have proposed the Plan in good faith in compliance with Section 1129(a)(3) of the Bankruptcy Code.

---

[42]    11 U.S.C. § 1129(a)(3).

[43]    *See In re Block Shim Dev. Co.-Irving*, 939 F.2d 289, 292 (5th Cir. 1991).

[44]    *In re Sun Country Dev., Inc*., 764 F.2d 406, 408 (5th Cir. 1985); *In re Vill. at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir. 2013) ("Good faith should be evaluated 'in light of the totality of the circumstances' . . . mindful of the purposes underlying the Bankruptcy Code.") (citation omitted); *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 802 (5th Cir. 1997).

**D.     Section 1129(a)(4): Professional Fees Subject to Bankruptcy Court Approval.**

62.     Section 1129(a)(4) of the Bankruptcy Code requires that "any payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable."[45] Section 1129(a)(4) has been construed to require that all payments of estate professional fees that are made from estate assets be subject to review and approval as to their reasonableness by the court.[46] As to routine legal fees and expenses that have been approved as reasonable in the first instance, "the court will ordinarily have little reason to inquire further with respect to the amount charged."[47]

63.     In general, the Plan provides that Professional Fee Claims and corresponding payments are subject to prior Court approval and the reasonableness requirements under sections 328 or 330 of the Bankruptcy Code.  Article II.C of the Plan provides that Professionals shall file all final requests for payment of Professional Fee Claims no later than 60 days after the Effective Date, thereby providing an adequate period of time for interested parties to review such Professional Fee Claims.

**E.     Section 1129(a)(5): Information Regarding Proposed Officers and Managers.**

64.     The Bankruptcy Code requires a plan proponent to disclose the identities and affiliations of any individual proposed to serve as a director or officer of the debtor or a successor

---

[45]     11 U.S.C. § 1129(a)(4).

[46]     *See In re Cajun Elec. Power*, 150 F.3d at 517–18 (5th Cir. 1998) ("What constitutes a reasonable payment will clearly vary from case to case and, among other things, will hinge to some degree upon who makes the payments at issue, who receives those payments, and whether the payments are made from assets of the estate."); *see also In re Chapel Gate Apartments*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan can be confirmed, "there must be a provision for review by the Court of any professional compensation").

[47]     *In re Cajun Elec. Power*, 150 F.3d at 517.

to the debtor after confirmation of the plan.[48]  Section 1129(a)(5)(A)(ii) further requires that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[49]  Lastly, it requires that the plan proponent disclose the identity of insiders to be retained by the reorganized debtor and the nature of any compensation for such insider.[50]  Courts have held that these provisions are meant to ensure that the post-confirmation governance of a reorganized debtor is in "good hands."[51]

65.     In this case, the Plan satisfies section 1129(a)(5)(A)(i) of the Bankruptcy Code because the Debtors have disclosed that the Wind-Down Trustee will serve as the Debtors' sole director and officer of Linqto, Inc. as of the Effective Date.  The Debtors have also disclosed the Manager of the Closed-End Fund and the Liquidating Trustee selections pursuant to the court-approved selection procedures.

66.     The Debtors believe that appointment the proposed individuals and/or entities in accordance with the governing documents is consistent with public policy. Therefore, the requirements under section 1129(a) of the Bankruptcy Code are satisfied.

### F.     Section 1129(a)(6): Inapplicable Provision.

67.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after confirmation has

---

[48]     11 U.S.C. § 1129(a)(5)(A)(i).

[49]     11 U.S.C. § 1129(a)(5)(A)(ii).

[50]     11 U.S.C. § 1129(a)(5)(B).

[51]     *See In re Landing Assocs., Ltd.,* 157 B.R. 791, 817 (Bankr. W.D. Tex. 1993) ("In order to lodge a valid objection under § 1129(a)(5), a creditor must show that a debtor's management is unfit or that the continuance of this management post-confirmation will prejudice the creditors.")

approved any rate change provided for in the plan. Because the Plan does not propose any rate changes, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these chapter 11 cases.

### G.    Section 1129(a)(7): Treatment of Holders of Impaired Classes.

68.    The best interests of creditors test requires that, "[w]ith respect to each impaired class of claims or interests," each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a value of not less than the value such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.[52]  The best interests test applies to each non-consenting member of an impaired class, and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7 liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.[53]  "[I]f a claim is settled through a chapter 11 plan, once the court determines that the settlement should be approved, the court will assume the same settlement would be made in chapter 7 for applying section 1129(a)(7)" of the Bankruptcy Code.[54]

---

[52]    11 U.S.C. § 1129(a)(7)(A).

[53]    *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1159 n.23 (5th Cir. 1988) (stating that under section 1127(a)(7) of the Bankruptcy Code a bankruptcy court was required to determine whether impaired claims would receive no less under a reorganization than through a liquidation); *see In re Neff*, 60 B.R. 448, 452 (Bankr. N.D. Tex. 1985), *aff'd*, 785 F.2d 1033 (5th Cir. 1986) (stating that "best interests" of creditors means "creditors must receive distributions under the Chapter 11 plan with a present value at least equal to what they would have received in a Chapter 7 liquidation of the Debtor as of the effective date of the Plan") (internal citation omitted); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether 'a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.'") (internal citation omitted).

[54]    *In re Capmark Fin. Grp., Inc.*, 438 B.R. 471, 513 (Bankr. D. Del. 2010); *see In re Nortel Networks, Inc.*, 522 B.R. 491, 507 (Bankr. D. Del. 2014); *In re Enron Corp.*, 2004 Bankr. LEXIS 2549, at *117-20 (Bankr. S.D.N.Y. July 15, 2004) (observing that section 1129(a)(7) requires an "apples to apples" comparison that contains the same settlement, and "assuming common legal issues are resolved that same way [in chapter 7 and chapter 11]").

69.     As set forth in more detail in the Stein Declaration, each holder of a Claim or Interest in an impaired Class will recover at least as much under the Plan as they would if the Debtors were liquidated under chapter 7.[55]

70.     In addition, the amount of claims and expenses in a chapter 7 liquidation would only increase, further reducing creditor recoveries. The conversion to chapter 7 would require entry of a new bar date for filing claims that would be more than 90 days following conversion of the case to chapter 7.[56] Thus, the amount of Claims ultimately filed and Allowed against the Debtors could materially increase, thereby further reducing creditor recoveries versus those available under the Plan.  These additional Allowed Claims would be in addition to all of the unpaid expenses incurred by the Debtors during the chapter 11 cases, which the Estate would continue to be obligated to pay in a chapter 7 liquidation.  In addition, the chapter 7 trustee and his or her professionals would incur fees and expenses that would also diminish creditor recoveries.[57]

71.     In light of the foregoing, the Debtors submit that a chapter 7 liquidation would result in materially reduced recoveries, increased expenses, delayed distributions, and the prospect of additional claims that were not asserted in the chapter 11 cases. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test.

---

[55]     *See* Stein Declaration, at ¶¶ 30-32.

[56]     *See* Fed. R. Bankr. P. 1019(2); 3002(c).

[57]     *See, e.g.*, 11 U.S.C. § 326(a) (providing for compensation of a chapter 7 trustee up to three percent of the value of the assets); 11 U.S.C. § 503(b)(2) (providing administrative expense status for compensation and expenses of a chapter 7 trustee and such trustee's professionals).

**H.      Section 1129(a)(8): Acceptance by Each Impaired Class of Claims or Interests**

72.      Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept a plan or be unimpaired under a plan.[58]  As discussed above in Section III.B of the Background, all voting Classes entitled to vote voted overwhelmingly to accept the Plan.

73.      Class 4, Class 5, Class 7, Class 8, and Class 9 voted to accept the Plan.[59] Class 1, Class 2, and Class 3 are unimpaired and deemed to accept.  Class 10, Class 11, Class 12, and Class 13 are impaired and are deemed to reject.

74.      Notwithstanding the deemed rejection by certain Classes, as set forth below, the requirements of Section 1129(b) are satisfied as to each such Class.

75.      Accordingly, the Plan satisfies Section 1129(a)(8) of the Bankruptcy Code with respect to all of the foregoing Classes.

**I.      Section 1129(a)(9): Payment of Priority Claims.**

76.      Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the Holders of certain other priority claims receive deferred cash payments.[60]  In particular, pursuant to Section 1129(a)(9)(A) of the Bankruptcy Code, Holders of claims of a kind specified in Section 507(a)(2) of the Bankruptcy Code—administrative expenses allowed under Section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims. Section 1129(a)(9)(B) requires that each holder of a claim of a kind specified in Sections 507(a)(1) or (4)

---

[58]       11 U.S.C. § 1129(a)(8).

[59]       There were no Holders of Claims in Class 6 (Unsubordinated Governmental Claims) or Class 12 (Other Subordinated Claims) as of the time of the solicitation mailing, therefore no votes were solicited in those Classes. *Id.* at ¶ 8.

[60]       *See* 11 U.S.C. § 1129(a)(9).

through (7)—generally domestic support obligations, wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan), or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).  Finally, Section 1129(a)(9)(C) provides that the holder of a claim of a kind specified in Section 507(a)(8)—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the petition date, the present value of which equals the allowed amount of the claim.

77.     The Plan satisfies Section 1129(a)(9) of the Bankruptcy Code.  First, Article II.A of the Plan satisfies Section 1129(a)(9)(A) because it provides that each Holder of an Allowed Administrative Claim will receive Cash equal to the amount of such Allowed Administrative Claim on the Effective Date, or as soon as reasonably practicable thereafter, or at such other time defined in Article II.A of the Plan. Second, the Plan satisfies Section 1129(a)(9)(B) because no Holders of the types of Claims specified by section 1129(a)(9)(B) are Impaired under the Plan.[61] Finally, Article II.D of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it specifically provides that each Holder of Allowed Priority Tax Claims shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. Thus, the Plan satisfies each of the requirements set forth in section 1129(a)(9) of the Bankruptcy Code, and no party has asserted otherwise.

**J.      Section 1129(a)(10): Acceptance by Impaired Classes.**

78.     Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan "without

---

[61]     Plan, Art. III.B.

including any acceptance of the plan by any insider," as an alternative to the requirement under

section 1129(a)(8) of the Bankruptcy Code that each class of claims or interests must either accept

the plan or be unimpaired under the plan. Section 1129(a)(10) of the Bankruptcy Code applies on

a per plan, not a per debtor basis.[62]   As detailed herein and in the Solicitation and Voting

Declaration, all voting Classes voted to accept the Plan, exclusive of any acceptances by insiders.

Accordingly, the Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code,

and no party has asserted otherwise.

### K.    Section 1129(a)(11): Feasibility.

79.    Section 1129(a)(11) of the Bankruptcy Code requires that a plan be feasible as a

condition precedent to confirmation; in order to be confirmable, confirmation of a plan must not

be likely to be followed by the liquidation, or the need for further financial reorganization, of the

debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is

provided for in the plan.[63] The feasibility inquiry is fact intensive and requires a case-by-case

analysis, but has a relatively low threshold of proof necessary to satisfy the feasibility

requirement.[64] "Where the projections are credible, based upon the balancing of all testimony,

evidence, and documentation, even if the projections are aggressive, the court may find the plan

feasible. . . . Debtors are not required to view business and economic prospects in the worst

---

[62]    *In re Transwest Resort Props.*, 881 F.3d 724, 729 (9th Cir. 2018) ("Section 1129(a)(10) requires that one impaired class 'under the plan' approve 'the plan' . . . [and] makes no distinction concerning or reference to the creditors of different debtors under 'the plan,' nor does it distinguish between single-debtor and multi-debtor plans.") (internal citation omitted).

[63]    *See* 11 U.S.C. § 1129(a)(11).

[64]    *See id.*; *see also Mercury Capital Corp. v. Milford Conn. Assocs., L.P.*, 354 B.R. 1, 9 (D. Conn. 2006) ("[A] 'relatively low threshold of proof' will satisfy the feasibility requirement." (quoting *In re Brotby*, 303 B.R. 177, 191–92 (B.A.P. 9th Cir. 2003))).

possible light."[65]  In this circuit, courts have required a determination that the plan "has a reasonable likelihood of success" and "a reasonable assurance of commercial viability.[66]

80.     Many courts hold that Section 1129(a)(11) on its face does not apply to liquidating plans.[67] Nevertheless, even those courts that do apply Section 1129(a)(11) to liquidating plans clarify that "the relatively low threshold of proof to satisfy § 1129(a)(11) is even more easily met where the plan itself calls for liquidation rather than reorganization" and requires only that "the things that must be done under the liquidating plan after confirmation can be done as a practical matter given the facts."[68]

81.     Given that Section 1129(a)(11) requires that the Plan be feasible (i.e., that confirmation of the Plan is not likely to be followed by the liquidation of the Debtors or any successor thereto unless such liquidation is proposed in the Plan), Section 1129(a)(11) is

---

[65]     *In re T-H New Orleans LP*, 116 F.3d 790, 802 (5th Cir. 1997) (quoting *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 508 n.20 (Bankr. S.D. Tex. 1989)).

[66]     *See In re Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1165–66 (5th Cir. 1993) ("As numerous courts have explained 'the court need not require a guarantee of success' . . . [and] '[o]nly a reasonable assurance of commercial viability is required'" to meet the feasibility test (quotation omitted)); *In re T-H New Orleans Ltd. P'ship*, 116 F.3d at 801–02 (explaining that "[a]ll the bankruptcy court must find is that the plan offer 'a reasonable probability of success,'" and citing *In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346 (5th Cir. 1989) in explaining that even a liquidating chapter 11 plan does not violate Bankruptcy Code section 1129(a)(11)); *In re Cypresswood Land Partners, I*, 409 B.R. at 432–33; *see also In re Eddington Thread Mfg. Co.*, 181 B.R. 826, 832–33 (Bankr. E.D. Pa. 1995) (finding plan is feasible "so long as there is a reasonable prospect for success and a reasonable assurance that the proponents can comply with the terms of the plan.").

[67]     *See, e.g., In re Wyly, 2019* WL 2590035, at *9 (Bankr. N.D. Tex. June 22, 2019); *In re Hydroscience Techs., Inc.*, 2018 WL 672507, at *9 (Bankr. N.D. Tex. Jan. 31, 2018); *In re Eastgate Tower Hotel Associates, L.P.*, 2012 WL 5128145, at *5 (Bankr. S.D.N.Y. Aug. 20, 2012*); In re Station Casinos, Inc.,* 2010 WL 11492265, at *23 (Bankr. D. Nev. Apr. 9, 2010); *see also In re 47th and Belleview Partners*, 95 B.R. 117, 120 (Bankr. W.D. Mo. 1988) (under the literal wording of Section 1129(a)(11), it is unnecessary to show feasibility when liquidation is proposed in the plan); *In re Pero Bros. Farms, Inc.,* 90 B.R. 562, 563 (Bankr. S.D. Fla. 1988) (the feasibility test has no application to a liquidation plan).

[68]     *See In re Farwest Pump Co.*, 621 B.R. 871, 894–95 (Bankr. D. Ariz. 2019) (quotation omitted); *see also In re Two Streets, Inc.*, 597 B.R. 309, 317 (Bankr. S.D. Miss. 2019).

inapplicable to the Plan as it provides for the orderly Wind- Down of the Debtors' Estates upon the Effective Date.

**L.      Section 1129(a)(12): Payment of U.S. Trustee Fees.**

82.      Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees payable under 28 U.S.C. § 1930.[69] Article II.F of the Plan includes an express provision requiring payment of all fees under 28 U.S.C. § 1930.   The Plan, therefore, complies with section 1129(a)(12) of the Bankruptcy Code.

**M.      Sections 1129(a)(13)–(16): Inapplicable Provisions.**

83.      A number of the Bankruptcy Code's confirmation requirements are inapplicable to the Plan.  Section 1129(a)(13) is inapplicable because the Debtors do not have any obligations to pay retiree benefits.  Section 1129(a)(14) is inapplicable because the Debtors are not subject to any domestic support obligations.  Section 1129(a)(15) is inapplicable because no Debtor is an "individual" as defined in the Bankruptcy Code.   Section 1129(a)(16) is inapplicable because the Plan does not provide for any property transfers by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

**N.      Section 1129(b)—(e): The Plan Complies with the Other Provisions of Section 1129.**

84.      The Plan satisfies the remaining provisions of Section 1129 of the Bankruptcy Code.

85.      Section 1129(b) provides a mechanism for confirmation of a chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims or interests, which

---

[69]      *See* 11 U.S.C. § 1129(a)(12).

is known informally as "cramdown." Section 1129(b) is not applicable because all requirements of Section 1129(a) have been met, including Section 1129(a)(8).

86.     Section 1129(c), which prohibits confirmation of multiple plans, is not implicated because there is only one proposed plan of reorganization.[70]

87.     The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933, and no governmental unit or any other party has requested that the Court decline to confirm the Plan on such grounds.  The Plan, therefore, satisfies the requirements of Section 1129(d).

88.     Lastly, the provisions of Section 1129(e) apply only to a "small business case." These Chapter 11 Cases are not "small business cases," and accordingly, Section 1129(e) has no application to the Plan.

## IV.     The Discretionary Contents of the Plan Comply with Section 1123(b) of the Bankruptcy Code.

89.     Section 1123(b) of the Bankruptcy Code identifies various additional provisions that may be incorporated into a chapter 11 plan, including "any other appropriate provision not inconsistent with the applicable provisions of this title."[71]   Among other discretionary provisions, the Plan contains a settlement of claims and causes of action, releases by the Debtors and third-party holders of Claims and Interests, as well as exculpation and injunction provisions.[72]   The Debtors have determined, as fiduciaries of their Estates and in the exercise of their reasonable business judgment, that each of the discretionary provisions of the Plan is appropriate given the circumstances of these chapter 11 cases.

---

[70]     11 U.S.C. § 1129(c).

[71]     11 U.S.C. §§ 1123(b)(1), (2), (3), (4), (5), (6).

[72]     Plan, Art. IX.

A. **The Plan Appropriately Incorporates a Settlement of Claims and Causes of Action.**

90. The Bankruptcy Code states that a plan may "provide for . . . the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[73] A court may only approve settlements under a plan when they are "fair and equitable."[74]

91. Here, the Plan embodies a settlement that was reached among the Debtors, the Committee, and the Deaton Parties (collectively, the "**Settlement Parties**") regarding funding the administration of the Chapter 11 Cases and the treatment of the claims or interests of Customers (the "**Settlement**"). The Settlement resolved objections to the DIP Financing Motion and the Ripple Motion and set forth terms for the treatment of the claims or interests of Customers pursuant to a plan of reorganization, subject to Sections 1125, 1126, and 1129 of the Bankruptcy Code.

92. The Plan also incorporates a settlement of Customer Recission Claims pursuant to, which provides that each Customer with a Customer Interest in a Rescission Security shall automatically hold a Customer Rescission Claim in the amount set forth on the Rescission Security Table for each Rescission Security held by such Customer, whether or not such Customer filed a proof of claim reflecting a Customer Rescission Claim.

93. The settlements embodied in the Plan are in the best interests of creditors and all parties in interest.

---

[73] 11 U.S.C. § 1123(b)(3)(A).

[74] *See In re Zale Corp.*, 62 F.3d 746, 754 n.22 (5th Cir. 1995) (citing *In re AWECO, Inc.*, 725 F.2d 293, 297 (5th Cir. 1984)).

B.   **The Plan's Release, Exculpation, and Injunction Provisions Are Appropriate and Comply with the Bankruptcy Code.**

94.     The Plan includes certain Debtor and consensual third-party releases, an exculpation provision, and an injunction provision.[75]   These provisions result from extensive good faith and arm's-length negotiations.   Further, these provisions are bargained-for provisions that were necessary to generate consensus with certain stakeholders regarding the Plan. The provisions are consistent with applicable case law and precedent in this district, comply with the Bankruptcy Code in all respects, and should be approved in all respects as integral components of the Plan.

i.   **The Debtor Releases are Appropriate and Comply with the Bankruptcy Code.**

95.     The Debtor Releases in Article IX.C of the Plan provide that the Debtors, the Wind-Down Debtors, their Estates, and the Releasing Parties[76] shall release any and all Causes of Action (including a list of specifically enumerated claims and excluding certain other enumerated claims) that such parties could assert against the Released Parties.[77]   The Debtors have proposed the Debtor Releases based on their sound business judgment.

---

[75]     The provisions described herein are meant as a summary of the operative Plan provisions only.  To the extent there is any conflict between the summaries that follow and the terms of the Plan, the Plan shall control.

[76]     Pursuant to Article I.A. 148 of the Plan, "Releasing Parties" means, collectively, and in each case solely in its capacity as: (a) the Debtors; (b) the Wind-Down Debtors; (c) the DIP Lender; (d) the Committee and each member of the Committee; (e) all Holders of Claims; (f) all Holders of Interests; (g) each current and former Affiliate of each Entity in clause (a) through (f); and (h) each Related Party of each Entity in clause (a) through this clause (g) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan; *provided, however*, that any Person or Entity that, to the extent applicable, does not opt in to the releases in Article IX hereof shall not be deemed a Releasing Party.

[77]     Pursuant to Article I.A. 147 of the Plan, "Released Parties" means, collectively, and in each case solely in its capacity as such and subject to the limitations set forth in Article IX hereof: (a) the Debtors; (b) the Wind-Down Debtors; (c) the DIP Lender; (d) the Committee and each member of the Committee; (e) the following members of the Debtors' current management and/or current members of the Board of Directors of Linqto, Inc.: Jesus Ancheta, Sean Bowden, Michael Huskins, Alison Kutler, Jeremy Rosenthal, Cathy Siciliano, Francis Daniel Siciliano II, and Jeffrey S. Stein; (f) any Professional retained by the Debtors, the Special Subcommittee, or the Committee by order of the Bankruptcy Court in the Chapter 11 Cases; and (g) each Related Party of each Entity in clauses (c) through (f). For the avoidance of doubt, no current or former officer or director of the Debtors is included in Released Parties,

96.     Pursuant to Section 1123(b)(3)(A), the Debtors may release estate causes of action as consideration for concessions made by their various stakeholders pursuant to the Plan.[78]  In considering the appropriateness of such releases, courts in the Fifth Circuit generally consider whether the release is (a) "fair and equitable" and (b) "in the best interests of the estate."[79]  The "fair and equitable" prong is generally interpreted, consistent with that term's usage in Section 1129(b) of the Bankruptcy Code, to require compliance with the Bankruptcy Code's absolute priority rule.[80]  Courts generally determine whether a debtor release is "in the best interest of the estate" by reference to the following factors:

    a.    the probability of success of litigation;

    b.    the complexity and likely duration of the litigation, any attendant expense, inconvenience, or delay, and possible problems collecting a judgment;

    c.    the interest of creditors with proper deference to their reasonable views; and

    d.    the extent to which the settlement is truly the product of arms'-length negotiations.[81]

Ultimately, courts afford debtors some discretion in determining for themselves the appropriateness of granting plan releases of estate causes of action.[82]

---

other than those set forth in (e).

[78]     *See, e.g.*, *In re Bigler LP*, 442 B.R. 537, 547 (Bankr. S.D. Tex. 2010) (plan release provision "constitutes an acceptable settlement under § 1123(b)(3) because the Debtors and the Estate are releasing claims that are property of the Estate in consideration for funding of the Plan"); *In re Heritage Org., LLC*, 375 B.R. 230, 259 (Bankr. N.D. Tex. 2007); *In re Mirant Corp.*, 348 B.R. 725, 737–39 (Bankr. N.D. Tex. 2006); *In re General Homes Corp.*, 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991).

[79]     *Mirant*, 348 B.R. at 738; *see also Heritage*, 375 B.R. at 259.

[80]     *Mirant*, 348 B.R. at 738.

[81]     *Id.* at 739-40 (citing *In re Cajun Elec. Power Co-op.*, 119 F.3d 349, 355-56 (5th Cir. 1997)).

[82]     *See General Homes*, 134 B.R. at 861 ("[t]he court concludes that such a release is within the discretion of the Debtor").

97.     Based on the Debtors' analysis, the Debtor Releases benefit the Debtors' Estates, and the probability of success in litigation with respect to claims the Debtors may have against each of the Released Parties, if any, is outweighed by the value of the contributions of the Released Parties to the Debtors' overall restructuring. The Debtor Releases are the result of a hard fought and arm's-length negotiation process conducted in good faith.

98.     Moreover, the DIP Lender was integral to the development of the Plan and expected a release in exchange for its contributions to the Estates. Each of the Released Parties made significant concessions and contributions to these Chapter 11 Cases. The Debtors' Released Parties supported the Plan and these Chapter 11 Cases, actively participated in meetings, hearings, and negotiations during these Chapter 11 Cases, and have provided other valuable consideration to the Debtors. Thus, the Debtor Releases are a component of the consensual Plan process, and no constructive purpose would be served by preserving or seeking to prosecute any of the Claims, Causes of Action, or liabilities against the Released Parties that are released under the Plan.

99.     The Debtor Releases are also narrowly tailored and carve out claims related to acts or omissions that constitute gross negligence, actual fraud, or willful misconduct.  There is ample justification for providing the Debtor Releases. Accordingly, the Debtor Releases are fair, equitable, and in the best interest of the Debtors.

> ii.     **The Third-Party Releases are Consensual, Appropriate, and Complies with the Bankruptcy Code.**

100.    The Third-Party Release sin Article IX.D of the Plan provide that each Releasing Parties (other than the Debtors, the Wind-Down Debtors, their Estates, any Person or Entity acting on their behalf, and Holders of Claims and Interest that do not opt in to become a Releasing Party) shall release any and all Causes of Action (including a list of specifically enumerated claims and excluding certain other enumerated claims) such parties could assert against the Released Parties.

101.    The Third-Party Releases are an integral part of the Plan and a condition of the settlements embodied therein.    The provisions of the Plan were heavily negotiated by sophisticated parties, each of whom are represented by competent counsel.    The consensual Third-Party Releases (together with the Debtor Releases) are key components of the Debtors' restructuring and a key inducement to bring stakeholder groups to the bargaining table.    The restructuring transactions contemplated by the Plan would not be possible absent the support of the Released Parties. Thus, the Third-Party Release operates to maximize the recovery to creditors by minimizing certain post-confirmation litigation or other disputes.

102.    Accordingly, the Third-Party Releases are fair, equitable, and in the best interest of the Debtors.

### iii.    The Plan's Exculpation Provision Is Appropriate

103.    Article IX.F of the Plan provides that each Exculpated Party[83] shall be exculpated from any liability arising in connection with the Chapter 11 Cases and related postpetition distributions (the "**Exculpation Provision**"). The Exculpation carves out acts or omissions that are determined in a Final Order to have constituted intentional breach of fiduciary duty, actual fraud, gross negligence, or willful misconduct. Unlike the Third-Party Release, the Exculpation does not affect the liability of third parties *per se*, but rather sets a standard of care of gross negligence, fraud, or willful misconduct in hypothetical future litigation against an Exculpated Party for acts arising out of the Debtors' restructuring.[84] A bankruptcy court has the power to

---

[83]     Pursuant to Article I.A.77 of the Plan, "Exculpated Party" means, collectively, and in each case in its capacity as such, and subject to the limitations set forth in Article IX.F of the Plan: (a) the Debtors; (b) the Committee and each member of the Committee, solely in their respective capacities as such; (c) any other statutory committee appointed in the Chapter 11 Cases and each of their respective members, solely in their respective capacities as such; (d) the following current directors of the Board of Linqto, Inc: Adam Henderson, Alison Kutler, Norman Reed, and Jeremy Rosenthal; and (e) the Debtors' Chief Restructuring Officer, Jeffrey S. Stein, or any successor to such position.

[84]     *See, e.g., In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (holding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but

approve an exculpation provision in a chapter 11 plan as a chapter 11 plan cannot be confirmed unless the bankruptcy court finds that the plan has been proposed in good faith.[85] Thus, an exculpation provision represents a legal determination that flows from several different findings a bankruptcy court must reach in confirming a plan, as well as the statutory exculpation in Section 1125(e) of the Bankruptcy Code.[86] Once the court makes a good faith finding, it is appropriate to set the standard of care of the parties involved in the formulation of that chapter 11 plan.[87] Here, the Exculpation Provision, therefore, properly prevents future collateral attacks against estate fiduciaries and others that participate actively in the Debtors' restructuring process.

104.    Further, the Plan does not include ineligible parties within the definition of "Exculpated Party" and otherwise complies with the precedent set by the Fifth Circuit in *In re Highland Capital Mgmt., L.P.*, 48 F.4th 419 (5th Cir. 2022). Specifically, in *Highland*, the court expressly adopted and applied Fifth Circuit precedent providing qualified immunity to "bankruptcy trustees," which extends to a debtor in possession under Section 1107 of the Bankruptcy Code.[88] Case law in this circuit and others is clear that where a bankruptcy trustee is not appointed, a debtor in possession's Court-appointed directors and officers are considered fiduciaries both to the debtor in possession and to the creditors, just as a trustee would be if one were appointed.[89] The Plan therefore properly includes the Debtors, the Chief Restructuring

---

rather states the standard of liability under the Code").

[85]    *See* 11 U.S.C. § 1129(a)(3).

[86]    *See id.* § 157(b)(2)(L).

[87]    *See PWS*, 228 F.3d at 246–47 (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity" . . . "for actions within the scope of their duties").

[88]    *In re Highland Capital Mgmt., L.P.*, 48 F.4th 419, 437–38 (5th Cir. 2022).

[89]    *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) ("[I]f a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession."); *see also In re Foster*, No. No. 22-

Officer, and the Committee and its members within the scope of the Exculpation Provision for postpetition actions taken prior to the Effective Date.

105.    The Exculpated Parties have participated in good faith in formulating and negotiating the Plan, and they should be entitled to protection from exposure to any lawsuits related to the Debtors' restructuring. The Debtors engaged in extensive, hard-fought negotiations with the key constituencies in these Chapter 11 Cases. To that end, all of the Exculpated Parties played a key role in the developing the Plan.  Ultimately, the Exculpation Provision set forth in Article IX.F of the Plan is essential to the Plan, appropriate under applicable law, including *Highland*, and constitute a proper exercise of the Debtors' business judgment. The Exculpation Provision was proposed in good faith; was formulated following extensive, good faith, arm's-length negotiations with key constituents; and is appropriately limited in scope to achieve the overall purpose of the Plan.

### iv.    The Injunction Sought Is Necessary to Enforce the Releases and Exculpations Contained in the Plan.

106.    Article IX.G of the Plan sets forth the Plan's injunction provisions (the "**Injunction**"). The Injunction is the necessary enforcement mechanism for the release and exculpation provisions of the Plan. As a key component of the Plan, the Injunction is necessary to preserve and enforce the Debtor Releases, the Third-Party Releases, and the Exculpation Provision, and is narrowly tailored to achieve that purpose.

107.    The Injunction is fair, equitable, and in the best interest of the Debtors.

---

10310, 2023 WL 20872, at *5 n.25 (5th Cir. Jan. 3, 2023) ("[A]s a matter of law, counsel for trustee, court appointed officers who represent the estate, are the functional equivalent of a trustee, where . . . they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets . . . ." (quotation omitted)); *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981) ("[A]n arm of the Court [who] sought and obtained court approval of his actions . . . is entitled to derived immunity."); *In re Voyager Digital Holdings, Inc.*, No. 23-02171, 2023 WL 2731737, at *9 (S.D.N.Y. Apr. 1, 2023) (noting that in addition to trustees and debtors-in-possession, judicial immunity extends to "court appointed officers who represent the estate") (quotation omitted).

### C.      Assumption and Rejection of Executory Contracts and Unexpired Leases (Section 1123(b)(2))

108.    Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable non-bankruptcy law."[90]

109.    Article VI of the Plan provides for the rejection of the Debtors' Executory Contracts and Unexpired Leases as of the Effective Date that (i) have not previously been rejected by order of the Bankruptcy Court or is not the subject of a motion to reject on the Confirmation Date; (ii) are not identified in the Plan Supplement as a contract or lease to be assumed pursuant to the Plan; (iii) are not expressly assumed pursuant to this Plan; (iv) have not expired or terminated by its own terms on or prior to the Effective Date; or (v) have not been assumed or is not the subject of a motion to assume on the Confirmation Date.

110.    The Debtors properly exercised sound business judgment in determining which Executory Contracts and Unexpired Leases to assume and to reject.

111.    To the extent that an Executory Contract or Unexpired Lease is assumed, Article V of the Plan provides for the satisfaction of all monetary defaults under each Executory Contract and Unexpired Lease assumed pursuant to the Plan in accordance with section 365 of the Bankruptcy Code by payment of the default amount on the Effective Date, subject to the limitations described therein, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.[91]

---

[90]     *See* 11 U.S.C. § 1123(d).

[91]     *See* Plan, Arv. V.C.

112.    Accordingly, the Debtors submit that the Plan complies with section 1123(d) of the Bankruptcy Code.

## V.    The Modifications to the Plan Do Not Require Resolicitation and Should Be Approved.

113.    The Bankruptcy Code provides that a plan proponent may modify a plan "at any time" before confirmation.[92]  It further provides that all stakeholders that previously have accepted a plan should also be deemed to have accepted such plan as modified.[93] The Bankruptcy Rules provide that such modifications do not require resolicitation where the court determines, after notice and a hearing, "that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification."[94]

114.    Rather, only those modifications that are "material" require resolicitation.[95] A plan modification is not material unless it "so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance."[96] Thus, an improvement to the position of the creditors affected by the modification will not require

---

[92]    11 U.S.C. § 1127(a).

[93]    *Id.* § 1127(d).

[94]    Fed. R. Bankr. P. 3019.

[95]    *See In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988) (approving plan modification with *de minimis* effect on creditor recoveries pursuant to Bankruptcy Rule 3019); *In re R.E. Loans, LLC*, No. 11-35865-BJH, 2012 WL 2411877 at *10 (Bankr. N.D. Tex. June 26, 2012) (finding that none of the modifications adversely changed the treatment of the claim of any creditor or the interest of any equity security holder so as to require resolicitation pursuant to Bankruptcy Rule 3019).

[96]    *Am. Solar King*, 90 B.R. at 824.

resolicitation of a modified plan.[97] Nor will a modification that is determined to be immaterial require resolicitation.[98]

115.     Accordingly, the Debtors submit that no additional solicitation or disclosure is required and the modifications should be deemed accepted by all stakeholders that previously accepted the Plan.

## **CONCLUSION**

116.     For all of the reasons set forth herein, the Debtors respectfully request that the Court confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Confirmation Order, overrule any remaining objections, and grant such other and further relief as may be appropriate under the circumstances.

---

[97]     *See In re Mangia Pizza Invs., LP*, 480 B.R. 669, 689 (Bankr. W.D. Tex. 2012) ("[A]nyone who voted to accept the previous plan will be deemed to have accepted the modified plan if the modified plan 'does not adversely change the treatment of [that creditor's] claim.'") (citing *In re Dow Corning Corp.*, 237 B.R. 374, 378 (Bankr. E.D. Mich. 1999)).

[98]     *See Am. Solar King*, 90 B.R. at 826 ("if a modification does not 'materially' impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.").

Dated: January 30, 2026
Houston, Texas

Respectfully submitted,

**SCHWARTZ PLLC**

/s/ *Renee Wells*
Gabrielle A. Hamm (TX Bar No. 24041047)
Veronica A. Polnick (TX Bar No. 24079148)
Athanasios E. Agelakopoulos (admitted *pro hac vice*)
Renee D. Wells (TX Bar No. 24013731)
440 Louisiana Street, Suite 1055
Houston, Texas 77002
Telephone:     (713) 900-3737
Facsimile:     (702) 442-9887
Email:         ghamm@nvfirm.com
               vpolnick@nvfirm.com
               aagelakopoulos@nvfirm.com
               rwells@nvfirm.com

Samuel A. Schwartz (admitted *pro hac vice*)
601 East Bridger Avenue
Las Vegas, Nevada 89101
Telephone:     (702) 385-5544
Facsimile:     (702) 442-9887
Email:         saschwartz@nvfirm.com

*Counsel for the Debtors and Debtors in Possession*

## <u>Certificate of Service</u>

I certify that on January 30, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Renee Wells*
Renee Wells