### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 25-90186** |
| **LINQTO TEXAS, LLC,** | § | |
| Debtors. | § | **Jointly Administered** |
| | § | **CHAPTER 11** |

### MEMORANDUM OPINION ON EMERGENCY PRO SE OBJECTION TO RECOVERY ALLOCATION FILED BY JOHANNES GERARDUS REINERUS (JAN) KLEIPOOL

This matter comes before the Court on Johannes Gerardus Reinerus (Jan) Kleipool's Emergency Objection to Recovery Allocation. For the reasons explained below, the Court overrules Mr. Kleipool's objection and denies the requested relief.

### BACKGROUND

On July 7, 2025, Debtors[1] filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code").[2]

On December 11, 2025, the Court entered an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballot and Notices in Connection Therewith, (IV) Approving Management Selection Procedures, (V) Approving the Combined Hearing Timeline, and (VI) Granting Related Relief.[3]  As part of the approval, the Court approved the Class 4 Customer Claims Ballot.[4]  In accordance with the Debtors' plan, "Item 3" of the ballot contained an option for holders of an allowed customer claim ("Customers") to select

---

[1] The Debtors in these Chapter 11 Cases are: Linqto, Inc.; Linqto Liquidshares, LLC; Linqto Liquidshares Manager, LLC; and Linqto Texas, LLC.

[2] ECF No. 1.

[3] ECF No. 1142.

[4] ECF No. 1142, at Exhibit 5.

1 / 11

between having their interests contributed either 100% into a Liquidating Trust, 100% into a Closed-End Fund, or a combination of both the Liquidating Trust and Closed-End Fund.[5]

On December 12, 2025, the Debtors' claims agent sent a Notice of Combined Hearing to Consider Final Approval of the Disclosure Statement and Joint Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Deadlines ("Confirmation Hearing Notice") to Customers via email and first-class mail.[6]  On December 16, 2025 through December 17, 2025, the claims agent emailed Class 4, 8, and 9 ballots ("Ballot") to creditors via email.[7]

On February 2, 2026, the Court commenced a hearing to consider final approval of the disclosure statement and confirmation of the Debtors' First Amended Joint Chapter 11 Plan (the "Plan"), and on February 13, 2026, the Court entered an Order confirming the Plan.[8] Article III of the Debtors' confirmed Plan contains the classification and treatment of claims and equity interests.[9]  Class 4 consists of Customer claims, such as that held by Mr. Kleipool.[10]   The confirmed Plan specifies:

> Each Holder of an Allowed Customer Claim shall have the option to select between two types of treatment or a combination of the two types of treatment. Holders of Allowed Customer Claims may select between having their interest in the Platform Securities contributed to a Liquidating Trust or to a Closed-End Fund or a combination of both. A description of these two options can be found in Article IV. A and Article IV.B. of this Plan. *Should a Holder of Claim in this class not cast a Ballot, the default treatment will be that such Holder's Customer Interests will be transferred to the Closed-End Fund*, if the

---

[5] ECF No. 1142, at Exhibit 5.
[6] ECF No. 1478.
[7] ECF No. 1291.
[8] ECF No. 1533; ECF No. 1598.
[9] ECF No. 1522 at 29–34.
[10] ECF No. 1522 at 30–31.

2 / 11

Minimum Closed-End Fund Conditions are met, and, to the Liquidating Trust if not, all as further described in the Plan and the Plan Supplement.[11]

According to the Plan, all allowed Customer claims would first receive a Liquidating Trust interest.[12] Then, those Customers who either elected to participate in the Closed-End Fund—or are participating in the Closed-End Fund by default—would have their Liquidating Trust interest automatically exchanged for Closed-End Fund shares on the Closed-End Fund Exchange Date.[13]

On March 13, 2026, Mr. Kleipool filed an Emergency Pro Se Objection to Recovery Allocation.[14] In it, he alleges his failure to submit a timely election was due to excusable neglect and requests that his interests are reallocated to the Liquidating Trust. Debtors filed their response on March 19, 2026.[15]

The Court held a hearing on the matter on March 19, 2026.[16] There, the Debtors and Special Committee alleged that allowing Mr. Kleipool to change his election would have securities laws implications.[17] The Court requested additional briefing from the

---

[11] ECF No. 1522 at 30 (emphasis added).

[12] ECF No. 1522 at 30.

[13] *See* ECF No. 1522 at 30–31. The Plan outlines this process:
> Each Holder of an Allowed Customer Claim shall receive a Liquidating Trust Interest, representing such Holder's entitlement based on their Customer Interest as of the Petition Date. If the Minimum Closed-End Fund Conditions are met, the Liquidating Trust Interests that correspond with the Liquidshares CEF Series shall be exchanged for Closed-End Fund Shares on the Closed-End Fund Exchange Date. . . On the Closed-End Fund Exchange Date, the Closed-End Fund Assets will be transferred to the Closed-End Fund and the Liquidating Trust Interests of Electing Customers will be automatically exchanged for Closed-End Fund Shares.

[14] ECF No. 1746.

[15] ECF No. 1757.

[16] ECF No. 1760.

[17] ECF No. 1772 at 6.

3 / 11

Debtors on why allowing Customers, like Mr. Kleipool, to change their election could create securities law issues.[18]  Debtors filed supplemental briefs on March 28, 2026 and March 31, 2026.[19]  The Court held a final hearing on the matter on April 1, 2026.[20]

## JURISDICTION & VENUE

28 U.S.C. § 1334(a) provides district courts with jurisdiction over this proceeding.  28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."  This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012).  This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. §§ 157(b)(2)(A) and (L).  The Court has constitutional authority to enter final orders and judgments.  *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

Mr. Kleipool alleges that, due to third-party cybersecurity interference, his Ballot was diverted to a "junk" folder and remained inaccessible.[21]  He claims notice was inadequate and argues that his failure to submit a timely election was out of his control and "excusable neglect" under the *Pioneer* standard.  He additionally requests an "investigation" into the "default" allocation mechanism contemplated by the Debtors' confirmed Plan, which he argues places creditors into the Closed-End Fund without their consent.  As such, Mr. Kleipool "demands" his assets are allocated to the Liquidating Trust instead of the Closed-End Fund.

---

[18] ECF No. 1772 at 7.
[19] ECF No. 1796; ECF No. 1824.
[20] ECF No. 1826.
[21] ECF No. 1746.

### I.     Notice

Notice is sufficient if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Mailing a notice to a creditor's last known address by First Class U.S. mail provides adequate notice. *See In re Eagle Bus Mfg.*, 62 F.3d 730, 736 (5th Cir. 1995). Bankruptcy Rule 9006(e) provides: "Service by mail of process, any other document, or notice is complete upon mailing." FED. R. BANKR. P. 9006(e). The Fifth Circuit has interpreted this rule to imply that a "correctly mailed notice creates a presumption that proper notice was given." *See In re Eagle Bus Mfg.*, 62 F.3d at 735. Thus, the issue becomes whether notice was properly mailed and not whether the creditor actually received it. *Id.* "A denial of receipt is insufficient to rebut a presumption that proper notice was given, but it does raise a factual issue." *Id.*; *In re Schepps Food Stores*, 152 B.R. 136, 140 (Bankr. S.D. Tex. 1993) ("This rule is based on practicality, rather than on equity. If denial of receipt alone could rebut the presumption that notice was given, then 'the scheme of deadlines and bar dates under the Bankruptcy Code would come unraveled.'").

To determine whether a mailing was accomplished, courts may consider "whether the notice was correctly addressed, whether proper postage was affixed, whether it was properly mailed, and whether a proper certificate of service was filed." *See In re Eagle Bus Mfg.*, 62 F.3d at 735–36. Rebutting the presumption that proper notice was given requires evidence that the notice was never mailed. *Id.* at 735. For example, evidence that no other creditor received notice rebuts the presumption that proper notice was given. *Id.*; *In re Schepps Food Stores*, 152 B.R. at 140 ("Thus, while one creditor's denial of receipt taken alone does not rebut the presumption, evidence that the notice was never sent or that no one in the case received notice does rebut the presumption.").

Here, the Certificate of Service, filed on January 7, 2026, certifies that members of Class 4, Class 8, and Class 9 were served Solicitation Materials[22] via email and first-class mail.[23]  Further, Debtors contend the Certificate of Service, filed on January 29, 2026, indicates that Mr. Kleipool was served the Confirmation Hearing Notice via first-class mail to the same mailing address reflected in his motion.[24]  Therefore, the Certificates of Service evidence a mailing was accomplished and allows the Court to presume proper notice was given.

Mr. Kleipool did not provide any evidence to rebut the presumption that proper notice was given.  In fact, Mr. Kleipool does not allege that Debtors never sent him notice.  Instead, he alleges that notice was inadequate because the email notice was sent to his "junk" folder due to "third-party cybersecurity interference," and that criminal postal theft further compounded the issue.[25]  However, denial of receipt is not enough to rebut the presumption that proper notice was given.  *See In re Eagle Bus Mfg.*, 62 F.3d at 735.  As explained by the Fifth Circuit, the issue is not whether the creditor actually received notice but whether the notice was properly sent.  *Id.*  Thus, the Court finds the Debtors provided Mr. Kleipool with adequate notice of the Plan, final confirmation hearing, Customer claim elections, and related deadlines. Having received adequate notice, the Debtors' confirmed Plan binds Mr. Kleipool to all of the plan's terms—even if he did not vote to accept or reject the plan.  *See In re Gibson*, 556 B.R. 743, 746 (Bankr. D.S.C. 2016) (citing 11 U.S.C. § 1325(a)(5)(A) and collecting cases) ("It is well established that a secured  creditor properly served with notice of a plan, who fails to object to its treatment within the objection period, is deemed to have accepted the plan.").[26]

---

[22] Solicitation Materials include the Debtors' Cover Letter, Committee Cover Letter, Solicitation and Voting Procedures, Management Selection Procedures, and the Combined Hearing Notice.

[23] *See* ECF No. 1291.

[24] *See* ECF No. 1757 at 3–4; ECF No. 1478.

[25] ECF No. 1746; ECF No. 1810 ¶ 2.

[26] In his motion, Mr. Kleipool objects to the treatment of Customers whose interests, similar to his own, are allocated by default into the Closed-End Fund.  *See*

## II.    Request to Change Customer Election

Mr. Kleipool requests the Court allow him to change his election to the Liquidating Trust, instead of the Closed End Fund where his interests were placed by default.[27]  Mr. Kleipool argues that, because of third-party criminal interference with both his email and postal mail, his failure to timely file an election constitutes "excusable neglect" under the *Pioneer* standard.[28]

Bankruptcy Rule 9006(b)(1)(B) provides that a court may at any time and for cause extend time to act if "on motion made after specified period expires, the failure to act within that period resulted from excusable neglect."   FED. R. BANKR. P. 9006(b)(1)(B).   Under this standard, courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). Determining whether a party's "neglect" is "excusable," is an equitable determination based on all relevant circumstances surrounding the party's omission. *Id.* at 395.

Courts often apply the *Pioneer* factors to determine whether a party's failure to act resulted from excusable neglect. *See id.*   The *Pioneer* factors include: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*   However, the Fifth Circuit has determined that courts need not "rigorously apply

---

ECF No. 1746. At the March 19th hearing, Mr. Kleipool clarified that he was not seeking to object to the plan but only seeking relief for his own tardy election. *See* ECF No. 1772 at 3–5. To the extent he is seeking to make any objection to the plan's provisions, his objections are now moot because he received adequate notice and failed to object. *See In re Gibson*, 556 B.R. at 746.  The provisions of a confirmed plan bind all creditors, whether or not they voted for or against the plan. *See Geno Enters., Inc. v. Newstar Energy USA, Inc. (In re Newstar Energy of Tex., LLC)*, 280 B.R. 623, 626 (Bankr. W.D. Mich. 2002).

[27] ECF No. 1746.

[28] *See* ECF No. 1746; ECF No. 1810 ¶ 2.

each of these factors in every case." *See Silvercreek Mgmt. v. Banc of Am. Secs. LLC*, 534 F.3d 469, 472 (5th Cir. 2008).

Debtors argue that permitting Customers, like Mr. Kleipool, to change their elections at this stage "would implicate core features of the Plan's structure and the Debtors' reliance on the exemption from registration under the Securities Act of 1933."[29]  Under the Debtors' confirmed Plan, Debtors rely on 11 U.S.C. § 1145(a)(1) to exempt the issuance of interests under the plan from Securities Act registration requirements.[30]

Section 5 of the Securities Act prohibits the unregistered offer or sale of securities in interstate commerce.  *See* 15 U.S.C. § 77e(a), (c). Unless an exemption applies, it creates liability for any securities sale not properly registered.  *See* 15 U.S.C. § 77e(a), (c).  Section 1145 of the Bankruptcy Code is one such exemption.  *See* 11 U.S.C. § 1145. Specifically, § 1145(a)(1)(A) provides:

> [S]ection 5 of the Securities Act of 1933 [15 USCS § 77e] and any State or local law requiring registration for offer or sale of a security . . . do not apply to . . . the offer or sale under a plan of a security of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan . . . in exchange for a claim against, an interest in, or a claim for an administrative expense in the case concerning, the debtor or such affiliate

11 U.S.C. § 1145(a)(1)(A).

Further, § 1125(e) provides that a person who offers or sells securities under a plan is not liable for a violation of any law or regulation governing the offer, issue, sale, or purchase of securities.  *See* 11 U.S.C. § 1125(e).  Section 1145 and 1125(e) serve similar functions, that is, to "shield from liability under the federal securities laws those individuals participating in the reorganization of an entity in

---

[29] ECF No. 1796 at 1.

[30] ECF No. 1522 at 43–44, 48–49.

bankruptcy." *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 425 (S.D.N.Y. 2007). "The liability shield of § 1125(e) specifically applies to the disclosure and solicitation period prior to approval of a reorganization plan, when 'the investment-type decision by those called upon to accept a plan to modify their claims or interests . . . typically will involve acceptance of new securities or . . . a cash payment in lieu thereof.'" *Id.* (quoting S. Rep. No. 95-989 at 121).

Under the Debtors' Plan, Customers were given the option of allocating their interests to a Closed-End Fund, Liquidating Trust, or a combination of both.[31] When a Customer fails to cast a ballot, they are given a default treatment which consists of transferring their interests to the Closed-End Fund.[32] Thus, under the Debtors' confirmed Plan, making no election is an election and an investment decision is made. And because these interests are offered "under a plan," Debtors are exempt from registration requirements pursuant to § 1145(a)(1)(A). *See* 11 U.S.C. § 1145(a)(1)(A); 11 U.S.C. § 1125(e) (shielding Debtors from liability under federal securities laws for securities offered under a plan).

Offering Customers the ability to change their election at this stage—after plan solicitation, disclosure, and confirmation—would not be an offer "under a plan."[33] Instead, it would become a new offer or sale

---

[31] ECF No. 1522 at 30.

[32] ECF No. 1522 at 30.

[33] The Debtors argue that Mr. Kleipool requests a modification of the Debtors' confirmed plan. *See* ECF No. 1796 at 6–7. The Debtors' confirmed plan provides a default allocation for Customers who do not submit a ballot. The plan does not contain any terms permitting Customers to change their elections by moving their interests from the Closed-End Fund to the Liquidating Trust. Courts have held that a change that is "directly contrary to the express provisions of the plan constitutes a modification within the meaning of § 1127(b)." In cases where the relief requested is contrary to a confirmed plan's provisions, courts have often treated such requests as a request to modify the plan. *See In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343, 2024 Bankr. LEXIS 286, at *28–29 (Bankr. D. Del. Feb. 5, 2024) (gathering cases); *Highland Cap. Mgmt. Fund Advisors, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt., L.P.)*, 57 F.4th 494, 501 (5th Cir. 2023) (holding that "post-confirmation proposals constitute modifications in cases where they 'would alter the parties' rights, obligations, and expectations under the plan."). After a plan has been confirmed, § 1127(b) permits only the reorganized debtor or plan proponent to request a plan modification. 11 U.S.C. § 1127(b).

outside of the plan's initial solicitation and disclosure period. *See U.S. v. Frontier Airlines, Inc.*, 93 B.R. 1014, 1020 (Bankr. D. Colo. 1988) ("Section 1145(a)(1) does not exempt 'any transaction.' It exempts only the offer and sale of certain defined securities 'under a plan . . . .' Thus, by its terms, Section 1145(a)(1) applies only to the initial offering under the plan and not to any redistribution."). Because offering Customers like Mr. Kleipool a new election would not be done so "under the plan," the § 1145 exemption would not apply, and Debtors would have to register any new offer.

Further, by its terms, § 1145(a)(1)(A) requires an exchange of an offer or sale of a security for a claim. *See* 11 U.S.C. § 1145(a)(1)(A). Here, allowing Mr. Kleipool to make a new election would mean exchanging an interest in the Closed-End Fund for an interest in the Liquidating Trust. Therefore, the § 1145 exemption would not apply because a security interest would not be exchanged for a claim. *See* 11 U.S.C. § 1145(a)(1)(A). Debtors would have to register this new "offer" or become liable under securities laws. *See* 15 U.S.C. § 77e(a), (c).

Requiring Debtors to register a new offer for Mr. Kleipool, or any other Customer in a similar circumstance[34], prejudices the Debtors by way of extra costs and delay at a time when Debtors are working on launching the Liquidating Trust and Closed-End Fund. Further, it exposes the Debtors to potential securities laws issues. *See In re Food City, Inc.*, 110 B.R. 808, 810 (Bankr. W.D. Tex. 1990) ("If a contemplated stock issuance does not qualify for this securities exemption [11 U.S.C. § 1145] the scheme may well be *vulnerable* under federal or state securities laws."). Taking all relevant circumstances into consideration, the Court finds that although Mr. Kleipool's untimely request is a result of "neglect," it is not "excusable" in this unique circumstance.[35] Mr.

---

[34] Mr. Kleipool is not the only Customer seeking an untimely election. *See* ECF No. 1772 at 6; ECF No. 1796 at 4. In fact, since the April 1st hearing, a few other Customers have filed motions seeking similar relief. *See* ECF No. 1846; ECF No. 1856; ECF No. 1859.

[35] Fed. R. Civ. P. 60(b) similarly provides parties relief from a final judgment or order on account of "excusable neglect". In comparable cases, where the interested party has sought relief because an emailed notice was sent to their "spam" folder, the Fifth Circuit has found that it is not excusable neglect. *See Trevino v. City of Fort*

Kleipool may not make an untimely election into the Liquidating Trust at this juncture. While the Court would like to extend Mr. Kleipool some grace and is sympathetic to his particular situation, the Debtors' cases require cautious adherence to securities laws. These cases originate from a variety of securities laws violations and compliance failures.[36] Allowing Mr. Kleipool to change his election now would prejudice the Debtors by putting them at risk of future securities law violations. Therefore, the Court finds Mr. Kleipool may not make a late change to his election.

**CONCLUSION**

For the reasons stated above, the Court DENIES Mr. Kleipool's requested relief. The Debtors are requested to settle an order implementing this decision within 14 days.

SIGNED 04/21/2026

_____
Alfredo R Pérez
United States Bankruptcy Judge

---

*Worth*, 944 F.3d 567, 572 (5th Cir. 2019) (holding that court communications sent to a spam folder does not constitute excusable neglect under Rule 60(b)).

[36] ECF No. 10 at 15–16.