United States Bankruptcy Court
Southern District of Texas

**ENTERED**

August 03, 2026

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 25-90186 |
| LINQTO TEXAS, LLC, | § | |
| Debtors. | § | Jointly Administered |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION DENYING MOTIONS FOR TURNOVER OF NON-ESTATE PROPERTY

These matters come before the Court on the motion of various Customers[1] for turnover of alleged non-estate property. For the reasons provided below, the Court denies the Motions for Turnover of Non-Estate Property.

---

[1] Pro Se movants filed substantially similar motions for turnover of alleged non-estate property. The movants (along with the ECF number where their original motions can be found) are: Adele Michal (ECF No. 1586); Michele Abroff (ECF No. 1589); Christopher W. Giese (ECF No. 1590); Linda P. Jones (ECF No. 1591); Julia Nilsen (ECF No. 1592); Julie Ann Zolfo (ECF No. 1593); Michelle Karel-Ward (ECF No. 1595); Dennis N. Sipe (ECF No. 1606); Thelma Putzel (ECF No. 1607); Todd Gurganus (ECF No. 1608); Karen Rene Threlkel (ECF No. 1609); Anneliese Clark (ECF No. 1611); Victoria Teresa Zimmerman (ECF No. 1614); Terry James Maglio (ECF No. 1615); Debra Monahan (ECF No. 1616); Kenneth Lord (ECF No. 1617); Janet Ishigame (ECF No. 1618); Jason Cline (ECF No. 1619); Theresa Murata (ECF No. 1621); Sheri Braemer (ECF No. 1622); Mike Patterson (ECF No. 1623); Bart Danby (ECF No. 1624); Charles Edward Roessler (ECF No. 1625); Jami J. Miller (ECF No. 1626); Stacy Santiago (ECF No. 1632); Summer Deaton (ECF Nos. 1633 and 1639); Justin Day (ECF No. 1634); Anthony Hominick (ECF No. 1635); Karen Rene Threlkel (ECF No. 1636); Karen Tan (ECF No. 1637); Mary Palmer Dargan (ECF No. 1638); Lauren Lopp (ECF No. 1640); Daniel Slosek (ECF No. 1641); Josette Zamor (ECF No. 1644); Valerie Lynn Brinker (ECF No. 1652); Patrick Vincent Versace (ECF No. 1659); Rebecca Wong (ECF No. 1660); Lorena Rochino (ECF No. 1661); Monique Yuen (ECF No. 1662); Gregory Smith (ECF No. 1666); Tamekia Mornan-Stewart (ECF No. 1668); Kathryn Marie Ford (ECF No. 1675); Anna Wong-Hirata (ECF No. 1694); Brian Hughes (ECF No. 1695); Etzer Zamor (ECF No. 1697); Michael J. Gross (ECF No. 1698); and Dario Boriani (ECF No. 1898) (together, "Customers").

1 / 9

## BACKGROUND

Prepetition, Linqto Texas, LLC and its affiliate debtors[2] (the "Debtors") operated an online investment platform purporting to allow Customers to indirectly invest in private technology companies.[3] Liquidshares purchased and held securities of privately held companies, or equity in a fund that owns shares of an issuing company.[4] Liquidshares then purported to allocate an economic interest in the securities into a special purpose vehicle ("SPV") in the form of a series limited liability company ("Series LLC").  Customers were offered an opportunity to purchase an indirect economic interest in the securities of a particular issuing company by purchasing units in a Series LLC.[5] Specifically, each unit of membership interest in the Series LLC was intended to correspond to one share of an underlying private issuing company.[6]

However, Debtors allege that later internal investigations revealed that Debtors did not operate as intended or prescribed under the Liquidshares' Certificate of Formation, the Liquidshares Operating Agreement, the Master Purchase Agreement, or the Subscription Agreements.[7]  They allege that the Series LLCs were not properly formed and that no transfer of securities to any Series LLC occurred.[8] Upon filing these bankruptcy cases, Debtors alleged that Liquidshares held securities in 111 issuing companies with an estimated fair market value in excess of $500 million.[9]

On July 7, 2025, Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the

---

[2] The Debtors in these Chapter 11 Cases are: Linqto, Inc. ("Linqto Parent"); Linqto Liquidshares, LLC ("Liquidshares"); Linqto Liquidshares Manager, LLC ("Liquidshares Manager"); and Linqto Texas, LLC ("Linqto Texas").

[3] ECF No. 10 at 7.

[4] ECF No. 10 at 7.

[5] ECF No. 10 at 7.

[6] ECF No. 10 at 10.

[7] ECF No. 10 at 8–9.

[8] ECF No. 10 at 8–9.

[9] ECF No. 10 at 10.

"Bankruptcy Code").[10]   Early in these cases, disputes arose regarding the nature of Customers' interests in the platform securities and whether those interests were considered property of the estate under 11 U.S.C. § 541.[11]   For example, certain customers represented by attorney John Deaton (otherwise known as the "Deaton Parties") objected to DIP Financing, contending that platform securities linked to customer accounts along with platform securities proceeds were not property of the Debtors' estates but instead were held in constructive trust for the Customers.[12]   The Official Committee of Unsecured Creditors (the "UCC") similarly asserted informal objections arguing that the platform securities were held in a constructive and/or resulting trust.[13]   However, these objections were later resolved through a Bankruptcy Rule 9019 settlement (the "Settlement") that acknowledged the "expense, difficulty, and delay" that would result if parties were to "litigat[e] the merits of the claim of constructive trust or other equitable claims challenging the Debtors' ownership of the Platform Securities and Platform Securities Proceeds . . . ."[14]   Pursuant to the Settlement, the UCC and the Deaton Parties' constructive trust arguments were "held in abeyance" and "settled on a final basis by and through the confirmation of a Plan that incorporate[d] the customer claim treatment" contemplated therein.[15]

On February 2, 2026, the Court held a hearing on the confirmation of Debtors' First Amended Joint Chapter 11 Plan (the "Plan").[16]   The Court made an oral ruling confirming the Plan on

---

[10] *See* ECF No. 1.

[11] *See* ECF No. 704, Ex. A at 5–6.

[12] ECF No. 142 (objecting to approval of DIP Financing Deaton Parties argued that "under equitable principles, including the doctrine of constructive trust, these assets do not belong to the estate and may not be used as collateral.").

[13] *See* ECF No. 704, Ex. A at 6.

[14] ECF No. 704, Ex. A at 6.

[15] ECF No. 704, Ex. A at 10.

[16] ECF No. 1533.

February 6, 2026,[17] and entered an order confirming the Plan on February 13, 2026 (the "Confirmation Order").

Around the same time, Customers began filing their individual Motions for Turnover of Non-Estate Property (the "Turnover Motions") on or about February 12, 2026.[18]   The Turnover Motions contained substantially similar arguments seeking the return of alleged non-estate property.[19]  Specifically, each motion asks the Court to determine whether shares in Circle Internet Group, Inc. ("Circle") are property of the bankruptcy estate under 11 U.S.C. § 541 and requests the Court order the Debtors to "turn over" the Circle-related SPV interests pursuant to 11 U.S.C. § 542(a).[20]  Customer Linda Jones moved to consolidate all pending Customer motions seeking the return of Circle shares as alleged non-estate property for purposes of briefing and hearing.[21]  The Debtors did not oppose the requested consolidation,[22] and the Court granted Ms. Jones' Motion to Consolidate on March 27, 2026.[23]

---

[17] At the oral ruling, the Court found the Settlement to be "extremely beneficial to the customers and the estate generally" because "they basically provide the customers the closest thing they can get to the benefit of the bargain that the innocent customers thought they were receiving, minimizing significant costs and risks associated with having a full blown litigation on the constructive trust action . . . in essence, the customers have won the constructive [trust] lawsuit without having to litigate it."  ECF No. 1578 at 4.

[18] ECF No. 1586.

[19] *See, e.g.*, ECF No. 1591 (Turnover Motion filed by Linda P. Jones).

[20] Customer Brian Hughes seeks substantially the same relief under 11 U.S.C. § 542, but argues his motion is distinguishable from the other Turnover Motions.  He does not contend that his investment interests were excluded from the estate under 11 U.S.C. § 541(d) but, instead, argues that his Circle shares should be turned over to him because of a "matured, breached contractual obligation."  ECF No. 1724.  Because he seeks a turnover of property under § 542, the Court's decision here equally applies to his motion.

[21] ECF No. 1667.

[22] ECF No. 1771.

[23] ECF No. 1793.

The Court held a hearing on the Turnover Motions on June 22, 2026, and it took the matter under advisement.[24]

## JURISDICTION & VENUE

28 U.S.C. § 1334(a) provides district courts with jurisdiction over this proceeding. 28 U.S.C. § 157(b)(1) states that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012). This Court has jurisdiction in this proceeding as it is a core proceeding which the Court can consider under 28 U.S.C. § 157(b)(2)(A) and (E). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

Customers request the Court order the Debtors to "turnover" Circle shares pursuant to 11 U.S.C. § 542.[25] They argue that because the shares are not property of the estate, as defined under 11 U.S.C. § 541, Debtors are required to turnover the alleged non-estate property to Customers. Specifically, they argue that the Debtors, at most, hold

---

[24] ECF No. 1971.

[25] Customers' written motions seek turnover of "Circle-Related SPV Interests." However, at the June 22nd hearing, Customers argued that this was an ownership dispute concerning "Circle shares" and requested "Circle shares" be turned over to them. *See e.g.*, ECF No. 2016 at 18 ("I respectfully request that you order a return of our Circle shares . . . ."). Based on the written motions alone, it is not completely clear whether Customers seek a turnover of the underlying Circle shares held by Liquidshares or if it seeks a turnover of their interests in the Series LLC (in which the underlying securities were supposed to be transferred into). Because the Customers clearly stated in the June 22nd hearing that they were seeking a turnover of the Circle shares, the Court interprets Customers' requests as such. The Courts decision here would apply to either interpretation.

5 / 9

bare legal title for the benefit of Customers and that, as such, the Circle shares are not property of the estate under 11 U.S.C. § 541(d).

I.      **Customers May Not Seek Turnover of Non-Estate Property Under § 542 of the Bankruptcy Code.**

Section 542, titled "Turnover of property to the estate," requires:

[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title [11 U.S.C. § 363], or that the debtor may exempt under section 522 of this title [11 U.S.C. § 522], shall deliver to the trustee [or debtor in possession], and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).  Under § 542, the trustee, or debtor in possession, has the burden of proving by, a preponderance of the evidence, that: (i) the property is (or was during the bankruptcy case) in possession, custody or control of a noncustodial third party; (ii) that the property is property of the estate; and (iii) that the property is a type that the trustee could use, sell or lease pursuant to § 363, or that the debtor may exempt under § 522.  5 Collier on Bankruptcy ¶ 542.03.

Here, Customers' requests to turnover the Circle shares under § 542 is improper.  Section 542 of the Bankruptcy Code is meant to turnover ***property of the estate***, in the hands of non-custodial third parties, ***to the trustee*** or debtor in possession.  *See City of Chicago v. Fulton*, 592 U.S. 154, 160 (2021) ("§542(a) works within the bankruptcy process to draw far-flung estate property back into the hands of the debtor or trustee").  This Section is not the vehicle in which Customers may seek turnover of property in the Debtors' possession and control to themselves.  *See Browning v. Navarro*, 826 F.2d 335, 340 (5th Cir. 1987) (distinguishing a turnover suit under § 542 in which a "trustee or custodian seeks to obtain property of the estate that is in the possession of a third party" from a suit in which a claimant sues the debtor and

trustee to "turn over" property alleged to belong to the claimant).  Thus, Customers will find no relief in § 542 of the Bankruptcy Code.

## II.     The Turnover Motions are Procedurally Defective.

Section 541(a)(1) of the Bankruptcy Code defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."   11 U.S.C. § 541(a).  Section 541(d) clarifies subsection (a)(1) by expressly providing that interests held by the debtor become property of the estate pursuant to subsection (a)(1) or (2) but "only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  *See* 11 U.S.C. § 541(d); *Marrs-Winn Co. v. Giberson Elec., Inc. (In re Marrs-Winn Co.)*, 103 F.3d 584, 589 (7th Cir. 1996) (noting "the Bankruptcy Code embraces the crucial distinction between a legal interest and an equitable interest in property.").

In the absence of controlling federal bankruptcy law, the nature of property interests and rights held by a bankrupt and its creditors is defined by state law.  *See Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 435 (5th Cir. 1994).  Thus, "[t]he constructive trust doctrine common to many states takes on great significance in bankruptcy cases because of § 541(d) of the Code."  *Id.*  The Fifth Circuit has "consistently recognized that § 541(d) accords the beneficiary of a constructive trust, properly imposed under state law, the right to recover the trust property from the bankruptcy trustee or the debtor."  *Id.* at 436 ("Where the existence of a [constructive] trust has been established, the bankruptcy trustee will be ordered to turn over the property or proceeds [to the trust beneficiary] . . ..").

Bankruptcy Rule 7001 defines adversary proceedings and provides that they are governed by the rules in Part VII of the Bankruptcy Rules.  FED. R. BANKR. P. 7001.  Proceedings to "recover money or property" and proceedings "to determine the validity, priority, or extent of a lien or other interests in property" are adversary proceedings.  FED. R. BANKR. P. 7001(a)–(b).

Here, through their Turnover Motions, Customers dispute the Debtors' equitable interests in the Circle shares and request to recover such property from the Debtors. Because Customers requests a recovery of property and a determination of their interests in the Circle shares by way of motion, the Turnover Motions are procedurally defective. *See In re Haber Oil Co.*, 12 F.3d at 437–40, 443 (reversing a bankruptcy court's decision to impose a constructive trust, in part, because of the deficiency in the proceedings and appellee's failure to file an adversary proceeding and comply with the bankruptcy rules governing adversary proceedings).

Customers should have instead filed an adversary proceeding in this Court, complying with the requirements of Part VII of the Bankruptcy Rules, which govern adversary proceedings. *See In re Crockett*, 642 B.R. 97, 103 (Bankr. D. Conn. 2022) ("An action to recognize and apply a constructive trust is a proceeding to 'recover money or property,' to 'determine the validity, priority, or extent of an interest in property' and/or to 'obtain . . . equitable relief,' and must therefore be prosecuted as an adversary proceeding, with its attendant procedural formalities and safeguards as afforded by Part VII of the Federal Rules of Bankruptcy Procedure."). Therefore, because Customers failed to file an adversary proceeding to seek the relief sought by their Turnover Motions, the Turnover Motions are denied.[26]

---

[26] Along with arguing that the Customers' motions were procedurally defective, Debtors argued that the relief Customers seek is barred by the Court's previous Confirmation Order. *See* ECF No. 1702. Although the Court does not decide now whether Customers have a viable claim for relief, if filed under the correct procedural posture, it notes that it is persuaded by Debtors' arguments that the Court's Confirmation Order may bar Customers requested relief. Confirmation orders are entitled to full res judicata effect as to issues that were or could have been raised prior to confirmation. *See Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987); *Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1296 (11th Cir. 2001). Further, 11 U.S.C. § 1141 binds the debtor and any creditor to the provisions of the confirmed plan, and except as otherwise provided in the plan, provides that property dealt with by the plan is "free and clear of all claims and interests of the creditors." Here, multiple parties raised constructive trust arguments challenging the Debtors' ownership of the platform securities prior to confirmation, and such arguments were held in abeyance pending confirmation. The

## CONCLUSION

For the reasons stated above, the Court DENIES the Turnover Motions.  The Debtors are requested to settle an order implementing this decision within 7 days.

SIGNED 08/01/2026

_Alfredo R Pérez_
Alfredo R Pérez
United States Bankruptcy Judge

---

Settlement between the UCC, Deaton Parties, and the Debtors—incorporated in the Confirmed Plan—resolved certain objections by incorporating the Customer treatment contemplated by the Settlement into the Plan.  Under the Plan, Customers received an option to elect recovery under a Closed End Fund or Liquidating Trust.  *See* ECF No. 1522 at 30–31.  The Plan specifies that the Liquidating Trust "shall serve as a Disbursing Agent for the distribution of . . . the Circle Shares to the Circle Securities Customers (excluding any Circle Shares in which the Electing Customers have an economic interest, which Circle Shares shall be included in the Closed-End Fund Assets[)]."  ECF No. 1522 at 41.  It further provides that on or as soon as practicable after the Effective Date, the Liquidating Trust "shall distribute Circle Shares to each Circle Shares Customer pro rata in accordance with the number of Circle Shares allocated to each such Customer," unless the minimum closed-end fund conditions are met, and the Customer is an Electing Customer under the Plan.  ECF No. 1522 at 41.  After the Effective Date, Customers who elected the Liquidating Trust option will receive direct distributions of public securities through the Liquidating Trust—which is the relief Customers seek in the Turnover Motions.  *See* ECF No. 704, Ex. 1 at 3 (Linqto Debtor-UCC Customer Securities Treatment Term Sheet); ECF No. 1964 ¶12.